AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| ELLEN YAROSHEFSKY | ) |
| | ) |
| | ) |
| _____ | ) |
| *Petitioner* | ) |
| v. | ) |
| | ) Case No.    17-cv-08718-GHW |
| GEN. JAMES N. MATTIS, in his official capacity, and | )      *(Supplied by Clerk of Court)* |
| COL. VANCE H. SPATH, in his official capacity | ) |
| _____ | ) |
| *Respondent* | ) |
| *(name of warden or authorized person having custody of petitioner)* | |

### PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

#### Personal Information

1.    (a) Your full name:    Ellen Yaroshefsky

      (b) Other names you have used: _____

2.    Place of confinement:

      (a) Name of institution: _____

      (b) Address: _____

      (c) Your identification number: _____

3.    Are you currently being held on orders by:

      ❒ Federal authorities      ❒ State authorities      ☑ Other - explain:

      I have been ordered by a Military Judge to appear as a witness in front of a Military Commission.

4.    Are you currently:

      ❒ A pretrial detainee (waiting for trial on criminal charges)

      ❒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime

      If you are currently serving a sentence, provide:

         (a) Name and location of court that sentenced you: _____

         (b) Docket number of criminal case: _____

         (c) Date of sentencing: _____

      ❒ Being held on an immigration charge

      ☑ Other *(explain)*:    I am being ordered to appear as a witness in front of the Military Commission in

      Alexandra, Virginia.

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.      What are you challenging in this petition:

❏ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

❏ Pretrial detention

❏ Immigration detention

❏ Detainer

❏ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

❏ Disciplinary proceedings

☑ Other *(explain)*:     Order to appear as a witness in front of the Military Commission in Alexandria, Virginia.

6.      Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court:     Military Commissions Trial Judiciary, Guantanamo Bay, Cuba

(b)  Docket number, case number, or opinion number:

(c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:

Order to appear as a witness in front of the Military Commission in Alexandria, Virginia.

(d)  Date of the decision or action:   11/06/2017

## Your Earlier Challenges of the Decision or Action

7.      **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

❏ Yes                      ☑ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:

(2)  Date of filing:

(3)  Docket number, case number, or opinion number:

(4)  Result:

(5)  Date of result:

(6)  Issues raised:

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____

_____

_____

(b) If you answered "No," explain why you did not appeal: _____

_____

_____

8.    **Second appeal**

Ater the first appeal, did you file a second appeal to a higher authority, agency, or court?

❏ Yes            ☑ No

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: _____

    _____

    (2) Date of filing: _____

    (3) Docket number, case number, or opinion number: _____

    (4) Result: _____

    (5) Date of result: _____

    (6) Issues raised: _____

    _____

    _____

    _____

    _____

    _____

(b) If you answered "No," explain why you did not file a second appeal: _____

_____

9.    **Third appeal**

Ater the second appeal, did you file a third appeal to a higher authority, agency, or court?

❏ Yes            ☑ No

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: _____

    _____

    (2) Date of filing: _____

    (3) Docket number, case number, or opinion number: _____

    (4) Result: _____

    (5) Date of result: _____

    (6) Issues raised: _____

    _____

    _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(b) If you answered "No," explain why you did not file a third appeal:

10.    **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes                    ☑ No

If "Yes," answer the following:

(a)    Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes                    ☐ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

(b)    Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes                    ☑ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____
_____
_____
_____

(c)  Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your
     conviction or sentence: _____

_____
_____
_____
_____
_____
_____
_____
_____

11.  **Appeals of immigration proceedings**

     Does this case concern immigration proceedings?

     ❒ Yes            ☑ No

     If "Yes," provide:

     (a)  Date you were taken into immigration custody: _____

     (b)  Date of the removal or reinstatement order: _____

     (c)  Did you file an appeal with the Board of Immigration Appeals?

          ❒ Yes            ❒ No

          If "Yes," provide:

          (1) Date of filing: _____

          (2) Case number: _____

          (3) Result: _____

          (4) Date of result: _____

          (5) Issues raised: _____

          _____
          _____
          _____
          _____
          _____

     (d)  Did you appeal the decision to the United States Court of Appeals?

