# Exhibit H



**DEPARTMENT OF DEFENSE**
**CHIEF DEFENSE COUNSEL FOR MILITARY COMMISSIONS**
1620 DEFENSE PENTAGON
WASHINGTON, DC 20301-1620

Al-Nashiri (10015)
11 October 2017

MEMORANDUM FOR MR. RICHARD KAMMEN

SUBJECT:  Excusal as Learned Counsel in the Military Commissions Case of *United States v. Abd al-Rahim Hussein Muhammed Abdu Al-Nashiri (10015)*

Ref:  (a) R.M.C. 505(d)(2)

1.  I received your 6 October 2017 request to withdraw as Mr. Al-Nashiri's learned counsel for good cause.

2.  Rule for Military Commission (R.M.C.) 505(d)(2) states in relevant part:

> After an attorney-client relationship has been formed between the accused and detailed defense counsel …, an authority competent to detail such counsel may excuse or change such counsel only:  (i) Upon request of the accused or application for withdrawal by such counsel; or (ii) For other good cause shown on the record.

3.  I have reviewed your attached request to withdraw as learned counsel for Mr. Al-Nashiri, the applicable statue and regulations governing military commissions, the relevant rules for professional responsibility, and applicable case law.  Additionally, I have considered all the information I know about this matter – both classified and unclassified.  After careful reflection on the same, I find good cause to approve your request to withdraw as learned counsel for Mr. Al-Nashiri based on the distinct circumstances of this case.  Accordingly, pursuant to R.M.C. 505(d)(2) you are excused as his learned counsel.  Consistent with MCRC 4.4, you must file a written notice of this excusal with the military judge.

J. G. BAKER
Brigadier General, U.S. Marine Corps
Chief Defense Counsel for
   Military Commissions

Attachment:
As stated

cc:
DGC (P&HP)
Nashiri Defense Team
Mr. al Nashiri
MCDO Admin

# KAMMEN & MOUDY

*Attorneys at Law*

135 N. PENNSYLVANIA STREET, SUITE 1175

INDIANAPOLIS, IN 46204

RICHARD KAMMEN
JOSHUA MOUDY

**TELEPHONE** (317) 236-0400
**FACSIMLE** (317) 638-7976

_____
Grace Atwater

October 6, 2017

Dear Brigadier General Baker:

I submit this letter to you pursuant to your supervisory authority over the "proper representation of all accused referred to a trial before a military commission appointed pursuant to the M.C.A." R.T.M.C. 9-1(a)(2); R.T.M.C. 9-3(a). I have come to the conclusion that I am ethically obligated to withdraw as Learned Counsel for Mr. Abdul Rahim al-Nashiri before the military commission in Guantanamo.

The attached document(s) reflect why good cause for my withdrawal exists. Specifically, the Indiana Rules of Professional Conduct, by which I am bound, require me to:

(a) provide my client with competent representation, Ind. R. Prof. Conduct 1.1;
(b) communicate matters to my client to the extent reasonably necessary to allow him to make informed decisions regarding the representation, Ind.  R. Prof. Conduct 1.4; and
(c) protect my client's confidences unless he gives his informed consent to my disclosure of those confidences, Ind. R. Prof. Conduct 1.6.

Based on facts that I know, both classified and unclassified, extraordinary circumstances exist which prevent me from meeting my obligations under these rules.

This is further confirmed by the attached opinion letter from Ms. Ellen Yaroshefsky, a lawyer and a nationally recognized expert in legal ethics. Professor Yasoshefsky's opinion is based solely on a condensed and unclassified summary of some of the relevant facts. Of course, you have a greater understanding of the entire universe of facts creating my ethical obligation to withdraw.

Therefore, pursuant to R.M.C. 505(d)(2)(B), I hereby submit my application to withdraw for good cause.


Very Respectfully,


_/s/Richard Kammen_____
Richard Kammen
Attorney at Law

Richard@Kammenlaw.com

**Ellen Yaroshefsky**

Attorney

670 West End Avenue, #6A ▪ New York, NY 10025

Yaroshef@gmail.com

516-463-5882

---

October 5, 2017

Mr. Rick Kammen

Kammen and Moudy

135 N. Pennsylvania Street, Suite 1175

Indianapolis, Indiana 46204

Re: Guantanamo Military Commission Case

   *Charges Against Abd al-Rahim Hussayn Muhammed  al-Nashiri*

Dear Mr. Kammen:

   This letter is in response to your request for an opinion regarding your ethical obligations in this matter.

   You have advised me that you are learned counsel (death penalty counsel) for Mr. al-Nashiri who is charged with capital crimes before a Military Commission in Guantanamo Bay. You provided me with the facts set forth below as well as a document, attached hereto, entitled "Governmental Interference with Attorney-Client Communications, Intrusions Into Attorney-Client Relationships, Undisclosed Monitoring, and Infiltration of Defense Teams" (Exhibit A). You are admitted to practice in Indiana.

   I have no personal knowledge of the facts of this case.  In rendering my opinion, I rely upon the facts set forth below and the document provided (Exhibit A).  Some of the facts below contain references to redacted material because some of the information is classified information.

   My opinion is predicated upon the standards of care and governing standards of professional conduct set forth in the Model Rules of Professional Conduct (governing lawyers in the various branches of the U.S. military), Indiana Rules of Professional Conduct and that of every state in the country, as well as related ethics opinions and case law. I have also relied upon

1

standard treatises in the area of legal ethics. The ethical and fiduciary duties identified below are firmly established. My opinion is expressed to a reasonable degree of professional certainty.

My Qualifications

I am the Howard Lichtenstein Professor of Legal Ethics and the Director of the Monroe H. Freedman Institute for the Study of Legal Ethics at the Maurice A. Deane School of Law at Hofstra University in New York.

My qualifications to serve as an expert witness on legal ethics are set forth more fully in my curriculum vitae, attached as Exhibit B. It describes my educational background, legal experience, bar admissions, academic affiliations, professional activities, bar committee memberships, publications and participation as a lecturer at bar seminars, CLE panels and at other organizations on matters related to professional responsibility.

Briefly, I have taught courses in the field of lawyer regulation for the past twenty-three years and was named to my current position in 2016. Before that I was the Director of the Jacob Burns Ethics Center at the Benjamin N. Cardozo School of Law School from 1994-2016. I have published numerous articles in the field and have produced materials for the American Bar Association and other organizations. I have spoken widely on legal ethics including continuing legal education programs before numerous bar associations, lawyer associations, and law schools.

I serve on the New York State Bar Association Committee on Standards for Attorney Conduct as well as the Committee for Professional Responsibility of the Association of the Bar of the City of New York. I am co-chair of the Ethics Advisory Committee of the National Association of Criminal Defense Lawyers. I am also the ethics advisor to the Prosecutorial and Judicial Complaint Center of the New York State Association of Criminal Defense Lawyers. I am on the Board of Advisors of the New York County Lawyers Ethics Institute and a member of its Professional Ethics Committee. I served as co-chair of the ethics committee of the Criminal Justice Section of the American Bar Association.

