# Exhibit L

**MILITARY COMMISSIONS TRIAL JUDICIARY**
**GUANTANAMO BAY, CUBA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**ABD AL-RAHIM HUSSEIN<br>MUHAMMED ABDU AL-NASHIRI** | **AE 389C**<br><br>**Chief Defense Counsel's Response**<br>to Briefing Order of 16 October 2017<br><br>**24 October 2017** |

1.  In its Briefing Order of October 16, 2017, the Commission invited the Chief Defense
    Counsel for Military Commissions to submit a response "on the issue of his authority
    unilaterally to excuse Learned Counsel and other Civilian Counsel after they have formed an
    attorney-client relationship with the Accused and appeared in court on his behalf." AE 389A
    at 2. This Memorandum is the Chief Defense Counsel's response to that invitation.

2.  Rule for Military Commissions ("R.M.C.") 505(d) provides that, after formation of an
    attorney-client relationship, "an authority competent to detail . . . counsel may excuse or
    change such counsel only upon request of the accused or application for withdrawal by such
    counsel," or "for other good cause."

3.  Congress tasked the Secretary of Defense with prescribing regulations for the detailing and
    appointment of military commission defense counsel. 10 U.S.C. §§ 948k(a)(4) and (c)(2).
    Pursuant to the regulations subsequently promulgated, the sole authority authorized to detail
    defense counsel is the Chief Defense Counsel. R.M.C. 501(b); Regulation for Trial by
    Military Commission[1] ("R.T.M.C.") 9-1.a.4.

---

[1] Promulgated by the Deputy Secretary of Defense.

4. In mid-September 2017, Mr. Kammen, Ms. Spears, and Ms. Eliades notified me that each had ethical concerns regarding their ability to continue to represent Mr. Al-Nashiri and that they were going to seek advice to ascertain their obligations moving forward, including the possibility that they may be required to withdraw. I subsequently conducted a thorough review of the relevant facts, both classified and unclassified, and the legal parameters of my supervisory authority over the members of the Al-Nashiri defense team.

5. On October 6, 2017, Mr. Kammen, Ms. Spears, and Ms. Eliades notified me in writing they believed they could no longer represent Mr. Al-Nashiri in his military commission proceedings because doing so would require they violate their state rules of professional responsibility. *See* AE 389 (16 Oct 2017) at Attachment C. Counsels' conclusions were based in part on the written analysis and advice of a prominent legal ethicist, Professor Ellen Yaroshefsky. *Id.* In their application to withdraw, counsel asked I find good cause to excuse them from further representation. *Id.*

6. On 11 October 2017 I notified counsel "I have reviewed your attached request to withdraw as learned counsel for Mr. Al-Nashiri, the applicable statute and regulations governing military commissions, the relevant rules for professional responsibility, and applicable case law. Additionally, I have considered all the information I know about this matter - both classified and unclassified." *Id.* I went on to inform them based on that, I had found good cause and had excused them. *Id.*

7. As stated above, after formation of an attorney-client relationship R.M.C. 505(d)(2)(B)(ii) allows the excusal of counsel upon the finding by a detailing authority of good cause. Nowhere do the Rules make provision for the review or reversal of that determination.

Rather, the Rules provide a simple two-step process – the finding by a detailing authority of good cause, and the exercise by that authority of the power to excuse counsel for that good cause. Under the R.M.C. the determination and exercise of the power to excuse for good cause is entirely vested in the Chief Defense Counsel, and upon excusal counsel's participation in the commission is terminated.

8.  Given the clarity of R.M.C. 505, final authority over for-cause excusal is decided by settled principles of statutory construction. *Cf. U.S. v. Custis*, 65 M.J. 366, 370 (C.A.A.F. 2007) ("It is a well established rule that principles of statutory construction are used in construing the Manual for Courts-Martial in general[.]") Under those principles a court "must first determine whether the statutory text is plain and unambiguous." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). If it is, the court "must apply the statute according to its terms." *Id*. "When the words of a statute are unambiguous, then … judicial inquiry is complete." *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 254 (1992).

9.  The military commission is demonstrably familiar with the plain language principle of statutory construction. *Cf. e.g.* AE342C (7 July 2017);[2] AE081C (10 Sept 2012);[3] AE076E (10 September 2012).[4]

---

[2] "Rule for Military Commissions (R.M.C.) 704 places the decision to grant immunity 'within the sole discretion of the appropriate convening authority.'"