          ❒ Yes            ❒ No

          If "Yes," provide:

          (1) Name of court: _____

          (2) Date of filing: _____

          (3) Case number: _____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

_____

_____

_____

12.    **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes            ☑ No

If "Yes," provide:

(a)  Kind of petition, motion, or application: _____

(b)  Name of the authority, agency, or court: _____

_____

(c)  Date of filing: _____

(d)  Docket number, case number, or opinion number: _____

(e)  Result: _____

(f)  Date of result: _____

(g)  Issues raised: _____

_____

_____

_____

_____

_____

_____

**Grounds for Your Challenge in This Petition**

13.    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**GROUND ONE:**    Military Judge Spath has no authority to compel me to appear as a witness in front of a Military Commission.

_____

_____

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

I am a United States citizen. I am not an alien unprivileged enemy belligerent. I have never associated myself

with the military arm of an enemy government.  For further detail, see attached Petition, Memorandum of Law,

and Declaration of Harold K. Gordon, which I hereby adopt and incorporate as if fully set forth herein.

(b) Did you present Ground One in all appeals that were available to you?

❏ Yes          ❏ No

**GROUND TWO**:   Military Judge Spath's order violates my right to due process.

(a) Supporting facts *(Be brief.  Do not cite cases or law.)*:

I did not receive any notice of the order compelling me to appear. I was never served with the order compelling

me to appear. I have not received an opportunity to be heard.  Appearing as a witness without counsel

may jeopardize my Fifth Amendment rights, along with other procedural or substantive rights.

(b) Did you present Ground Two in all appeals that were available to you?

❏ Yes          ❏ No

**GROUND THREE**:   Military Judge Spath's order constitutes an unlawful seizure under the Fourth Amendment.

(a) Supporting facts *(Be brief.  Do not cite cases or law.)*:

The order requires me to travel from New York to Alexandria, Virginia. I am not free to move where I please.

(b) Did you present Ground Three in all appeals that were available to you?

❏ Yes          ❏ No

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR**:    Any process issued under authority of Colonel Spath's order would be oppressive and burdensome.

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

It would require my travel to Virginia without compensation for time, on less than one business day's notice to attend a proceeding where I may not be advised by counsel, nor have the same procedural and substantive rights applicable in depositions.  Nor do I know the duration of the proceeding, my ability to terminate it, or what questions will be put to me.

(b)  Did you present Ground Four in all appeals that were available to you?

❏ Yes                        ❏ No

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:

## Request for Relief

15.  State exactly what you want the court to do:  I am asking the court to grant a writ of habeas corpus; to issue a declaratory judgment that the Military Commission has no authority over me; to quash any proces against me that would compel me to comply with Military Judge Spath's order; and to grant an interim temporary restraining order until such time as this matter can be fully briefed and heard.

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

_____

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: *Nov 8, 2017*

_____
*Signature of Petitioner*

_____
*Signature of Attorney or other authorized person, if any*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ELLEN YAROSHEFSKY,**       ) <br>           Petitioner,      ) <br>       v.                     ) <br> **GEN. JAMES N. MATTIS** in his official <br> capacity as SECRETARY OF DEFENSE, <br> and <br><br> **COL. VANCE H. SPATH** (AIR FORCE) <br> in his official capacity as MILITARY <br> JUDGE, MILITARY COMMISSIONS <br> TRIAL JUDICIARY, DEPARTMENT OF <br> DEFENSE, <br><br>           Respondent. | Case No. <u>17-cv-08718-GHW</u> |

---

## PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR DECLARATORY JUDGMENT, TO QUASH SUBPOENA OR OTHER PROCESS, AND FOR AN INTERIM TEMPORARY RESTRAINING ORDER

Petitioner Ellen Yaroshefsky seeks by Order To Show Cause a writ of habeas corpus, a declaratory judgment, an order quashing any interim process issued against her, and/or preliminary relief preserving the status quo until this matter can be heard, to prohibit her unlawful seizure. No previous application for similar relief on behalf of Ms. Yaroshefsky has been made. Respondent Colonel Vance H. Spath, a military judge who is presiding over a Military Commission at Guantanamo Bay, ordered the government on November 6, 2017, to produce Petitioner as a witness on Monday, November 13, 2017, in contravention of her constitutional and other rights. The government has confirmed that it intends to comply with and effectuate Respondent Colonel Spath's unlawful order by serving forthwith a subpoena or other process on Petitioner, a Manhattan resident, compelling her to appear at a government facility in Virginia on November 13.

## OVERVIEW

This matter portrays an incomprehensible abuse of power by the Military Commission at

Guantanamo Bay.  Colonel Spath presides over the Military Commission trial of Abd Al-Rahim

Hussein Muhammed Abdu Al-Nashiri, an alleged participant in the bombing of the U.S.S. Cole.