I regularly consult with lawyers and law firms on a wide range of matters related to legal ethics. I have served as an ethics expert in litigation.

<u>Factual Basis</u>

You have provided the following facts:

- Mr. al Nashiri is charged with capital crimes before a military Commission in Guantanamo Bay. Mr. al-Nashiri was charged in 2008, and his case has been pending since 2011.

- The attached Exhibit A "Governmental Interference with Attorney-Client Communications, Intrusions Into Attorney-Client Relationships, Undisclosed Monitoring, and Infiltration of Defense Teams" established that prior to 2017, there was a significant history of actual and attempted governmental intrusion into the attorney-client relationships, including the placement of listening devices in attorney-client meeting rooms.

- On June 14, 2017, the Chief Defense Counsel, Brig. Gen. John Baker, USMC, issued a memo, notifying defense counsel that he recently came into possession of information raising concerns that defense attorney-client confidentiality had been and/or would be breached again. As a result, he advised all defense counsel to discontinue attorney-client meetings with their clients until they could "know with certainty that improper monitoring of such meetings is not occurring."

- In late June, 2017, prosecutors represented to the military judge presiding over the Nashiri case that the general's concerns did not affect the spaces in which Al-Nashiri meets with counsel. However, as reflected in pleadings filed with the US Supreme Court, defense counsel obtained information "then [REDACTED] contradicting the prosecution's assurances."

- Furthermore, the Chief Defense Counsel, who is aware of the redacted facts, described above recently stated publicly, "nothing has changed to cause me to change my advice. Indeed, the more I learn, the more resolute I have become in my position."

- After Mr. al-Nashiri's defense team received General Baker's advice in June 2017, it filed a series of motions seeking discovery, an evidentiary hearing, and permission to inform the client about the risks to attorney-client confidentiality. These motions like the redacted information contradicting the prosecution's assurances are classified.

- Despite the request for further discovery, to present evidence and to make argument, the military judge issued a series of rulings the body of which are classified.

- The military judge denied the requests for discovery as well as the request to have a hearing to determine the extent to which defense attorney-client confidentiality had been or would be in the future compromised. The Judge denied these requests even though the prosecution's previous assurances had been contradicted.

- The Judge also prohibited Mr. al-Nashi's defense lawyers from informing the client of the General Baker's concerns or the facts underlying those concerns because the information is classified and the military judge has no authority to permit disclosure to someone (Mr. al-Nashiri) who has no clearance.

- You state that "We have no other means by which to assess the level of risk of intrusion into attorney-client confidentiality." You assess that risk to be substantial and ongoing, based upon past practice by the government, (Exhibit A), the evaluation of the Chief Defense Counsel, and classified information within your possession.

- Following the Chief Defense Counsel's advice not to utilize attorney-client meeting spaces in Guantanamo, neither you nor your team have had a substantive meeting with the client since June of 2017.

- Mr. Al Nashiri has expressed concern about the lack of any substantive meeting. You have advised him in sum and substance that the defense is precluded from explaining anything regarding the situation to him, including obtaining his informed consent to the risks of disclosure of his confidences.

- In response to Mr. Al Nashiri's inquiries, the defense has had to tell him "that with respect to our visits, the situation has become even more complicated as a result of rulings that we ethically need to share with him but are precluded from doing so." Your recent correspondence with him included the following statement: "But as for now, for reasons that you absolutely need to know, and have a right to know, but that we are not allowed to tell you, it is necessary that we not visit with you."

Opinion

The conduct of military and civilian lawyers who appear before the Military Commission is governed by Model Rule of Professional Conduct ("MRPC") and the Rules for Military Commission ("RMC") as well as the Rules of Professional Conduct of the individual state where the lawyer is admitted to practice. You are admitted to practice in Indiana and subject to the Indiana Rules of Professional Conduct. ("IRPC"). In this matter, the applicable MRPC and IRPC are the same.

A bedrock professional obligation is that the lawyer shall provide competent representation to a client. MRPC 1.1; IRPC 1.1; RMC 502 (5) (specifying duties of defense counsel). Competent representation includes the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. The accompanying commentary to MRPC 1.1 provides that "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation." Lawyers must obtain necessary and sufficient information to provide sound and informed advice to a client. Thus, the lawyer must undertake "depth and quality" [in an] investigation to ensure compliance with the law. " *Upjohn v. United States* 449 U.S. 383 (1981).

Essential to competent representation is the lawyer's corollary duty to maintain confidential communication. The foundation of the attorney-client relationship is the free exchange of information and the frank and full disclosure necessary to provide effective representation. Without this free exchange and promise of confidentiality, especially through language and cultural barriers, the ability to provide competent counsel is seriously impaired. This foundational duty of confidentiality, dating from the common law, has been recognized as fundamental to any representation throughout modern history. See e.g. *In re Seslar*, 15 N.J. 393, 105 A. 32d 395 (1954) (discussing the common law history of the attorney-client privilege).

This duty of confidentiality is in the legal ethics rules of all jurisdictions in the United States and reflected in the RMCs. It requires that the lawyer maintain confidentiality of all information related to representation, both attorney-client privileged information and other "information related to the representation of a client." MRPC 1.6(a); IRPC 1.6 (a). (See *United States v. Markham*, 60 M.J. 198, 209 (C.A.A.F.) (explaining that the "attorney-client privilege is

a rule of evidence that applies in judicial proceedings while the rule of confidentiality is a mandate of professional ethics that applies beyond the courtroom doors.".). RMC Rule 502 (d)(7) provides that "Defense counsel must: guard the interests of the accused zealously within the bounds of the law…and may not disclose the accused's secrets or confidences except as the accused may authorize."

The lawyer may not reveal confidential information without informed consent of the client or except as authorized by specified exceptions to the confidentiality rules. None of those exceptions are applicable here.

Part and parcel of your ethical duty in this case is to obtain sensitive information necessary to this representation and to provide assurances to the client that the information will be kept confidential – and not shared with the government. Even in circumstances where a confidential meeting space is secured, a lawyer will often have difficulty discussing sensitive information and obtaining the client's trust. In charges that could result in the death penalty, the fact that the government is privy to the lawyer-client discussions chills any substantive communication. Without the assurance of confidentiality, the client may be reluctant to reveal information to the lawyer and the lawyer cannot seek to obtain such information from a client.

A lawyer is ethically prohibited from communicating with the client, notably about sensitive matters, when that lawyer believes that there is a substantial and ongoing risk that the government can listen to the communication. Once a lawyer or a client "believe that the government is listening, there will be no free exchange of information and the client's defense is harmed." *National Association of Criminal Defense Lawyers Ethics Advisory Opinion* 02-02 at 5, n. 4 (2002) (hereinafter "NACDL"). NACDL issued three opinions about the fundamental ethical obligations of civilian counsel in Military Commissions in 2001, 2002 and 2012, *NACDL Ethics Advisory Op.* 02-01 (November 2002); *NACDL Ethics Advisory Op* 03-04 (August 2003); *NACDL Ethics Advisory Op*.12-01 (February2012). Each of these opinions affirms the fundamental ethical obligation of defense counsel to ensure and protect client confidential communications.