[3] "Rule of Military Commissions 806(c) states '[e]xcept as otherwise expressly authorized by the Secretary of Defense, video and audio recording and the taking of photographs ... in the court room during the proceedings and radio or television broadcasting of proceedings from the courtroom shall not be permitted'. This rule does not grant the Commission discretion or authority to allow what the Defense is requesting."

[4] "The Commission has no authority to compel the Convening Authority to fund Ms. Spears. Except for learned counsel, civilian counsel may represent the accused at no expense to the government. 10 U.S.C. §949a(b)(2)(C); R.M.C. 506(a)."

10. Further, statutes and regulations governing the commission process must be strictly construed because "[t]he whole proceeding, from its inception, is judicial. The trial, finding, and sentence are the solemn acts of a court organized and conducted under the authority of and according to the prescribed forms of law." *Runkle v. U.S.*, 122 U.S. 543, 558 (1887) (quoting 11 Opinions Attorneys General 21 (1864)) (addressing question of whether President approved court-martial sentence). Deviation from the prescribed process, particularly with respect to the personal exercise of a granted authority, can result in reversal. *Id.*

11. Rules promulgated to implement the R.M.C., or pursuant to authority delegated therein, are subordinate to the Rules for Military Commissions. R.T.M.C. 1-1 (Regulations subordinate to Military Commissions Act ("M.C.A.") and Manual for Military Commissions); R.M.C. 108 (Chief Trial Judge authorized to make rules of court consistent with R.M.C.). The Military Commissions Trial Judiciary Rules of Court ("Trial Judiciary Rules"), promulgated by the Chief Trial Judge pursuant to R.M.C. 108, acknowledges this hierarchy. Trial Judiciary Rule 1.2 ("The Rules of Court shall be interpreted to be consistent with the Military Commissions Act of 2009 (M.C.A.) and the M.M.C. In the event of any conflict between the M.C.A. or M.M.C. and the Rules of Court, the former two (2) shall prevail."). Given the primacy of the R.M.C., second only to the M.C.A., no provision in a lesser authority can alter the final, non-reviewable authority that the Secretary granted to the Chief Defense Counsel in R.M.C. 505(d).

12. So, for example, Trial Judiciary Rule 4.4.b., which purports to require permission of the military judge for counsel to be excused, cannot in fact impose that requirement. To do so would impose a step that is inconsistent with the process set out in the R.M.C. It would also

claim to reverse an event, the excusal of counsel, which occurred and became complete upon

its order by the detailing authority. A judge's claim of that authority would be a usurpation of

the power granted to the Secretary by Congress, and in turn granted by the Secretary for the

sole, independent exercise of the Chief Defense Counsel. To the extent that it would allow a

commission judge to intrude into the authority of the Chief Defense Counsel Rule 4.4 is

unenforceable.[5] Indeed, the promulgation statement accompanying the Trial Judiciary Rules

acknowledges that "[t]o the extent that inconsistencies are perceived, the [M.C.A. and

R.M.C.] shall control." *See* Promulgation Statement of Chief Judge, 20 July 2016, at

paragraph 2.

13. The military commission has on other occasions demonstrated its understanding of the

obligation to defer to decision making authority vested in another. *Cf. e.g.* AE342C (7 July

---

[5] It is unclear what was intended to be communicated by the part of paragraph 2 of AE 389A
wherein the commission stated it "has not found 'good cause' to authorize the termination of the
attorney-client relationship between the Accused and his Civilian Defense Counsel who have
appeared before this Commission." But if it was a claim that Trial Judiciary Rule 4.4, or any
other authority subordinate to R.M.C. 505(d), affords the commission judge some authority over
for-cause excusal then it was just such a usurpation.

2017);[6] AE352E (22 November 2016);[7] AE280C (12 November 2014);[8] AE178E (7

February 2014);[9] AE081C (10 Sept 2012).[10]

14. It is not surprising that the Secretary of Defense elected to vest unreviewable for-cause

excusal authority in the Chief Defense Counsel given Congress's special treatment of that

office. Like only one other actor in the trial process, Congress chose to establish by statute

the office of the Chief Defense Counsel. 10 U.S.C. § 948k(d). The Chief Defense Counsel is

a general officer nominated and appointed by the President following confirmation by the

Senate, 161 Cong. Rec. S4554, 4555 (daily ed., Jun. 23, 2015) (appointment to the grade

indicated while serving as the Chief Defense Counsel), after being selected for that office by

a joint selection board. *See* Under Secretary of Defense Memorandum of Instruction

20141216 (convening of selection board). Among military commission actors only the Chief

Prosecutor holds the same grade and is similarly given a constitutional appointment to office;

that officer is also granted the authority to act as the sole excusal authority for counsel who

---

[6] "Rule for Military Commissions (R.M.C.) 704 places the decision to grant immunity 'within the sole discretion of the appropriate convening authority.'"