Al-Nashiri is charged with multiple offenses under the Military Commissions Act of 2009

("MCA"), 10 U.S.C. §§ 948, *et seq.*  Once those charges were referred for capital prosecution,

Al-Nashiri became entitled to the appointment of counsel well versed in the law of capital cases.

10 U.S.C. § 949a(b)(2)(C)(ii); Rules for Military Commission (R.M.C.) 506(b).  Richard

Kammen was appointed.  Kammen is a nationally recognized and well-respected defense counsel

in capital cases.

Over the course of his representation, Kammen learned that the government had

repeatedly interfered with his attorney-client communications, intruded into the attorney-client

relationship, and monitored and infiltrated defense teams without disclosure.  Believing his

representation to have been ethically compromised, Kammen sought expert advice in legal ethics

from Petitioner Ellen Yaroshefsky, a nationally recognized ethics scholar on the faculty of the

Hofstra School of Law.  Relying on the unclassified facts provided to her, Professor Yaroshefsky

concluded that Kammen's continued representation of Al-Nashiri would be unethical.  Kammen

then sought permission from the Chief Defense Counsel for Military Commissions, Brigadier

General John G. Baker, USMC, to withdraw.

Brigadier General Baker excused Kammen for good cause.  Colonel Spath ordered

Brigadier General Baker to rescind this excusal, and held him in contempt when he refused.

Colonel Spath has now ordered the government to produce Professor Yaroshefsky as a witness

before the Military Commission by teleconference from a secure government facility in Virginia

2

on November 13, 2017, where her counsel apparently will not be allowed to be present during the questioning.

There is no legal basis or authority under which Respondents may compel Professor Yaroshefsky to appear as a witness on November 13, 2017. Custody of Professor Yaroshefsky violates "the Constitution or laws or treaties of the United States," and is a violation of 18 U.S.C. § 4001(a) ("Non-Detention Act"). This Court should issue a writ of habeas corpus, grant Professor Yaroshefsky's request for declaratory relief specifying that the Military Commission headed by Colonel Spath has no jurisdiction over Professor Yaroshefsky, a private citizen, and quash any process issued to effectuate Colonel Spath's unlawful order. At the very least, the Court should grant preliminary interim relief maintaining the status quo so that this matter may be heard on the merits following full briefing before the government takes any further steps to seize Ms. Yaroshefsky.

## JURISDICTION AND VENUE

1.      Petitioner brings this action pursuant to 28 U.S.C. §§ 2241 and 2242. This court has jurisdiction over the subject-matter pursuant to 28 U.S.C. §§ 1331, 2201.

2.      This Court has statutory authority under 28 U.S.C. § 2241 to grant the writ of habeas corpus. Colonel Spath's *ultra vires* order directing the government to produce Professor Yaroshefsky, a Manhattan resident, in Virginia this coming Monday, November 13, renders Petitioner in custody for purposes of § 2241.[1] Pursuant to 28 U.S.C. § 2201, this Court

---

[1]The in-custody requirement for habeas does not require physical custody. *Hensley v. Municipal Court, San Jose-Milpitas Judicial Dist.,* 411 U.S. 345, 351 (1973)(parolee subject to orders to appear and criminal violation for failing to do so, is "in custody" for purposes of habeas statute). Custody simply requires a "severe restraint" on liberty, which means "one not shared by the public generally." *Jones v. Cunningham,* 371 U.S. 236, 240 (1963). One court has even held that an order of community service constitutes "custody" for purposes of habeas. *Barry v. Bergen Cty. Prob. Dep't,* 128 F.3d 152, 154 (3rd Cir. 1997). Colonel Spath has ordered the government to produce Professor Yaroshefsky before a

has authority to declare the rights and other legal relations of the parties herein.  Pursuant to 28

U.S.C. §§ 1651 and 2202, and 2201, this Court has the authority to effectuate and enforce its

judgments by all necessary and proper means, as this case involves an actual controversy within

the Court's jurisdiction.

3.      Venue is proper in the Southern District of New York, since Petitioner resides in

the District.  28 U.S.C. § 1391(e).

## PARTIES

4.      Petitioner, Ellen Yaroshefsky, is a citizen of the United States and the Howard

Lichtenstein Distinguished Professor of Legal Ethics and Executive Director of the Monroe H.

Freedman Institute for the Study of Legal Ethics at the Hofstra University School of Law.