Not only must a lawyer be competent, but the lawyer had a duty of loyalty to the client. The lawyer is the client's fiduciary and deals with matters "most confidential and vital to the client." *Restatement of the Law Governing Lawyers.* §16. Assurances of loyalty are essential

and that duty prohibits the lawyer from harming the client. Thus, the lawyer is prohibited from using or disclosing sensitive information about the client and the lawyer has "an ethical duty… to take affirmative action to protect the confidentiality of attorney client communications from government surveillance. *NACDL Ethics Advisory Op.* 02-01 at 1 (Nov 2002).

Consistent with these ethical duties is your obligation of diligence. "A lawyer shall act with reasonable diligence and promptness in representing a client. "IRPC 1.3; MRPC 1.3. Thus, the duties of competence and diligence require you to undertake action to challenge the substance of orders or practices that prevent a lawyer from providing competent representation and assuring confidentiality. *NACDL Ethics Advisory Op.* 12-01 at 2 (February 2012) (duty to challenge orders that interfere with ethical obligations). You have fulfilled this obligation by undertaking necessary steps to seek to end the surveillance, initially by attempting to discover the extent of it. You have filed a series of motions seeking discovery and an evidentiary hearing, and have made arguments to the military judge to attempt to remedy this lack of ability to communicate confidentially with your client. The military judge denied the requests for discovery as well as the request to have a hearing to determine the extent to which attorney-client confidentiality had been or would be in the future compromised. The Judge denied these requests even though the prosecution's previous assurances about confidentiality were later contradicted. You were prohibited from informing Mr. al-Nashiri of General Baker's concerns about intrusion into the attorney-client relationship or the facts underlying those concerns because the information is classified and the military judge has no authority to permit disclosure to Mr. al-Nashiri who does not have clearance. There is no available judicial or other recourse to challenge your inability to communicate confidentially with your client.

Moreover, classified information prevents you from explaining to your client the reasons for lack of confidentiality. Consequently, you cannot even meet with your client in confidence to discuss the reasons that you cannot provide competent representation. Your client has enquired about the fact that you have not met with him. You cannot comply with your ethical duty to communicate with your client under these circumstances.

MRPC 1.4 provides that:

   (a)  A lawyer shall:

      (1)  promptly inform the client of any decision or circumstances with respect to which the client's informed consent . . . is required[.]"

      (2)  reasonably consult with the client about the means by which the client's objectives are to be accomplished;

      (3)  keep the client reasonably informed about the status of the matter;

      (4)  promptly comply with reasonable requests for information;

   (b)  A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The current situation set forth in the facts causes you to violate your duty of communication to your client. This situation is untenable.

This ethical quandary is profound and not reconcilable with your ethical obligation under the IRPC and the MRPC to act diligently and competently, to maintain confidentiality, and adhere to the duties of loyalty and communication.

You cannot, consistent with your ethical obligation continue to represent Mr. al-Nashiri. Rule 1.16 (a) (1) of Professional Conduct mandates that you withdraw from representation.  It provides that a lawyer "shall withdraw from representation of a client if the representation involves a violation of the rules of professional conduct or other law." You are required to withdraw as his counsel because continued representation will result in a violation of IRPCs and MRPCs 1.1, 1.3 1.4 and 1.6.

Yours truly,

Ellen Yaroshefsky

# EXHIBIT A

**GOVERNMENTAL INTERFERENCE WITH ATTORNEY-CLIENT
COMMUNICATIONS, INTRUSIONS INTO ATTORNEY-CLIENT
RELATIONSHIPS, UNDISCLOSED MONITORING,
AND INFILTRATION OF DEFENSE TEAMS**

## Late 2008

In  2008 Nashiri is charged with capital crimes in Guantanamo Bay. The charges
are dismissed in 2009 and reinstituted in 2011.

## Mid-2011

The Convening Authority attempts to issue a protective order governing the
exchange of correspondence and other documents between defense counsel and
their clients. The defense objects, and the protective order is withdrawn.

## 2011

Prison authorities prohibit all telephone communication between and their
attorneys. Defense counsel challenge the telephone ban, and lose.  Defense
counsel must travel to Guantanamo for every in-person conversation with their
clients.

## October 2011

Guards confiscate privileged legal materials from the accuseds' cells, and JTF-
GTMO's legal department reads counsels' correspondence to their clients.[3]
Defense counsel have no ability to independently investigate the extent of the
disclosure or whether intelligence agencies were involved.

---

[3] ACLU, In Guantánamo 911 Pretrial Hearings, Defense Attorneys Protest Obstacles to Effective
Counsel (June 2017), available at https://www.aclu.org/blog/guantanamo-911-pretrial-hearings-
defense-attorneys-protest-obstacles-effective-counsel; United States Military Commission, *United
States of America v. Mohammad et al.,* AE 008 (MAH), at 8, .

Over time, JTF-GTMO personnel seize privileged mail in defendants' cells so often that defense counsel characterize the seizures as "systematic."[4]

## November 2011

Defense counsel send the latest in a long series of requests to the Deputy Secretary of Defense for Detainee Affairs to stop reviewing attorney-client privileged communications.[5] Counsel predict, "The review and censorship of legal materials will effectively grind litigation to a halt by barring legally required attorney-client communications."[6]

## December 2011

The Commander of Joint Task Force-Guantanamo issues orders requiring military officials to review all legal correspondence between defense counsel and their clients.[7] Counsel who do not agree to comply cannot visit their clients, and are placed in "the untenable position of either choosing to comply with the ethical rules applicable to them in military commissions, or violating those rules in order to communicate with their clients."[8]

---

[4] Joint Defense Counsel Letter to Charles Hagel, Secretary of Defense; Subject: Requests to Improve the Conditions of Confinement in Guantanamo (20 May 2013), at 3m=, available at https://ia600404.us.archive.org/15/items/703318-2013-05-20-joint-letter-to-sec-hagel-pii-redacted/703318-2013-05-20-joint-letter-to-sec-hagel-pii-redacted.pdf (hereinafter "Joint Defense Counsel Letter to Secretary Hagel (20 May 2013)."). See also OSCE Human Rights Situation GTMO (November 2015), at 178 (citing interviews with defense counsel).

[5] Letter from Counsel for High-Value Detainees to Deputy Secretary of Defense for Detainee Affairs, Subject: Request to Cease and Desist On-Going Attorney-Client Privilege Violations and For Compliance With Domestic and International Law Standards Regarding Detention Conditions, 1 November 2011, available at http://media.miamiherald.com/smedia/2011/11/01/17/45/l0ijo.So.56.pdf.