[7] Finding that the determination of "Congress that it is impracticable to apply the rules of United States district courts to try unprivileged enemy combatants is owed complete deference."

[8] The burden of "reviewing and determining whether the documents produced by the Prosecution in discovery comply with the rules for marking documents containing classified information . . . is solely on the Prosecution as they work with the appropriate classification authorities."

[9] "The Commission cannot declassify information, grant security clearances or access to special programs. These actions and decisions are not reviewable under precedent established in *United States v. Eagan*, 484 U.S. 518 (1998) and *Cafeteria Workers v. McElroy*, 367 U.S. 886 (1961)."

[10] "There is no discretion to allow what the Defense has requested. Rule of Military Commissions 806(c) states '[e]xcept as otherwise expressly authorized by the Secretary of Defense, video and audio recording and the taking of photographs ... in the court room during the proceedings and radio or television broadcasting of proceedings from the courtroom shall not be permitted.'"

work under his supervision. In important ways the Chief Defense Counsel has been elevated

above and set apart from most others in the commission system, not the least of which by

providing him a separate chain of command outside of the commission structure. R.T.M.C.

9-1.a.1. Through Congressional and Secretarial design, the Chief Defense Counsel is

singularly qualified to exercise the discretion granted him by R.C.M. 505(d).

15. The Secretary had good reason not to subject the Chief Defense Counsel's excusal decisions

to review by a commission judge given that, in contrast to its treatment of the office of Chief

Defense Counsel, Congress indicated its intent that the position of commission judge be

circumscribed. For example, while the ability to control a courtroom through the exercise of

contempt authority is considered to be a quintessential power of a judicial body, Congress

chose to word a commission's contempt authority in a way that has long been interpreted as a

limit on that authority. 10 U.S.C. § 950t(31) (definition of contempt); *United States v.*

*Burnett*, 27 M.J. 99, 104 (C.O.M.A. 1988) (same language viewed as indication of Congress'

intent to limit authority). The Secretary further limited this authority by making the finality

of a sentence for contempt dependent on the unfettered, unreviewable discretion of the

convening authority. R.M.C. 809(d).

16. Similarly, the Secretary had good reason to exclude all persons outside the defense function

from the for-cause removal process given that Congress took the extraordinary step of

granting legislative protection to "the exercise of professional judgment by . . . defense

counsel." 10 U.S.C. § 949b(a)(2)(C). No other actor can be assured to have awareness of the

breadth of diverse matters that can potentially exert influence on defense counsel as can the

Chief Defense Counsel. It was in recognition of the need to have access to the full scope of

7

relevant information that the Deputy Secretary modified the rules to make clear the Chief

Defense Counsel "must be provided access to" classified and other protected information

after that access was denied by a commission judge. R.T.M.C. 9-1.a.2. Likewise, the

complex professional responsibility considerations at play are best understood and evaluated

by the person tasked with being "the supervisory attorney" for military commission defense

personnel. *Id.* Simply put, no actor in the military commission system has the same level of

knowledge concerning the totality of circumstances affecting whether a counsel should be

excused as the Chief Defense Counsel. The Secretary made a rational, reasoned choice to

vest in the same person the power to appoint, supervise, and excuse defense counsel. And the

Secretary made a rational, reasoned choice not to subject that authority's excusal decision to

review by another official who will necessarily have less knowledge than the Chief Defense

Counsel had when he or she made the excusal decision.[11]

17. And from a purely operational perspective it is also rational for the Secretary to have left the

for-cause excusal decision in the Chief Defense Counsel. That official is also responsible for

managing "all defense activities" and "facilitat[ing] the proper representation of all accused,"

including of course the detailing of counsel. R.T.M.C. 9-1.a.2 and 4. Indeed, to ensure the

Chief Defense Counsel's focus and ability to act as *the* person responsible for supervising all

aspects of the defense function – and to ensure that the Chief Defense Counsel's exercise of

---

[11] A review of the evolution of the R.M.C. demonstrates that Secretaries of Defense have given considerable thought to excusal authority in military commissions. In 2007 R.M.C. 506b empowered a commission judge to excuse counsel for good cause. In 2011 the Secretary rewrote R.M.C. 506 to remove that authority from commission judges.

the office's authorities, such as the authority to excuse counsel, is not influenced by any ethical duty of loyalty to a client – the Deputy Secretary decreed that the holder of the office may not represent clients. R.T.M.C. 9-1.a.4.