5.      Respondent, Colonel Vance Spath, USAF, is a citizen of the United States and

serves as the military commission judge in the case of *United States v. Abd Al-Rahim Hussein*

*Muhammed Abdu Al-Nashiri*.  In that role, he refused to recognize the decision by Brigadier

General John G. Baker, Chief Defense Counsel for Military Commissions, to excuse Kammen

and two other civilian defense counsel from the Al-Nashiri case, even though Brigadier General

Baker followed proper procedures and made a good-cause determination.  The Defense in *United*

*States v. Al-Nashiri* moved to abate the proceedings on October 16, 2017.  On November 6,

2017, the Respondent ordered the government to compel Petitioner to appear as a witness in

Alexandria, Va. on November 13, 2017.

6.      Respondent, James Mattis, is a citizen of the United States and presently serves as

the Secretary of Defense.  Under federal law, he is delegated the authority to supervise the

---

military commission in Alexandria, Virginia. Professor Yaroshefsky is accordingly subject to severe
restraints on her liberty not shared by the public generally.

conduct of military commissions convened under the Military Commissions Act and to appoint and supervise the Convening Authority for the Office of Military Commissions.  His primary place of business is 1000 Pentagon in Washington, DC.

7.      In a prior proceeding in this case, Respondent Colonel Spath ordered defense witness Lieutenant Commander Stephen D. Gill, USNR, to appear for redirect examination. When Gill defied Colonel Spath's order to appear, Colonel Spath signed a warrant of attachment and, upon information and belief, directed Assistant United States Attorney Mark Miller, who is detailed by the DOJ to the military commissions, to request that the United States Marshal's Service arrest Gill in his home in Massachusetts and transport him to Virginia where he was required to testify by videoconference.  At the time, while discussing the military commission's authority to compel a witness, Miller said, "I think we can all agree that we cannot force somebody to come to the island."  Carol Rosenburg, *Defense lawyers quit. Not so fast, says war court judge, who orders them to Guantánamo*, Miami Herald, Oct. 23, 2017, www.miamiherald.com/news/nation-world/world/americas/guantanamo/article180485996.html.

## STATEMENT OF FACTS

8.      Abd al Rahim Hussein Muhammad Abdu Al-Nashiri is a detainee in the U.S. Naval Station, Guantanamo Bay.  Al-Nashiri was taken into custody in October 2002 in Dubai, United Arab Emirates.  After being held in at least four secret CIA overseas prisons, he was transferred back to Guantanamo in September 2006.  *See* Staff Report, *USS Cole bombing trial guide*, Miami Herald, September 5, 2016, www.miamiherald.com/news/nationworld/world/americas/guantanamo/article100104397.html.

9.      Al-Nashiri is charged with multiple offenses under the Military Commissions Act of 2009 ("MCA"), 10 U.S.C. §§ 948, *et seq.*  Once those charges were referred for capital

5

prosecution, Al-Nashiri became entitled to the appointment of counsel learned in the law of

capital cases.  10 U.S.C. § 949a(b)(2)(C)(ii); R.M.C. 506(b).  Richard Kammen was appointed.

**A.      The Government's Intrusion into Attorney-Client Communications**

10.      Over the course of his representation, Kammen learned that the government had

repeatedly interfered with his attorney-client communications, intruded into the attorney-client

relationship, and monitored and infiltrated defense teams without disclosure.  The government

has hidden most of the facts concerning its conduct behind a veil of classification.[2]  But the

limited information in the public realm shocks the conscience:

- Since 2011, prison authorities have prohibited telephonic communication between defense counsel and their clients, and all written communications are reviewed by military officials.  As a result, in-person meetings at Guantanamo Bay were the only potential means of privileged communication.

- In January 2012, however, the chief staff attorney for the Joint Task Force – Guantanamo reportedly discovered the rooms in which defense counsel had been meeting with their clients were wired with microphones that look like smoke detectors.  Defense counsel were not notified.

- In January 2013, it was discovered that courtroom microphones could capture confidential communications between defense counsel and client, even when the microphone is purposefully muted by counsel.

- In March 2013, defense counsel learned that some unknown amount of privileged work product had been disclosed to the prosecution by IT technicians not bound by non-disclosure agreements, including potentially hundreds of thousands of internal defense emails.  As a result, counsel determined they could no longer use the Department of Defense computer system, drastically increasing the time necessary to prepare pleadings.

- In April 2014, the FBI recruited a civilian member of one detainee's defense team to act as a confidential informant.  *See* Carol Rosenberg, *Accusation of FBI Spying Stalls 9/11 Hearing*, Miami Herald, Apr. 14, 2014, www.miamiherald.com/news/nation-world/world/americas/article1962835.html.