[6] Letter from Counsel for High-Value Detainees to Deputy Secretary of Defense for Detainee Affairs, Subject: Request to Cease and Desist On-Going Attorney-Client Privilege Violations and For Compliance With Domestic and International Law Standards Regarding Detention Conditions, 1 November 2011, available at http://media.miamiherald.com/smedia/2011/11/01/17/45/l0ijo.So.56.pdf.

[7] JTF-GTMO Commander, "Memorandum For: See Distribution; Order Governing Written Communications Management for Detainees Involved in Military Commissions, (27 December 2011), available at JTF-GTMO Commander, "Memorandum For See Distribution - Order Governing Logistics of Defense Counsel Access to Detainees Involved in Military Commissions", 27 December 2011, available at https://www.aclu.org/files/assets/gitmo_orders_20111227.pdf.

[8] United States Military Commission, *United States of America v. Mohammad et al.,* AE 008 (MAH), avai

**January 2012**

The Chief Defense Counsel determines that defense counsel in *US v. Mohammad, et al*, cannot adequately safeguard attorney-client privileged communications, and issues an ethics instruction prohibiting defense counsel from using the Guantanamo legal mail system for privileged communications. Defense counsel are unable to exchange confidential written communications with their clients for almost two years,[9] and face-to-face client meetings become substantially less effective.[10] A military commissions order in *US v. Mohammad, et al* regarding privileged written communications management is not adopted until November 2013.[11]

**Also in January 2012**

JTF-GTMO's chief staff attorney reportedly discovers the rooms in which defense counsel had been meetings clients for years are wired with microphones that look like smoke detectors. The chief of the guard force reportedly assures him nobody at Guantanamo was turning on the microphones to listen in on privileged attorney-client meetings.[12] The prison camp commander is reportedly left unaware of the discovery,[13] as are defense counsel.

**March 2012**

The prison camp commander writes Southern Command that "no microphones are installed" in attorney/client meeting rooms "to ensure privacy between the attorney and client is maintained."[14]

---

[9] LAWFARE Another Order in the 911 Case, This One On Legal Mail, available at https://www.lawfareblog.com/another-order-911-case-one-legal-mail#.

[10] United States Military Commission, *United States of America v. Mohammad et al.,* AE 008 (MAH), at 9.

[11] United States Military Commission, *United States of America v. Mohammad et al.,* AE 018U, 6 November 2013.

[12] Carol Rosenberg, "Attorney-client meeting room was bugged, Navy lawyer testifies at Guantánamo", Miami Herald website (12 February 2013) available at http://www.miamiherald.com/news /nationworld/world/americas/guantanamo/article1947210.html

[13] Carol Rosenberg, "Attorney-client meeting room was bugged, Navy lawyer testifies at Guantánamo", Miami Herald website (12 February 2013) available at http://www.miamiherald.com/news /nationworld/world/americas/guantanamo/article1947210.html

[14] Carol Rosenberg, "Attorney-client meeting room was bugged, Navy lawyer testifies at Guantánamo", Miami Herald website (12 February 2013) available at

**May 2012**

At arraignment, defense attorneys for accused charged in *US v. Mohammad, et al* argue describe how they were unable to confidentially communicate with their clients during the period in which the Convening Authority decided whether to move forward with capital charges.[15]

**January 2013**

An unknown government entity interrupts a military commission hearing by remotely silencing the courtroom audio feed. The act is tantamount to censoring the proceedings, a function reserved for the judge.[16]

Defense counsel discover that courtroom microphones can capture confidential conversations between attorneys and their clients, even when purposefully muted by attorneys.

**February 2013**

The commander of the detention camp acknowledges under oath that he had known for more than a year that several attorney-client meeting rooms contained cameras and dummy smoke detectors serving as listening devices.[17]

The Government argues in court there was no effort to conceal the devices, and their purpose was clearly labeled.[18] The military judge ordered JTF-GTMO to immediately dismantle the listening devices.

---

http://www.miamiherald.com/news
/nationworld/world/americas/guantanamo/article1947210.html
[15] Lawfare, Another Order in the 9/11 Case, This One On Legal Mail (6 November 2013) available at https://www.lawfareblog.com/another-order-911-case-one-legal-mail#.

[16] http://www.newyorker.com/news/daily-comment/a-red-light-at-guantnamo

[17] KSM II (TRANS13February2013-AM2), at 2203.
[18] Carol Rosenberg, "Attorney-client meeting room was bugged, Navy lawyer testifies at Guantánamo", Miami Herald website (12 February 2013) available at http://www.miamiherald.com/news
/nationworld/world/americas/guantanamo/article1947210.html

Defense counsel describe the "crippling" impact of the spying revelation on the effective assistance of counsel and the right to a fair trial, "grounds alone which would justify appellate reversal of any military commissions conviction."[19] Defense counsel have no ability to independently investigate disclosures or whether intelligence agencies were involved.

## March 2013

Defense counsel discover, through a series of IT-related failures, that some unknown amount of privileged work product had been disclosed to the prosecution, IT personnel not bound by non-disclosure agreements, and other unknown entities. The failures demonstrate that irrespective of its privileged nature, defense counsel computer data is not segregated or treated differently than data belonging to other computer system users. Defense counsel have no ability to independently investigate these disclosures, whether to mitigate harm, evaluate remediation, look for other disclosures, or reliably reassure their clients that, going forward, privileged work product will be protected.

- Defense counsel learn that despite assurances to the contrary, active monitoring of their internet use is not conducted differently than for other system users, allowing IT technicians outside MCDO to monitor defense counsel on-line. The failure is revealed when a defense team member opens a web page and immediately receives a phone call about sidebar content from an unknown IT technician.

- 

- A huge number of defense computer files unaccountably disappear from network systems, including materials as highly sensitive as letters between counsel and their clients  Files from defense counsel are unaccountably placed in other organizations' computer folders. Some defense team members are unable to access their files or edit shared files. The situation worsens over time.[20]

- Following broad searches of archived electronic communications on behalf of the prosecution, IT technicians send the prosecution what may have been hundreds of thousands of internal defense emails.[21] The Chief

---

[19] Joint Defense Counsel Letter to Secretary Hagel (20 May 2013).

[20] Lawfare, 9/18 Session #2: the Chief Defense Counsel on IT (18 September 2013), available at https://www.lawfareblog.com/918-session-2-chief-defense-counsel-it.

[21] The searches yield hundreds of thousands of results, contained in an undetermined number of emails.