18. The Secretary should be given credit for meaning what he said. *Conn. Nat. Bank*, 503 U.S. at 253-254 ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there"); *U.S. v. Reese*, 76 M.J. 297, 301 (C.A.A.F. 2017) (same). To do otherwise would be to judicially appropriate the authority to make rules for military commissions that Congress vested in another. After all, the Secretary clearly knows how to provide for the review of a good cause determination when he wants one. R.M.C. 702(c)(3)(A) ("A request for a deposition may be denied for good cause . . . subject to review by the military judge.") Statutory construction also has something to say about this: "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Carcieri*, 555 U.S. 379, 389-390.

19. The military commission has also demonstrated its acceptance of this principle of deferring to the clear intent of a provision. *Cf. e.g.* AE267G (1 December 2014).[12]

---

[12] "There is no authority for the Military Commission to disregard the clear intent of Congress concerning the requirement for trial of a capital accused by a panel of officers. 10 U.S.C. §§ 948i(a), 948m(a)(2), and 949m(c). In order to grant the Defense requested relief the Commission must ignore the plain meaning of the statute and the clear intent of Congress. The Commission will not take such an action."

20. Other provisions of the R.M.C. are also consistent with the Chief Defense Counsel's

    exclusive authority over good-cause removal. R.M.C. 506 (Accused's right to counsel), states

    in subparagraph (b) that "appointment of learned counsel shall be in accordance with

    regulations prescribed by the Secretary of Defense." The Discussion then instructs to "See

    R.M.C. 502(d)(7) and 505(d)(2) concerning the duties and substitution of defense counsel,"

    tying enforcement of the accused's right to learned counsel to the Chief Defense Counsel's

    authority to appoint and remove. And R.T.M.C. 9-5.b.2. requires that, when an accused is

    represented by civilian counsel, detailed defense counsel continue to serve as associate

    counsel under R.M.C. 502(d)(2) "unless formally excused pursuant to R.M.C. 505(d)(2)."

21. Similarly, R.M.C. 805 (Presence of military judge, members, and counsel) provides in

    subparagraph (c) for the absence of counsel at military commission proceedings, stating that

    counsel "may be absent from a military commission session with the permission of the

    military judge." The Discussion instructs to "See R.M.C. 502(d)(7) and 505(d)(2) concerning

    withdrawal or substitution of counsel," again consistent with those being the only provisions

    relevant to the change of counsel. Relatedly, the only mention of the judge having a

    responsibility with respect to "replacement" or "absence" of counsel is to announce the

    event, and the reasons for them, on the record. R.M.C. 813(c).

22. Consistent with the for-cause excusal procedure established by the Secretary here, when

    interpreting R.C.M. 505(d), which is functionally identical to R.M.C. 505(d) in relevant

    respects, the United States Court of Appeals for the Armed Forces determined that a court-

    martial judge is not part of the excusal process. *U.S. v. Hutchins*, 69 M.J. 282, 291 (C.A.A.F.

    2011). Rather, the judge's role when a detailing authority has excused a defense counsel for

10

good cause is solely to ensure that the record reflects that the proper procedures were followed and sets forth the basis for the good cause determination. *Id.*

23. The Secretary has entrusted the Chief Defense Counsel with the unilateral, unreviewable authority to excuse counsel for good cause. The Chief Defense Counsel exercised that authority; he provided documentation to be attached to the record of the basis for his decision and proof that he made it personally. Other than announcing the change of counsel there is no further action for the military judge to take with regards to the notice of excusal of counsel.[13]

        Attachments:
            A.  Certificate of Service, dated 24 October 2017

                           Respectfully submitted,

                           /s/ John Baker

                           J. G. BAKER
                           Brigadier General, U.S. Marine Corps
                           Chief Defense Counsel for
                             Military Commissions

---

[13] AE 339J-L.

# ATTACHMENT A

# CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed with the military commission, with copies to counsel for Mr. Al-Nashiri and counsel for the United States, on 24 October 2017.


/s/ Philip Sundel

PHILIP SUNDEL
Head, Appellate Section
Military Commission Defense Organization

*For* Chief Defense Counsel for
   Military Commissions