---

[2] Counsel for Petitioner have not had access to classified information relating to this matter.  Everything contained in this filing is non-classified.

- In February 2015, a detainee recognized the court translator as a CIA agent who had worked at a secret CIA overseas prison. *See* Carol Rosenberg, *Guantánamo hearing halted by supposed CIA 'black site' worker serving as war court linguist*, Miami Herald, Feb. 9, 2015, www.miamiherald.com/news/nation-world/world/americas/guantanamo/article9600110.html.

11.     Matters came to a head on June 14, 2017, when the Chief Defense Counsel for Military Commissions, Brigadier General John G. Baker, issued a memorandum advising defense counsel that he had recently received information indicating ongoing improper monitoring of meetings between detainees and their lawyers. This monitoring was said to have occurred between September 2015 and April 2017. *See* Carol Rosenberg, *Latest attorney-client privacy issue at Guantánamo is called 'unintentional' listening*, Miami Herald, July 2, 2017, www.miamiherald.com/news/nation-world/world/americas/guantanamo/article159333239.html.

12.     In short, defense counsel had no confidential means of communicating with their clients; they could not talk by telephone, nor by mail or in-person – not even in the Courtroom.

### B.     Professor Yaroshefsky's Ethics Opinion And Counsel's Withdrawal

13.     After learning these facts (and others), Kammen sought ethics advice from Professor Yaroshefsky regarding his ability to continue to represent Al-Nashiri. Petitioner Professor Yaroshefsky is the Howard Lichtenstein Distinguished Professor of Legal Ethics and Executive Director of the Monroe Freedman Institute for the Study of Legal Ethics at the Hofstra University School of Law.

14.     Relying upon only the unclassified facts provided to her, Professor Yaroshefsky rendered her expert ethics opinion that Kammen's continued representation of Al-Nashiri in this matter would be unethical:

> You cannot, consistent with your ethical obligations continue to represent Mr. al-Nashiri. Rule 1.16(a)(1) of Professional Conduct mandates that you withdraw from representation. It provides that a lawyer "shall withdraw from representation of a client if the representation involves a violation of the rules of professional

conduct or other law." You are required to withdraw as his counsel
because continued representation will result in violation of IRPCs
and MRPCs 1.1 1.3 1.4 and 1.6.

(Ex. F at 7; *see also id* at 4–5 (fact sheet supporting opinion.)[3]  As the citations in the quoted

passage indicate, Professor Yaroshefsky utilized the Indiana Rules of Conduct to which Kammen

is subject as a member of the Indiana Bar, the Model Rules of Professional Conduct, which

govern lawyers in the various branches of the United States Military, and national ethics

opinions and case law.

15.     Kammen then sought permission from Brigadier General Baker to withdraw from

his representation of Al-Nashiri.  (Ex. G.)  The relevant rule for excusal provides:

> After an attorney-client relationship has been formed between the
> accused and detailed defense counsel…, an authority competent to
> detail such counsel may excuse or change such counsel only: (i)
> Upon request of the accused or application for withdrawal by such
> counsel; or (ii) For other good cause shown on the record.

R.M.C. 505(d)(2).

16.     Brigadier General Baker excused Kammen, and directed him to file a written

"notice" of excusal with the military judge.  (Ex. H.)  In finding "good cause," Brigadier General

Baker relied upon Kammen's request to withdraw, including Petitioner Professor Yaroshefsky's

opinion, as well as "all the information I know about this matter—*both classified and

unclassified.*"  (*Id.*)

17.     On October 13, 2017, Kammen filed the written notice as directed.  Al-Nashiri,

through his sole remaining military counsel, moved to abate the proceedings until new counsel

learned in the law of capital cases could be located.  (Ex. I.)  Appointment of a new learned

---

[3] All exhibits referenced herein are annexed to the accompanying Declaration of Harold K. Gordon.

counsel would also require that the conditions causing Kammen's withdrawal be remedied, as any new lawyer would necessarily labor under the same ethical constraints.

### C.  Colonel Spath's Response:  Summary Contempt Proceedings

18.  On October 16, 2017, Colonel Spath—Respondent here, and the judge presiding over the Military Commission—issued a "Briefing Order."  (Ex. J.)  Without elaboration, he said that the commission had not found "good cause" to excuse civilian defense counsel, including Kammen, and thus directed civilian defense counsel to be present at Guantanamo for scheduling hearings beginning on October 30.  Colonel Spath also ordered expedited briefing on the motion to abate.