Prosecutor guarantees that "[a]t no time did any prosecutor actually view the content of any privileged defense communications".[22]

**April 2013**

The in light of these IT-related failures, the Chief Defense Counsel determines that defense counsel cannot adequately safeguard attorney-client privileged communications. The CDC issues an ethics instruction prohibiting defense counsel from using Defense Department computer networks, including email, to transmit privileged or confidential information. Efforts to mitigate the risk of improper disclosure more than triple the amount of time necessary for defense counsel to draft and file pleadings.[23]

**April 2013**

The military judge in *US v al Nashiri* abates proceedings for two months due to the Government intrusions into defense e-mails.[24]

**May 2013**

After receiving no response to thirteen (13) letters addressed to the Deputy Assistant Secretary of Defense for Rule of Law and Detainee Policy, defense counsel write directly to the Secretary of Defense to address, inter alia, the systematic seizure of attorney-client privileged materials. Counsel ask the Secretary of Defense to cease the daily searches of legal bins and "order an immediate investigation into the identity of the persons responsible for ordering these seizures of attorney-client privileged materials as well as the purpose for the seizures."[25]

---

[22] OSCE Human Rights Situation GTMO (November 2015), at 2-3 (quoting Chief Prosecutor Mark Martins Remarks at Guantanamo Bay (10 June 2013), available at http://www.lawfareblog.com/wp-content/uploads/2013/06/Chief-Prosecutor-Statement ).

[23] OSCE Human Rights Situation GTMO (November 2015), at 179-180.

[24] Washington Post, Guantanamo dogged by new controversy after mishandling of e-mails (11 April 2013), available at https://www.washingtonpost.com/national/guantanamo-dogged-by-new-controversy-after-mishandling-of-e-mails/2013/04/11/1973bf9a-a2dd-11e2-82bc-511538ae90a4_story.html?utm_term=.aa852f0cda5c.

[25] Joint Defense Counsel Letter to Secretary Hagel (20 May 2013).

"This systematic pattern of harassment, degradation, and unauthorized seizures of attorney client privileged materials has degraded the trust and respect necessary to establish and maintain an effective attorney client relationship. These unprecedented violations destroy the prisoner's confidence in the confidentiality and sanctity of defense work product and discourage them from leaving their cells to attend meetings with their attorneys since their cells are tossed whenever they do so."[26]

## August 2013

The judge in *US v al Nashiri* accepts over defense objections, JTF-GTMO assertions that attorney-client meetings were not monitored over the previous two years, and decides there no need to consider whether meetings were monitored in the years prior.[27] As for future monitoring:

"In the absence of evidence of past monitoring, issuing an order prohibiting future monitoring would constitute judicial overreach and issuance of an advisory opinion. The JTF Commander and his subordinates have a preexisting legal duty not to monitor attorney-client communications, and issuing an order requiring them to execute their duties would be superfluous."[28]

## November 2013

After two years of litigation, the judge in *US v. Mohammad, et al* issue an order regarding privileged written communications management.[29]

---

[26] Joint Defense Counsel Letter to Secretary Hagel (20 May 2013), at 5.

[27] *US v. Al-Nashiri,* AE 149K, "Order - Defense Motion for Appropriate Relief: Determine the Extent of Past Monitoring at Camp Echo II and Order that No Future Monitoring Occur in JTF-GTMO Facilities", 5 August 2013.

[28] *US v. Al-Nashiri,* AE 149K, "Order - Defense Motion for Appropriate Relief: Determine the Extent of Past Monitoring at Camp Echo II and Order that No Future Monitoring Occur in JTF-GTMO Facilities", 5 August 2013, at 4.

[29] United States Military Commission, *United States of America v. Mohammad et al.,* AE 018U, 6 November 2013.

**Late 2013**

The FBI successfully recruits an informant on Mr. bin al Shibh's legal team.

**April 2014**

The FBI tries to recruit a second informant. Defense counsel discover the first informant. Court proceedings abate pending an investigation. The judge appoints a special counsel to investigate the matter.

**February 2015**

During  Pre-trial hearings for *US v. Mohammad, et al,* resume.[30] Mr. bin al Shibh immediately identifies a defense team interpreter in the military commission courtroom who had previously worked at a CIA black site where Mr. bin al Shibh was tortured.[31]

**August 2015**

OSCE representatives who are conducting a comprehensive human rights assessment of the situation of detainees at Guantánamo receive assurances from the US that:

- "[T]here are currently no listening devices in rooms used for attorney-client meetings [and] that private conversations between counsel and their client in the courtroom remain private and are not recorded, transmitted or shared with anyone outside the privileged attorney-client relationship."[32]
- "[T]he prosecution is not involved in reviewing any detainee's legal mail, does not communicate with JTFGTMO personnel concerning the review of materials, and is not privy to the information contained in the legal mail."[33]

---

[30] Reuters, How a Simple Phone Call Changed the Course of Justice at GITMO (12 October 2015) available at http://www.newsweek.com/ramzi-bin-al-shibh-gitmo-379202. [

[31] http://www.independent.co.uk/news/world/americas/coincidence-or-infiltration-trial-of-alleged-911-plotters-halted-after-accused-recognises-10034863.html  [cite something else - can't get pdf]

[32] OSCE Human Rights Situation of Detainees at Guantánamo (November 2015), at para. 402, citing US comments to the draft report that were submitted on 6 August 2015. Id at para. 96.

[33] OSCE Human Rights Situation of Detainees at Guantánamo (November 2015), at fn 1036 citing US comments to the draft report that were submitted on 6 August 2015. Id at para. 96.

**June 2017**

The government acknowledges having "unintentionally" eavesdropped on attorney-client communications at Guantanamo.[34]

---

[34] http://www.miamiherald.com/news/nation-world/world/americas/guantanamo/article159333239.html

**EXHIBIT B**

# ELLEN YAROSHEFSKY

*Howard Lichtenstein Distinguished Professor of Legal Ethics*
*Executive Director of the Monroe Freedman Institute for the Study of Legal Ethics*
Maurice A. Deane School of Law
Hofstra University
121 Hofstra University
Hempstead, NY 115549
(516) 463-5882
yaroshef@hofstra.edu

---

## ACADEMIC EMPLOYMENT

**Hofstra University School of Law**                                         2016-Present
*Howard Lichtenstein Distinguished Professor of Legal Ethics*
*Executive Director of the Monroe H. Freedman Institute for the Study of Legal Ethics*
Teaches a range of courses in Legal Ethics, Criminal Procedure, Access to Justice
Develop symposia and ethics programs
Directs the Freedman Fellowship Program

**Benjamin N. Cardozo School of Law**                                         1994-2016
*Executive Director, Jacob Burns Ethics Center in the Practice of Law*
*Clinical Professor of Law*
Taught a range of courses in Legal and Judicial Ethics, Evidence, and Wrongful Convictions
Youth Justice Clinic.
Developed symposia and ethics programs.
Directed and taught Cardozo's Intensive Trial Advocacy Program.