19.  On October 20, 2017, the government filed its response, objecting to the motion to abate.  (Ex. K.)  In the government's view, there was no reason to abate the proceedings because Kammen and the other civilians remained counsel for Al-Nashiri.

20.  On October 24, 2017, Brigadier General Baker filed a response on the issue of his authority to excuse Kammen and other civilian counsel.  (Ex. L.)  Two days later, Brigadier General Baker filed a response to the government's reply to the motion to abate.  (Ex. M.)  He explained that his power to excuse counsel for "good cause" is unilateral and unreviewable under the amended rules promulgated by the Secretary of Defense in 2011.  (*Id.*)

21.  On October 27, 2017, Respondent, Colonel Spath, denied the motion to abate. (Ex. N.)  The Order did not contest Brigadier General Baker's excusal of Kammen and did not purport to vacate Brigadier General Baker's order of excusal, but did assert that he had the authority to override Brigadier General Baker's finding.  Moreover, Colonel Spath stated that the defense had presented no evidence of intrusion warranting excusal for good cause.

22.     On October 30, 2017, Kammen and the other civilian lawyers did not appear at Guantanamo as Colonel Spath had directed.  Colonel Spath directed the parties to brief lawful next steps by noon the following day.

23.     The government filed its brief the same day.  (Ex. O.)  It laid out a road map including holding a hearing, making fact findings, ordering Brigadier General Baker to testify and to countermand his own orders, and holding him in criminal contempt if he failed to take any of these steps.  It also suggested the military judge should order the civilian lawyers to testify via video from Virginia and, if they failed to do so, find them in criminal contempt.

24.     On October 31, 2017, Colonel Spath convened the court and noted for the record the absence of Kammen and the other civilian defense attorneys.  (Ex. P.)  Colonel Spath made findings of fact that he deemed relevant both to the issues surrounding civilian counsel's absences and to the expected testimony of Brigadier General Baker.  (*Id.* at 10,020–27.)  The court noted these findings were found "at least by a preponderance of the evidence."  (*Id.*)

25.     Colonel Spath attempted to call Brigadier General Baker to testify.  Philip Sundel, Acting General Counsel for the Military Commissions Defense Organization, asserted Brigadier General Baker's privilege not to testify pursuant to Rule 501(b)(1) of the Rules for Military Commissions.  The privileges claimed by Brigadier General Baker were the "deliberative process privilege, which is a common law privilege; the government information privilege under Rule 506; the attorney-client privilege under Rule 502; the attorney work product privilege under common law; and additionally my obligation under my state ethics rules to protect confidential information under Rule 1.6."  (*Id.* at 10,039–40.)

26.     Sundel explained if the privileges were to be wrongfully pierced by the court, there would be irrevocable harm.  (*Id.* at 10,032.)  He also explained that the Model Rules of

Professional Responsibility require an attorney to pursue vehicles to challenge an order to pierce a privilege unless and until the highest available court decides the issue or declines to hear it. (*Id.* at 10,033.) Brigadier General Baker sought to take an appeal before being required to testify but Colonel Spath said, "[t]hat is not one of the options." (*Id.* at 10,031.)

27.     Colonel Spath then ordered Brigadier General Baker to "rescind the direction you gave when you excused both learned outside-appointed learned counsel and the two civilians," directing him "to send them a memo telling them their withdrawal is not approved because you don't have the authority." (*Id.* at 10,042.) Brigadier General again declined to do so. Colonel Spath then directed Brigadier General Baker to return the following day for contempt hearings.

28.     The contempt proceedings against Brigadier General Baker began on November 1. (Ex. Q.) Brigadier General Baker attempted to defend himself, including by arguing Colonel Spath had no jurisdiction over him, but Colonel Spath would not allow such argument. Colonel Spath repeatedly told Brigadier General Baker to sit down and not speak. When Brigadier General Baker "request[ed] to be heard," Colonel Spath threatened to have him removed. (*Id.* at 10,055.) Colonel Spath said, "I'm denying you the opportunity to be heard." (*Id.* at 10,054.)

29.     Colonel Spath found Brigadier General Baker in criminal contempt for willfully disobeying the order to rescind his excusal of civilian defense counsel and for refusing to testify. The military judge found that these acts interfered with the proceedings. Brigadier General Baker was sentenced to 21 days of confinement to his quarters and a $1,000 fine. (*Id.* at 10,072.)