**Columbia Law School**                                                       Spring 2014
*Adjunct Professor of Law*                                                    Spring 2015
Course: Professional Responsibility

**Fordham School of Law**                                                     Fall 2001
*Adjunct Professor of Law*                                                    Fall 2010
Course: Ethics in Criminal Advocacy

## PROFESSIONAL SERVICE

New York State Bar Association Committee on                                   2003- Present
Standards of Attorney Conduct (COSAC)

New York County Lawyers Association                                          2008-Present
Professional Ethics Committee

New York Civil Liberties Union                                               2015-Present

1

Board Member
National Association of Criminal Defense Lawyers                           2003-Present
Co-chair, Ethics Advisory Committee

American Bar Association                                                   2006 -2014
Criminal Justice Section
Co-chair of Ethics, Gideon and Professionalism Committee

New York State Joint Commission on Public Ethics (JCOPE)                  2012-2014
Commissioner

Association of the Bar of the City of New York                            2008-2011
Criminal Courts Committee

New York County Lawyers Association                                       2004 -2007
Justice Center Advisory Board

Association of the Bar of the City of New York                            2002-2004
Committee on Professional Responsibility                                  1994 -1998

National Conference of Bar Examiners                                      2002
MPRE Drafting Committee

Center for Constitutional Rights                                          2001-2015
Executive Committee
Board Member

Legal Services for New York City                                          2001- 2002
LSNY Planning Process Advisory Committee

## PUBLICATIONS

*Ministers of Justice and Mass Incarceration, (*with Lissa Griffin)  Georgetown J. Legal Ethics 301 (2017)

*Prosecutorial Accountability 2.0*, (with Bruce A. Green),  92 NOTRE DAME L. REV. 51 (2016).

 *New Models for Prosecutorial Accountability*, 2016 CARDOZO L. REV. de novo 132 (2016).

*Changing the School to Prison Pipeline: Integrating Trauma Informed Care
in the New York City School System,* in Collected Essays Impact: Threat of Economic
Inequality, 1 N.Y Law School Impact Center for Public Service Law J. 99 (2015)
(with Anna Shwedel)

*Ethical Issues in Class Action Representation,* Institute for Law and Economic Policy Conference
Materials (2015)

*Waiting for the Elevator: Talking About Race*, 27 Georgetown J. Legal Ethics 1023 (2014)

2

*Defense Lawyering and Wrongful Convictions* (with Laura Schaefer)*,* Allison D. Redlich, James R. Acker, Robert J. Norris & Catherine L. Bonventre (eds.), Examining Wrongful Convictions: Stepping Back, Moving Forward (Durham, NC: Carolina Academic Press) (2014)

*Ethics in Criminal Advocacy*, The State of Criminal Justice 2013 (American Bar Association) (coauthored with Peter A. Joy)

*50th Anniversary of Brady: Cognitive Bias and Beyond*, The Champion, June 2013

*New Orleans Prosecutorial Disclosure in Practice After Connick v. Thompson,* 25 Georgetown J. Legal Ethics 913 (2012)

*Ethics in Criminal Advocacy*, The State of Criminal Justice 2012 (American Bar Association) (coauthored with Peter A. Joy)

*Prosecution Ethics in Context* (with Bruce A. Green), in Lawyers in Practice (Leslie C. Levin and Lynn Mather (eds.), University of Chicago Press (2012)

*Prosecutorial Disclosure Obligations,* 62 Hastings L.J. 1321 (2011)

*Ethics in Criminal Advocacy*, The State of Criminal Justice 2011 (American Bar Association) (coauthored with Peter A. Joy)

*Foreword: New Perspectives on Brady and Other Disclosure Obligations: What Really Works,* 31 Cardozo L. Rev. 1943 (2010)

*Enhancing the Justice Mission in the Exercise of Prosecutorial Discretion,* 19 Temple Pol. and Civ. Rts. L Rev. 343 (2010)

*My Client, the Cooperator Lied: Now What? Commentary Symposium, Criminal Law Defense, Ethics, and the Client Who Plans to Lie,* 7 Ohio St. J. Crim. Law 659  (2010)

*Ethics in Criminal Advocacy*, The State of Criminal Justice 2009 (American Bar Association) (coauthored with Peter A. Joy)

*Prosecutorial Discretion and Post-Conviction Evidence of Innocence,*  6 Ohio State J. Crim. L. 467 (2009) (coauthored with Bruce A. Green)

*Ethics and Plea Bargaining,* American Bar Association Criminal Justice Symposium (Fall 2008)

*Ethics in Criminal Advocacy*, The State of Criminal Justice 2008 (American Bar Association) (coauthored with Bruce A. Green)

*Zealous Lawyering Succeeds Against All Odds: Major Mori and the Legal Team for David Hicks at Guantanamo Bay,* Symposium Issue, 13 Roger Williams L. Rev. 469 (2008)

*Military Lawyering at the Edge of the Rule of Law at Guantanamo: Should Lawyers Be Permitted to Violate the Law*, 36 Hofstra L. Rev. 563 (2008)

*State of Washington v. Sherrie Lynn Allery, Victory Despite Conviction* in Michael E. Tigar and Angela J. Davis (eds.), Trial Stories, 13 (2008)

*Secret Evidence is Slowly Eroding the Adversary System*, 34 Hofstra L. Rev. 1063 (2006)

*Classified Information and the Courts*, Secret Evidence and the Courts in the Age of National Security, 5 Cardozo Public Law, Policy and Ethics Journal 1 (2006)

*Conference Overview and Summary, The New York City Housing Court in the 21st Century,* 3 Cardozo J.Pub. Policy, Law and Ethics Journal 591 (2006) (with Marilyn Flood)

*Wrongful Convictions: It Is Time to Take Prosecution Discipline Seriously,* Symposium, 8 U.D.C. Law Review 275 (2004)

*Introduction to the Cooperating Witness Conundrum,* 23 Cardozo Law Review 747 (2002)

*Session Four: Special Issues in Assisted Settlement, A Symposium: Ethical Issues in Settlement Negotiations,* 52 Mercer Law Review 947 (2001)

*Unethical Clauses in Settlement Agreements,* New York Employment Law and Practice Vol 2, No. 1 (2000)

*Litigation Ethics: Course Materials for Continuing Legal Education,* Materials on *Client and Witness Perjury*, ABA Section of Litigation, (2000)

*Cooperation with Federal Prosecutors: Experiences of Truth Telling and Embellishment,* 68 Fordham Law Review 917 (1999)

*Advertising: Targeted Mailings for Personal Injury and Criminal Clients*, New York Professional Responsibility Reporter (June 1998)

*How Future Lawyers Learn,* Federal Bar Council News (1997)

*Balancing Victim's Rights and Vigorous Advocacy for the Defendant,* N.Y.U. Annual Survey of American Law 135 (1989)

*The Tucson Trial and Its Legal Consequences of Asylum Seekers,* 9 Proceedings of the National Legal Conference on Immigration and Refugees (1986)

## PRESENTATIONS IN PROFESSIONAL & ACADEMIC PROGRAMS (since 2003)

*One the Rocks:  Hot Topic Ethical Issues,* White Collar Seminar, National Association of Criminal Defense Lawyers (9/17)

*Top Ten Ethical Rules for White Collar Lawyers*, White Collar West Coast Conference, National Association of Criminal Defense Lawyers (6/17)

*What Constitutes A Cert. Worthy Petition to the Supreme Court,* Second Circuit Court, United States Courthouse (5/17)

*Ethical Issues in the Practice of Criminal Law*, New York  City Bar (5/17)