### D.     Colonel Spath Orders Kammen And Professor Yaroshefsky to Appear

30.     Also on November 1, Colonel Spath issued an order directing Kammen and other civilian counsel to appear at the Marks Center in Alexandria, Virginia on November 3

to continue their representation of Mr. Al-Nashiri through videoconference.  (Ex. A.)

Kammen filed a Petition for Writ of Habeas Corpus and Motion for Declaratory Judgment in the

Southern District of Indiana.  (Ex. B.)[4]  After an initial hearing, the court determined that it had

jurisdiction over the controversy, the court stayed any "purported requirement of the military

commission hearing the case of *United States v. Al-Nashiri*, or the Military Commission Judge,

Colonel Vance Spath, that Mr. Kammen travel to Virginia . . . pending hearing in this Court."

(Ex. C at 2.)  The court ordered the government to file a response to Kammen's Petition for Writ

of Habeas Corpus and Motion for Declaratory Judgement on or before November 24, 2017.

31.     On November 6, 2017, Colonel Spath issued an order requiring Petitioner,

Professor Ellen Yaroshefsky, to be produced "to the Military Commission at the Mark Center,

4800 Mark Center Drive, Alexandria, Virginia 22350, to appear as witnesses via video

teleconference at the Commission's hearing scheduled to begin at 0900 hours on 13 November

2017." (Ex. D.)  The Order does not provide any procedure for the examination of Professor

Yaroshefsky, nor any indication that her testimony would be relevant to the charges against Al-

Nashiri.  But the transcripts from the November 3 proceedings of the Military Commission

reveal that the prosecutor accused Professor Yaroshefsky of providing a "contrived ethics

opinion" in "collu[sion]" with the Commission defense counsel's "scorched-earth strategy to

*obstruct the proceedings* by any means."  (Ex. E at 10, 174–76 (emphasis added).)

32.     Based on conversations over the past 48 hours with the government, Petitioner's

counsel has confirmed that the government intends to take all necessary steps to enforce Judge

---

[4] Brigadier General Baker likewise filed a petition for habeas corpus in the District Court for the District of Columbia, but the convening authority suspended Colonel Spath's sentence before Judge Lamberth could rule.  *See* Status Report, *Baker v. Spath*, No. 1:17-cv-2311-RCL (ECF No. 6) (D.D.C. filed November 3, 2017).

Spath's unlawful order, including, *inter alia*, serving her with a subpoena or other process compelling her attendance as a witness.

33.    Petitioner now seeks the same relief that the Southern District of Illinois granted to Kammen, or an order granting her a writ of habeas corpus, declaring Colonel Spath's seizure of Professor Yaroshefsky to be *ultra vires* and quashing any process issued to effectuate it.

## GROUNDS FOR RELIEF

### Ground I

### Colonel Spath Lacks Authority To Detain A United States Citizen In Military Custody

34.    Petitioner incorporates Paragraphs 1–33 as if fully set forth here.

35.    Colonel Spath is without authority to issue an order to detain a United States Citizen.

36.    A military commission is not a "court."  It is an Article I tribunal, akin to an administrative agency board, that operates under tightly constrained powers and may not act outside of the powers explicitly given it by statute.  Colonel Spath's position and commission operate under the auspices of 10 U.S.C. §§ 948–950 (the Military Commissions Act or MCA).

37.    The MCA was drafted in 2006 to authorize trial by military commission for violations of the law of war.  It is not part of the Uniform Code of Military Justice found at 10 U.S.C. §§ 801–946a.  The Uniform Code of Military Justice (UCMJ) is the foundation of military law and governs the conduct of the armed forces.

38.    The jurisdiction of a military commission is penal.  Persons subject to the military commission's jurisdiction are "any unprivileged enemy belligerents," 10 U.S.C. § 948(c). Professor Yaroshefsky is not subject to the jurisdiction of the MCA commission.

39.    18 U.S.C. § 4001(a) (the Non-Detention Act) states that "No citizen shall be imprisoned or otherwise detained except pursuant to an Act of Congress."  The MCA cannot

form the statutory predicate to satisfy the Non-Detention Act's requirements because its stated purpose is to try "alien unprivileged enemy belligerents." 10 U.S.C. § 948c. Respondents do not and cannot dispute Professor Yaroshefsky's status as an American citizen.

40.     Furthermore, any subpoena issued to effectuate Colonel Spath's order would be improper under R.M.C. 703, which provides the "right to witnesses" only to "part[ies]," and even then, only for those "witnesses whose testimony on a matter in issue . . . would be relevant and necessary." *Id.* 703(b)(1).