*Current Ethics Issues in Commercial Litigation, Commercial and Federal Litigation Section*, NY State Bar Association  (5/17)

*Ethical Issues in Mental Hygiene Legal Service*, Second Department Continuing Legal Education Program (4/17)

*Ethics in Antitrust Litigation,*  65th ABA Annual Antitrust Law Spring Meeting (3/17)

*Ethics and Professionalism: Best Practices for Attorneys 2017* , New York City Bar (3/17)

*Ethical Issues in the Practice of Law,* The Presidential Inauguration and the Unfolding Era, City University of New York Law School (1/17)

*New ABA Model Rule of Professional Conduct against Harassment and Discrimination:  Understanding the Rule in Detail*, Practicing Law Institute (12/16)

*Current Ethical Issues in Immigration*, Annual   *11/16)*

*What's in a Name? Or a Number?: Attorney Advertising and Ratings*, New York State Bar Association (10/16)

*Medical Marijuana in New York*, New York State Bar Association (10/16)

*30th Annual Metropolitan New York Trainer*, New York University Law School (3/16)

*Ethical Issues in Criminal Practice, The Legal Aid Society* (12/15)

*Twenty Five Years of Wrongful Convictions Conference*, Northeastern School of Law (9/15)

*Ethics in Juvenile Defense*, National Juvenile Defender Center, Georgetown Law School (4/15)

*Navigating the Complex Ethical Issues,* Cannabis Business, Law and Ethics (4/15)

*Ethical Issues in Class Actions*, Institute for Law and Economic Policy (4/15)

*Legal and Ethical Obligations in Discovery,* Public Defender of the Ninth Judicial Circuit (3/15)

*Ethical Obligations of Judges and Prosecutors*, ABA Tenth Annual  Summit on Indigent Defense Improvement, Thurgood Marshall School of Law (2/15)

*Ethical Issues in Indigent Immigration Cases,* Brooklyn Defender Services (2/15)

*Ethics in Forensic Science, Virtual Lunch Series*, American Association of American Law Schools (12/14)

5

*Ethics Seminar, White Collar Crime Seminar,* National Association of Criminal Defense Lawyers (11/14)

*Ethical Issues in Forensic Science,* New York State Bar Association Criminal Justice Section Fall Meeting (10/14)

*Protecting the Sixth Amendment 50 Years Later: Current Issues in Ethics and Technology,* Second Circuit Judicial Council (6/14)

*Ethical Obligations in Dealing with Child Victims: Role and Responsibilities of System Actors*, American Bar Association Criminal Justice Section (5/14)

*Ethical Issues for the Defense Relating to Forensic Science,* 14th Annual Public Defender Retreat (4/14)

*Race and Access to the Justice System*, Georgetown University Law Center (3/14)

*Ethical Choices in Dealing with Crime Victims: What is the Prosecutor, Defender and Judge To Do?* American Bar Association Criminal Justice Section (2/14)

*Ethical Choices Regarding Discovery and Forensic Science,* New York State Bar Association Criminal Justice Section Fall Meeting (10/13)

*Prosecutorial Disclosure Obligations*, Fifth Circuit Judicial Conference, (5/13)

*Ethics in Plea Bargaining and Discovery,* Chief Justice's Indigent Defense Summit, Virginia State Bar (5/13)

*Basics of Criminal Law for the Criminal and Civil Lawyer*, New York State Bar Association, (4/13)

*Criminal Law and Ethics: The Present State of Brady, A View from Both Sides*, New York County Lawyers Association, (4/13)

*50th Anniversary of Gideon v. Wainright*, American Constitution Society, Cardozo Law School (3/13)

*Gideon in the 21st Century,* American Bar Association Criminal Justice Section Roundtable, (2/13)

*Workshop Presentation,* The National Institute for Teaching Ethics and Professionalism, (6/12)

*Ethics and Open Source Software*, Practicing Law Institute, (11/11)
*Challenging Ethical Dilemmas: Candor, Client Competency and the Use of Social Networking,* New York County Lawyers Criminal Trial Advocacy Institute, (11/11)

*Legal and Ethical Implications for Defense Counsel, Prosecutors and the Court in Cutting Edge Forensic Science Issues: Discovery and Disclosure Obligations,* New York State Bar Association, (11/11)

*Attorney Advertising, Social Media and Ethics,* National Advertising Division Annual Conference, (10/11)

*Ethics for Corporate Counsel,* New York State Bar Association Corporate Counsel Section, (11/10)

*Ethical Considerations for Using Technology in Your Practice* American Bar Association Section on Litigation, 11th Annual Women in Product Liability Conference (11/10)

*Prosecutorial Ethics,* Sixth Annual Defending the White Collar Case (9/10)

*Ethical Issues in Prison Actions*, Prison Law 2009, Practicing Law Institute (9/10)

*Difficult Ethical Choices,* Office of Legal Counsel, Second Circuit Court of Appeals (7/10)

*Prosecutors and Their Disclosure Duties,* American Bar Association Professional Responsibility Annual Conference (6/10)

*Litigating Under the New Ethics Rules: A Close Look at Rule 3.3 and Gender Bias in the Courthouse*, New York Women's Bar Association (5/10)

*Update on Legal Ethics in Investigation,* National Employment Lawyers Association Spring Conference (5/10)

*Ethical Issues with Blogging, Friending and Tweeting,* Association of the Bar of the City of New York (3/10)

*Ethical Issues in Criminal Defense Practice,* 24th Annual Metropolitan New York Trainer (3/10)

*Ethics for Corporate Counsel,* New York State Bar Association Third Corporate Counsel Institute (11/09)

*Ethical Implications of Open Source Strategies*, Open Source Software, Practicing Law Institute, (11/09)

*The* **New** *New York Rules of Professional Conduct in Criminal Practice*, Citibar Center for Continuing Legal Education (11/09)

*Examining Modern Approaches to Prosecutorial Discretion,* Keynote Address, Temple University Beasley School of Law Political and Civil Rights Law Review Annual Symposium (10/09)

*Racial Issues, Confidentiality and Other Ethical Dilemmas,* 2009 Annual Criminal Defense Conference, Milwaukee, Wisconsin (9/09)

*Ethical Issues in Prison Actions*, Prison Law 2009, Practicing Law Institute (9/09)

*Ethical Issues in Special Education,* Seventh Annual School Law Institute, Practicing Law Institute, (5/09)

*Past, Present and Future of Guantanamo,* CSPAN, April 2009

*Ethical Implications of Open Source Strategies*, Open Source Software, Practicing Law Institute, (11/08)

*Confidentiality and Its Limits, Legal Ethics in New York,* Lorman Educational Services, New York (9/08)

*Ethical Issues in Client Representation at Guantanamo,* Association of Professional Responsibility Lawyers, (5/08)

*The Prosecution Ethic*, Symposium in Tribute to Seattle-King County Prosecutor Norm Maleng, Seattle Washington (5/08)