41.     Here, neither the prosecution nor the defense has requested Professor Yaroshefsky's testimony, and it would not be relevant to any matter before the Commission because the authority to excuse counsel for the defense is vested exclusively in the Chief Defense Counsel for Military Commissions, Brigadier General John G. Baker, USMC.

## Ground II

### Violation Of Fifth Amendment Rights

42.     Petitioner incorporates by reference paragraphs 1–41, *supra.*

43.     Colonel Spath's order deprives Professor Yaroshefsky of her due process rights under the Fifth Amendment because it was entered without any notice, much less service on her, that would provide an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate with the nature of the case.'").

44.     Likewise, the hearing that the order envisages threatens Professor Yaroshefsky's Fourth Amendment right to be secure against unreasonable searches and seizures, Fifth Amendment right against self-incrimination, Sixth Amendment right to counsel, and potentially

other substantive and procedural rights.  The procedure for Professor Yaroshefsky's appearance
before the Commission is unknown, as is its purpose.  Nor does Professor Yaroshefsky know the
questions the government will put to her, whether she has any right to refuse to answer or
terminate the inquisition, or the duration of the proceeding.  Counsel understands that
Commission witnesses are typically not permitted their own counsel within the secure
government facility, yet the Chief Prosecutor of the Commission has accused Professor
Yaroshefsky of providing "a contrived ethics opinion" in "collu[sion]" with the Commission
defense counsel's "scorched-earth strategy *to obstruct the proceedings* by any means."  (Ex. E at
10,174–76 (emphasis added).)

### Ground III

#### Unlawful Seizure

45.	Petitioner incorporates by reference paragraphs 1–44, *supra*.

46.	The Fourth Amendment to the United States Constitution states that citizens are to
be secure against "unreasonable searches and seizures."  U.S. Const. Amend. IV.
Professor Yaroshefsky has been unreasonably seized by an Article I tribunal that has improperly
reached outside its proceedings.  Colonel Spath has done so without explicit statutory
authorization, rendering his seizure, custody, and any detention unlawful.

### Ground IV

#### Unreasonable and Oppressive Burden

47.	Petitioner incorporates by reference paragraphs 1–46, *supra*.

48.	Compliance with Colonel Spath's order, and any subpoena or writ of attachment
that the government may issue to compel Professor Yaroshefsky to appear in Virginia, would be

unreasonable and unduly burdensome.  Although as of the time of this Petition—one business day before Professor Yaroshefsky's compelled appearance at a government building in Virginia—neither Colonel Spath's order nor any other process has been served on her, the government has confirmed that it will issue and serve her with a subpoena or take other steps as necessary to enforce Colonel Spath's order.  As the discussion to the analogous Rule for Court-Martial states, "a subpoena should be issued in time to permit service at least 24 hours before the time the witness will have to travel to comply with the subpoena."  R.C.M. 703(e)(2)(D); *cf. United States v. Carvin*, 555 F.2d 1303 (5th Cir. 1977).  Colonel Spath's order and any additional process will impose unlawful custody upon Professor Yaroshefsky, interfering with her professional and personal obligations, and forcing her to travel far from Manhattan to a government facility in Virginia to respond to questions from a military tribunal without counsel and with uncertain, if any, substantive or procedural rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner Ellen Yaroshefsky respectfully asks the Court to:

49.  Issue a writ of habeas corpus ordering that Professor Yaroshefsky be released from Colonel Spath's unlawful order to appear as witness in Virginia on November 13, 2017.

50.  Issue a declaration specifying that a military commission tribunal cannot hold Professor Yaroshefsky, a United States citizen, without explicit statutory authorization and declaring any further orders compelling  Professor Yaroshefsky to appear as a witness at any location are without legal authority and are null and void.

51.  Quash any subpoena, writ of attachment, or other process issued before November 13 to compel compliance with Colonel Spath's order.

52.     Preserve the status quo through issuance of a temporary restraining order until this matter can be fully briefed and heard.

53.     Order other such relief as this Court deems proper and just.

54.     No previous application for similar relief has been made.

Dated:        November 9, 2017                   Respectfully submitted,

                                                 By: _____

                                                     Harold K. Gordon (HG-1007)
                                                     Jones Day
                                                     250 Vesey Street
                                                     New York, New York 10281
                                                     (212) 326-3939

**VERIFICATION**

I declare, under penalty of perjury under the laws of the United States of America that the facts recited in the foregoing document are true and correct.

Executed on:

NN 8, 2017