*The Bi-Annual Criminal Justice Retreat: A Summit on the Prosecution Function,* Association of the Bar of the City of New York (4/08)

7

*Ethical Issues in Direct and Cross Examination,* American Bar Association Criminal Justice Section, (4/08)

*Ethical Issues in Witness Preparation,* Commercial and Federal Litigation Section, New York State Bar Association, (1/08)

*What Every Attorney Must Know About Ethics*, Practicing Law Institute (12/07)

*Ethics and Professionalism in Plea Negotiation: Best Practices and Worst Pitfalls,* American Bar Association Criminal Justice Section 2007 Fall Conference, Washington, D.C., (11/07)

*Business and Ethical Implications of Open Source Strategies*, Open Source Software, Practicing Law Institute, (11/07)

*Confidentiality and Conflicts,* Back to Business, Proskauer Rose LLP, (11/07)

*Lawyering and Terrorism Cases*, Legal Dilemmas in a Dangerous World: Law Terrorism and National Security, Roger Williams University School of Law, (11/07)

*Lawyering at the Edge of the Rule of Law,* Ethics Conference: Lawyering at the Edge, Hofstra Law School (10/07)
*Ethics in Employment Law*, Jackson Lewis Women's Employment Law Conference, New Jersey (10/07)

*Zealous Representation: Ethical Limits and Trial Techniques*, New York State Bar Association (5/07)

*Ethical Practices in Start-Ups and Smaller Firms,* Association of the Bar of the City of New York, (5/07)

*Ethics for the Immigration Lawyer,* Federal Bar Association, New Jersey 26th Annual Hon. William H. Strasser Immigration Conference, (5/07)

*Ethical Issues in Special Education,* Fifth Annual School Law Institute, Practicing Law Institute, (5/07)

*Potential Criminal Exposure of Attorneys,* Professional Responsibility and Risk Management Conference, New York (10/06)

*Attorney-Client Privilege, Inadvertent Disclosure and Document Retention,* Jackson Lewis Women's Employment Law Conference, New Jersey (10/06)

*Ethical Issues for Intellectual Property Lawyers,* The Copyright Society of the USA, New York (9/06)

*Ethical Issues in Advising the Self Represented*, New York Family Court (9/06)

*Ethical Issues for the Entertainment Lawyer,* Association of the Bar of the City of New York Center for Continuing Legal Education, (6/06)
*Prosecution Ethics*, American Bar Association Professional Responsibility Conference, Vancouver, B.C. (6/06)

*Ethical Issues for Employment Lawyers*, National Employment Lawyers Association, (5/06)

*Ethical Issues in Special Education*, Sixth Annual School Law Institute, Practicing Law Institute, (5/06)

*Lawyers in the Dock*: *When Does Good Lawyering Become Criminal Conduct*, Association of the Bar of the City of New York Center for Continuing Legal Education, (2/06)

*Prosecution Ethics*, Association of Professional Responsibility Lawyers, (2/06)

*The Law and Ethics of Criminal Defense in Terrorism Cases*, Association of American Law Schools, (1/06)

*Bridge the Gap*, Practicing Law Institute, (12/05)

*Secret Evidence is Eroding the Adversary System*, Lawyers' Ethics in an Adversary System, 2005 Legal Ethics Conference, Hofstra Law School, (11/05)

*The Changing Legal Profession*, Legal Ethics in the New Millennium, American Association of Law Schools Professional Responsibility Conference, (6//05)

*Ethical Issues in Special Education*, Fifth Annual School Law Institute, Practicing Law Institute, (4//05)

*Ethical Issues in Pro Bono Work*, City Bar Center for Continuing Legal Education, (6/05)

*Ethical Dilemmas for Financial Services Attorneys,* SIA Compliance and Legal Division, (6/05)

*Ethics for the Immigration Lawyer*, City Bar Center for Continuing Legal Education, (3/05)

*Ethical Considerations for Corporate Investigations,* City Bar Center for Continuing Legal Education, (9/04)

*Timely Ethical Issues: Cooperating Witnesses,* Federal Bar Council, (11/04)

*Ethical Issues for the Entertainment Lawyer,* City Bar Center for Continuing Legal Education, (6/04)

*Ethics for the Immigration Lawyer*, City Bar Center for Continuing Legal Education, (3/04)

*Ethical Issues in Dealing with the Difficult Client*, New York Employment Lawyers Annual Conference, (11/03)

*Internet Ethics*, New York County Lawyers Association, (10/03)

*The Evolving Defense Function in the Wake of Sarbanes-Oxley*, New York Council of Defense Lawyers 2003 Biennial Retreat, with SEC Commissioner Harvey Goldschmid, SDNY Judge Jed Rakoff and New York State Attorney General Eliot Spitzer, (10/03)

*Child Abuse, Neglect & the Foster Care System - The Attorney's Role & Responsibilities 2003*, Practicing Law Institute, (3/03)

## LEGAL EMPLOYMENT

**Ethics Consultant**                                                                    2008-Present
Advise and represent lawyers and judges on matters pertaining to the law governing lawyers; expert witness.

**Clayman and Rosenberg**, New York, NY                                    2006 - 2008
*Of Counsel*
Advised and represented lawyers and legal organizations on matters pertaining to the law governing lawyers; expert witness.

**Hinshaw & Culbertson LLP**, New York, NY                             2004 - 2006
*Of Counsel*
Advised and represented lawyers and legal organizations on matters pertaining to the law governing lawyers; expert witness

**Private Practice**, New York, NY                                              1988 - 2000
Criminal, civil rights and constitutional rights litigation

**Center for Constitutional Rights**, New York, NY                    1982 - 1988
National practice in civil rights and international human rights.

**Gibbs, Douglas, Theiler, Yaroshefsky and Drachler**, Seattle, WA    1980 - 1982
Criminal defense and civil rights litigation

**Seattle-King County Public Defender**, Seattle, WA                1976 - 1980
Criminal defense litigation

**Puyallup Indian Tribe**, Tacoma, WA                                       1975 - 1976
*Staff Attorney*
Provided general legal counsel to tribe on land rights and economic development.


## BAR ADMISSIONS

New York and Washington State Courts                    Various U.S. District Courts
Second and Ninth Circuit Courts of Appeals                         U.S. Supreme Court


## EDUCATION

Rutgers School of Law, Newark, New Jersey                          J.D. 1975

Douglass College for Women
Rutgers University, New Brunswick, New Jersey                      B.A. 1969

10

## <u>HONORS</u>

"*Eric Neisser Award for Outstanding Public Service,*"                  Sept 2005
 Rutgers University School of Law

*"Outstanding Contribution in the Field of Criminal Law Education" Award*   January 2000
 New York State Bar Association, Criminal Justice Section

Monrad G. Paulsen Award (with other members of the clinical faculty)   June 1998
 "*In recognition of devoted service to the ideals and purposes of Legal Education*"

American Immigration Lawyers Association Award                  June 1991

Steps to End Family Violence Award                             May 1991