# Exhibit O

**MILITARY COMMISSIONS TRIAL JUDICIARY**
**GUANTANAMO BAY, CUBA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABD AL RAHIM HUSSAYN<br>MUHAMMAD AL NASHIRI | **AE 389G**<br><br>**Government Brief**<br>Regarding the Commission's Authority to<br>Enforce Its Orders and to Proceed in the<br>Absence of Learned Counsel<br><br>30 October 2017 |

1. **Timeliness.**

   The Government timely files this brief pursuant Military Commissions Trial Judiciary

Rules of Court ("R.C.") 2 and 3 at the Commission's direction for both parties to provide the

Commission their respective briefs by noon on 30 October 2017 regarding the manifest intent by

the three civilian defense counsel of record—with the unknown role played by a Chief Defense

Counsel ("CDC") whose responsibility it is to ensure compliance by civilian counsel with the

Commission's orders—to willfully fail to appear at the place and time designated by the

Commission's AE 388 "Docketing Order (October/November 2017 Hearing)."  Upon noting the

absence of all civilian defense counsel, the Commission directed filings in the presence of both

Detailed Government Counsel and Detailed Military Defense Counsel during a Rule for Military

Commissions ("R.M.C.") 802 Conference held at Guantanamo Bay, Cuba, on 29 October 2017.

2. **Recommended Course of Proceedings.**

   Without delay, the Military Judge should convene the Commission pursuant to

R.M.C. 803 at the place and time originally specified by AE 388.  At the R.M.C. 803 session, the

Military Judge must account for the parties and make determinations whether counsel have been

properly excused from appearance as authorized by R.M.C. 801(a), 804, and 805 (and in

accordance with RC 4.2.b. and RC 4.2.c.).  Pursuant to R.M.C. 805, the Military Judge should make appropriate findings of fact on the record as to each defense counsel who has failed to appear as ordered.  If not prepared summarily, based upon any defense counsel absences alone and representations by Detailed Military Counsel, to enter findings as to whether any absences are justified, he should consider directing the appearance of the CDC, who on information and belief, is present at Guantanamo and who is required by duly promulgated regulation to use his authority to gain civilian defense counsel compliance, *inter alia*, with orders of the Commission.  R.T.M.C. 9-1.a.3 & 9-1.a.6.K.  Questioning of the CDC should be limited to what actions he has taken since the entry of the Commission's ruling in AE 389F of 27 October to countermand his own actions on 14 June and 13 October purporting to justify and excuse civilian defense counsel's purported withdrawal, to communicate the now demonstrably ultra vires nature of the CDC's excusal to civilian defense counsel, and to gain their compliance with AE 389F.  At this point, depending upon the sworn testimony of the CDC and any evidence proffered by the parties, the Military Commission may desire to provide the CDC additional, limited time— perhaps 24 hours—to attempt to gain compliance by civilian defense counsel and to report back to the Commission.

Other witnesses deemed necessary by the Military Judge may be called before the Commission to provide information and testimony under oath as to the circumstances of each defense counsel's absence.  Should such witnesses not be present on Guantanamo, they may appear by video-teleconference from the National Capital Region.  Testimony, as with the CDC, should be under oath and limited to whether and how they complied with AE 389F was complied and whether there is any intention to now comply with AE 389F in light of the CDC's testimony.  The knowledge and the views of the Accused on the absence of counsel should also be

2

ascertained by the Military Judge and made a part of the record.[1]  Additionally, pursuant to

R.M.C. 805(c), the Military Judge should make a determination on the record whether the

Defense Team is properly constituted to act with at least one qualified counsel present.

Depending upon the facts and circumstances established by the Military Judge's

R.M.C. 805 inquiry, the Commission should then consider whether proceedings under

R.M.C. 109 and/or R.M.C. 809 should be pursued.  Under R.M.C. 109, the Commission may

make findings of fact and determine whether any defense counsel's claimed professional

responsibility conflict of interest or prohibition precludes representation of the Accused and/or

limits counsel's participation in proceedings before the Commission.  Further, should the

Commission determine misconduct has occurred, pursuant to R.M.C. 109(b)(2) a military judge

may take appropriate action for counsel's failure to adhere to the rules applicable to trials by

military commission; "such action may include permanently barring an individual from

participating in any military commission proceeding [], punitive measures imposed under

R.M.C. 809, and any other lawful sanction."

Under any R.M.C. 809 proceedings, the Military Judge should consider whether to

exercise the contempt power granted under 10 U.S.C. § 950t(31).  Pursuant to R.M.C. 809(b)(1),

should the Military Judge find that, upon convening the R.M.C. 803 session as specified by

AE 388, counsel's failure to appear as ordered in AE 388 constitutes contempt under 10 U.S.C.

§ 950t(31) as witnessed by the Commission, the Prosecution asserts that the Commission should

make such a finding on the record, and the conduct may be punished summarily.  R.M.C. 809(c).

---

[1] Under the circumstances, the Commission should forego the procedure adopted in AE 99F of advising the Accused that he will be given permission, upon appropriate findings by the Military Judge following an in-court inquiry, to voluntarily waive his right to presence at certain pre-trial sessions.  The importance of ascertaining the status of his representation by counsel requires his presence at all sessions until representation issues are resolved.

Alternatively, pursuant to R.M.C. 809(b)(2), should the Military Judge determine that the conduct constituting possible contempt has not been directly witnessed by the Commission, the Military Judge should identify the alleged offenders, inform them of the alleged contempt, and conduct the fact-finding and due-process procedures established by the rule.  Should this avenue be pursued, the Military Judge must give each potential offender a reasonable opportunity to present evidence, including calling witnesses, among other due process requirements specified by the rule.  Under either the R.M.C. 809(b)(1) or R.M.C. 809(b)(2) approach, the Government recommends that after documenting any absences and learning the basic facts of why non-compliance with AE 389F has occurred, the Commission should conclude contempt proceedings this week to make proper findings of fact on the record while witnesses and evidence are readily available and, if deemed appropriate by the Commission, to provide defense counsel an opportunity next week and the week after next to examine the witness whose deposition the Commission ordered in AE 369M.

**3.  Overview.**

Learned Counsel and Detailed Civilian Assistant Defense Counsel, relying in part upon the purported justification and excusal of the CDC, refuse to accept the judgments and orders of this Commission.  The Military Judge should exercise his responsibility and authority as the sole presiding officer of the Commission, *see* R.M.C. 801 and 10 U.S.C. § 948j(a), to methodically record the presence or absence of counsel under R.M.C. 805, focusing his fact-finding powers initially upon efforts taken to comply or not comply with AE 389F of 27 October 2017 and associated orders.  The Commission has ruled that the Accused's civilian counsel, including Learned Counsel, must continue to appear before the Commission (AE 389F; AE 389A), and specifically at the hearings scheduled 30 October – 17 November 2017 in AE 388; that there is

4

no good cause to excuse the civilian defense counsel (AE 389A); that there have been no intrusions into the Accused's attorney-client relationship (AE 369ZZZ; AE 369OO); and that the Defense has offered no evidence of Government intrusions into the Accused's attorney-client relationship (AE 369ZZZ; AE 369OO). The Defense continues to have a suitable meeting space to conduct attorney-client meetings with the Accused. AE 369AAA; AE 369OOO.

Upon fully accounting for any absences of defense counsel on the record, the Commission should consider whether to "punish for contempt any person . . . who disturbs its proceedings by any . . . disorder." 10 U.S.C. § 950t(31). Specifically, and using either the summarized process of R.M.C. 809(b)(1) or the more extensive process of R.M.C. 809(b)(2), the Commission may determine whether any person, including but not limited to detailed counsel, has disturbed and caused a qualifying disorder of these proceedings by failing to comply with the Commission's Orders and interrupting long-scheduled matters, without legal justification or excuse.

Concurrently, the Military Judge should (1) put the defense on notice that any decision by counsel to continue to absent themselves from these proceedings—despite the Commission's having ruled that all absent civilian defense counsel remain counsel of record—will be considered by the Commission to be a chosen defense strategy when determining whether to proceed with the docket previously promulgated, and (2) duly enter appropriate findings regarding such chosen strategy into the record to rebut future claims of ineffective assistance. *See Strickland*, 466 U.S. at 689. The Military Commission should further determine whether, under the circumstances, a continuance is warranted, as to R.M.C. 803 sessions of the Commission, to ensure adequate representation of the Accused. Finally, the Commission, in almost any event, should provide defense counsel an opportunity to cross-examine the witness

whose deposition the Commission ordered in AE 369M, with perhaps a follow-up opportunity given during proceedings scheduled for 22 to 26 January 2018.

**4.**   **Facts**.

a.   Abd Al Rahim Hussayn Muhammad Al Nashiri ("the Accused") is charged with multiple offenses under the Military Commissions Act of 2009 ("M.C.A."), 10 U.S.C. §§ 948a *et seq.*, relating to his alleged involvement in the attempted bombing of USS THE SULLIVANS (DDG 68) on 3 January 2000, the bombing of USS COLE (DDG 67) on 12 October 2000, and the bombing of MV *Limburg* on 6 October 2002.  These attacks resulted in the deaths of 18 people, injury to dozens of others, and hundreds of millions of dollars in property damage.

b.   The charges against the Accused were referred as capital offenses and carry a possible sentence of death.  Because of the capital nature of the proceedings, the Accused was assigned learned counsel.  Richard Kammen, the Accused's current Learned Counsel, has been assigned to the Accused's case since 23 December 2008.  AE 389, Att. B.

c.   On 14 June 2017, the CDC advised all defense counsel under his supervision, including Learned Counsel and other civilian counsel, "that they not conduct any attorney-client meetings at Guantanamo Bay, Cuba (GTMO) until they know with certainty that improper monitoring of such meetings is not occurring."  *See* Attachment B.

d.   On 23 June 2017, the Defense filed a motion seeking to disclose classified information to the Accused related to alleged intrusions into attorney-client communications between an attorney not representing the Accused and a detainee other than the Accused.  AE 369HH.  The Commission denied the motion.  AE 369OO.

e.   The Defense subsequently filed a motion to allow the Accused to meet with the Defense in the Expeditionary Legal Center rather than their current meeting location.

AE 369AAA.  The Commission denied the motion, but did not object to the Defense utilizing the court room for attorney-client meetings when the Commission is not in session.  AE 369OOO at 1.

    f.  The Commission issued a docketing order on 4 October 2017, scheduling the defense cross-examination of a certain confidential witness for the week of 6 November 2017.  AE 388.

    g.  On 6 October 2017, Learned Counsel and the two detailed civilian counsel in the case submitted requests to the CDC to withdraw from their representation of the Accused.  AE 339J; AE 339K, AE 339L.  Their justifications relied, in significant part, upon the CDC's 14 June advice to them.  *See, e.g.*, AE 339J at Att. B (summarizing the 14 June advice in the third item of the factual basis cited in opinion of Ellen Yaroshefsky).

    h.  On 11 October, the CDC notified the three counsel that he accepted their requests 2017.  AE 339J; AE 339K; AE 339L.

    i.  The Defense provided notice of the purported withdrawals to the Commission on 13 October 2017.  AE 339J; AE 339K; AE 339L.

    j.  The Defense filed a motion to abate the proceedings, premised on the Learned Counsel's purported withdrawal, on 16 October 2017.  AE 389.  The Commission denied the motion on 27 October 2017, finding that "at this stage of the proceedings, the excusal of Learned Counsel, who has acted as lead attorney for the Accused for nine years, will prejudice the Accused's due process rights."  AE 389F at 6.

    k.  On the morning of 28 October 2017, the Chief Prosecutor emailed the CDC, attaching the Commission's ruling in AE 389F and requesting that the CDC notify the Government and Commission of the CDC's "steps . . . to ensure civilian attorney compliance with applicable law

and regulations by participating in the R.M.C. 802 conference tomorrow at 1700 and then being present for the next session on the record Monday morning." Attachment C.

l.  On the afternoon of 28 October 2017, the Chief Prosecutor again emailed the CDC, asking for acknowledgement of receipt, making clear that suitable arrangements were in effect to facilitate travel, and providing, "I trust that you are considering the very real disturbance and disorder to the military commission's proceedings that will be caused—if they do not appear—by the continuing impact of your purported excusal of them." Attachment D.

m.  The CDC acknowledged receiving the email on 28 October 2017.  Attachment E.

n.  The CDC advised on 29 October 2017, hours before the chartered flight for military commission personnel, that he had been informed that the civilian defense counsel "do not intend to travel to Guantanamo." Attachment F.

o.  Mr. Kammen, the Accused's Learned Counsel, was quoted in a news article on 29 October 2017 explaining his rationale for not complying with the Commission's Order: "The military judge has ordered U.S. citizens to go to what the government claims is a foreign country to provide unethical legal services to keep the façade of justice that is the military commissions running.  This order is illegal and neither I nor the other civilians are going to Guantánamo. . . . The fundamental problem, of course, is government misconduct and the judge's willingness to tolerate this misconduct, which gives rise to the requirement that we withdraw as Mr. al-Nashiri's lawyers." Attachment G.

p.  Mr. Kammen was quoted in the *Indiana Lawyer* on 25 October as discussing his options following the Commission's Order in AE 389A with the CDC.  Attachment H.

q. On 29 October 2017, following the R.M.C. 802 session where the Military Judge directed the parties to submit filings, the Defense refused to do so, and continued to defy the authority of the Commission.  Attachment I.

5. **Law and Argument.**

I.  **THE FIRST ORDER OF BUSINESS SHOULD BE TO CALL THE COMMISSION INTO SESSION, ACCOUNT FOR THE PRESENCE OR ABSENCE OF PARTICIPANTS, AND DETERMINE ON THE RECORD WHETHER ANY ABSENCES OF DEFENSE COUNSEL WERE WITH PERMISSION OF THE MILITARY JUDGE.**

A military judge who has been detailed to the military commission may, at any time after the service of charges which have been referred for trial by military commission under chapter 47A of title 10, United States Code, call the Commission into session without the presence of the members.  R.M.C. 803.  As previously directed via duly issued docketing order, *see* AE 388, the Military Judge here should promptly, and no later than tomorrow morning, 31 October 2017, call this Commission into session.

Upon calling the Commission into session, the Military Judge must account for the parties.  R.M.C. 805.  On information and belief, the three detailed civilian defense counsel will be absent.  According to pertinent rule, absences of counsel may occur "with the permission of the military judge," R.M.C. 805(d), though "[o]rdinarily, no military commission proceedings should take place if any defense or assistant defense counsel is absent unless the accused expressly consents to the absence."  R.M.C. 805(d), Discussion.  In order to properly account for the parties and ascertain whether any absences of counsel are authorized, the Commission may conduct appropriate, focused fact-finding, to include receiving evidence from parties and hearing testimony from sworn witnesses.  R.M.C. 801.

Pursuant to R.M.C. 805, the Military Judge should make appropriate findings of fact on the record as to each defense counsel who has failed to appear as ordered.  If not prepared summarily, based upon any defense counsel absences alone and representations by Detailed

Military Counsel, to enter findings as to whether any absences are justified, he should consider directing the appearance of the CDC, who, on information and belief, is present at Guantanamo and who is required by duly promulgated regulation to use his authority to gain civilian defense counsel compliance, *inter alia*, with orders of the Commission.  R.T.M.C. 9-1.a.3 & 9-1.a.6.K. Questioning of the CDC should be limited to what actions he has taken since the entry of the Commission's ruling in AE 389F of 27 October to countermand his own actions on 14 June and 13 October purporting to justify and excuse civilian defense counsel's purported withdrawal, to communicate the now demonstrably ultra vires nature of the CDC's excusal to civilian defense counsel, and to gain their compliance with AE 389F.  At this point, depending upon the sworn testimony of the CDC and any evidence proffered by the parties, the Commission may desire to provide the CDC additional, limited time—perhaps 24 hours—to attempt to gain compliance by civilian defense counsel and to report back to the Commission.  One such measure to gain compliance could be to direct Ms. Eliades and Ms. Spears, as government employees, to report to Guantanamo on the next available flight.

Other witnesses deemed necessary by the Military Judge may be called before the Commission to provide information and testimony under oath as to the circumstances of each defense counsel's absence.  Should such witnesses not be present on Guantanamo, they may appear via video-teleconference from the National Capital Region.  Testimony, as with the CDC, should be under oath and limited to whether and how AE 389F was complied with and to whether there is any intention to now comply with AE 389F in light of the CDC's testimony. The knowledge and the views of the Accused on the absence of counsel should also be ascertained by the Military Judge and made a part of the record.  Under the circumstances, the Commission should forego the procedure adopted in AE 99F of advising the Accused that he

will be given permission, upon appropriate findings by the Military Judge following an in-court inquiry, to voluntarily waive his right to presence at certain pre-trial sessions.  The importance of ascertaining the status of his representation by counsel requires his presence at all sessions until representation issues are resolved.

II.    **DEPENDING UPON DETERMINATIONS MADE WHILE ACCOUNTING FOR PARTIES UNDER R.M.C. 805, THE MILITARY COMMISSION SHOULD CONSIDER WHETHER PROCEEDINGS PURSUANT TO 10 U.S.C. § 950t(31) AND R.M.C. 809 ARE APPROPRIATE.**

A military commission established under the Military Commissions Act of 2009 ("M.C.A.") has the authority to hold "any person" in contempt under 10 U.S.C. § 950t(31) for "disturb[ing] its proceedings by any riot or disorder."  This authority extends to persons not ordinarily subject to the commission's jurisdiction under 10 U.S.C. §§ 948c, 948d, including civilians. *See United States v. Burnett*, 27 M.J. 99, 104 n.8 (C.M.A. 1988) ("No constitutional issue has been raised here as to the power of a court-martial to punish civilians for contempt. However, we have no doubt about its constitutionality.") (citations omitted).

The term "disorder," as used in 10 U.S.C. § 950t(31), is not defined in the M.C.A., the Rules for Military Commissions, the Regulation for Trial by Military Commission, or the Military Commissions Trial Judiciary Rules of Court.  However, the language of 10 U.S.C. § 950t(31) is nearly identical to that of Article 48 of the Uniform Code of Military Justice ("U.C.M.J.") prior to the U.C.M.J.'s amendment in 2011. *See Act of May 5, 1950*, ch. 169, § 1 (Art. 48), 64 Stat. 107, 123 ("A court-martial, provost court, or military commission may punish for contempt any person who uses any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder.").

Military appellate courts interpreting Article 48 have recognized that it empowers a court-martial to hold a civilian in contempt for violating a court order. *See United States v. Ferdinand*, 29 M.J. 164, 167 (C.M.A. 1989) (noting that "[a] military judge is hardly exercising his contempt powers under Article 48, UCMJ, 10 USC § 848, when he finds that any efforts to

11

compel a mother to produce a child to testify would be 'futile' simply because she threatens to disobey his order before it is even issued"); *United States v. Cole*, 31 C.M.R. 16, 20 (1961) (reviewing trial record involving witness who refused to respond to cross-examination questions and recommending that "law officers . . . employ the [contempt] powers conferred upon them by Congress in order that military trials may proceed in a fair and orderly manner"); *United States v. Gardinier*, 63 M.J. 531, 543 (A.F.C.C.A. 2006) (noting that a military judge has contempt authority under Article 48, U.C.M.J., and cannot "decline to order a witness to testify" and still find a witness unavailable), *rev'd on other grounds*, 65 M.J. 60 (C.A.A.F. 2007); *see also United States v. Clark*, 4 F.Supp.2d 940, 944 (C. D. CA, 1998)( Noting in interpreting Article 48 in the context of an Assimilated Crimes Act that "[I]t is true that cases applying Article 48 usually refer to the military contempt power as limited to overt disruptive behavior. Nevertheless, Defendant's alleged conduct was an affront to the judiciary and an abuse of her "clients" rights. Although Defendant's conduct does not fall within a traditional application of Article 48, a military judge could probably find Defendant's conduct punishable under the military contempt statute.")In each of these cases, the potential contemnor had engaged in conduct that violated a court order or had threatened to violate a court order if one were issued.  The military appellate courts reviewing these cases cited Article 48 as a potential remedy to counter these instances of witness intransigence.  It can be assumed the courts would not recommend using a tool that would have been beyond the trial courts authority to use  These cases suggest, therefore, that a violation of a court order can, under certain circumstances, constitute a "disorder" for purposes of the contempt statute.

A withdrawal of counsel, even if not contrary to a court order, can also constitute a "disorder" that runs afoul of the contempt statute.  In *United States v. Galinato*, 28 M.J. 1049 (N-M.C.M.R. 1989), for example, the trial defense counsel "unilateral[ly] withdr[ew] from the proceedings, on the apparent pretext that they were not prepared" to proceed.  *Galinato*, 28 M.J. at 1052.  Counsel did this after the trial judge denied the defense's request for a continuance.  *Id.* The trial judge chose not to initiate contempt proceedings.  However, on appeal, the Navy-

Marine Corps Court of Military Review described counsel's conduct as "an astounding show of contempt." *Id.* at 1053.  The court further noted,

> No defense counsel has at any time for any reason the right to disregard a ruling made by a presiding trial judge.  Courts-martial may be adversary proceedings, but they are not anarchical, and any judge's order must be complied with or properly challenged.  Pleading an accused not guilty in the trial arena and then suddenly abandoning him as the opposing gladiator approaches, sword upraised, is not compliance with nor a proper challenge of a judge's ruling.

*Id.*  Although noting that it had "no occasion to decide today whether the counsels' conduct in this case was a 'disorder'" under Article 48, the court reiterated that trial judges "have and may use . . . contempt powers pursuant to Article 48, UCMJ, 10 U.S.C. § 848" in appropriate cases. *Id.* at 1054 n.6.

A counsel's failure or refusal to appear in court as ordered constitutes a "direct contempt" that can be punished under 10 U.S.C. § 950t(31).  The discussion of Rule for Courts-Martial ("R.C.M.") 809 notes that Article 48 can be employed to redress a "direct" contempt of the court. *See* Manual for Courts-Martial ("M.C.M") (2012 ed.), R.C.M. 809(a), Discussion ("Article 48 makes punishable 'direct' contempt, that is, contempt which is committed in the presence of the court-martial or its immediate proximity.").  This idea was supported by Colonel William Winthrop, who noted that the object of the contempt statute was to address "direct contempts, or contempts committed in the presence or immediate proximity of the court when in session . . . ." William Winthrop, Military Law and Precedents 301–02 (rev. 2d ed. 1920).  *See also Burnett*, 27 M.J. at 105 (acknowledging that the "[C]ourt [of Military Appeals] may have interpreted the language of Article 48 in a more sweeping way than [William] Winthrop had in mind" and noting "[w]e do not retreat from these interpretations") (citations omitted).  Thus, in addition to determining the appropriate forum for disposing of a contempt allegation, the distinction between "direct" and "indirect" contempt aids in defining what offenses fall within the sweep of 10 U.S.C. § 950t(31).

13

Although there is a lack of military case law addressing whether an attorney's failure to appear as ordered is a contempt "directly witnessed" by the court, the United States Court of Appeals for the District of Columbia Circuit has held that an attorney's tardiness in spite of a court order is a "direct" contempt. *See In re Farquhar*, 492 F.2d 561, 563–64 (1973) (expressing that "tardiness of counsel, after counsel is ordered to appear in court at a specified hour, is an act occurring in the presence of the court 'or so near thereto as to obstruct the administration of justice' within meaning of 18 U.S.C. § 401"); *In re Gates*, 478 F.2d 998, 1000 (D.C. Cir. 1973) (rejecting argument that "failure to appear as scheduled was not an act in the presence of the court"); *In re Niblack*, 476 F.2d 930 (1973) (finding counsel "disobeyed the [court's] order that he be in court at a specified hour to proceed with a hearing" and this was "misbehavior in the presence of the court, or so near thereto as to obstruct the administration of justice"). Here, the absence of defense counsel from the proceedings is plain and obvious to the military judge, and the reasons for their refusal to appear are the subject of litigation well-known to the court. The fact that the conduct can be "directly witnessed" by the military judge, weighs in favor of it qualifying as an offense under 10 U.S.C. § 950t(31).

In addition to its direct nature, the concerted action by defense counsel could be found sufficiently disorderly in nature and disruptive in effect to constitute an offense under 10 U.S.C. § 950t(31). To find, categorically, that such conduct cannot be contemptuous would seriously undermine the military commissions in a manner that cannot be attributed to Congressional intent. *See Burnett*, 27 M.J. at 104 n.8 ("Undoubtedly, the Founding Fathers, who obviously contemplated use of courts-martial . . . did not intend that such tribunals would lack the power to function effectively; but if they had no contempt power, courts-martial could be impeded where civilian witnesses or civilian counsel were involved."). The Commission has authority to punish defense counsel for contempt under 10 U.S.C. § 950t(31) for their collective, unilateral withdrawal from representing the Accused and in addition to their failure to appear before the Commission as ordered.

14

A counsel's failure or refusal to appear is "directly witnessed by the commission" within the meaning of R.M.C. 809(b)(1) and "may be punished summarily." Although some circuits treat such offenses as "indirect contempts" and afford those accused of such contempts with greater process, the United States Court of Appeals for the District of Columbia Circuit has rejected this approach. *See, e.g.*, *In re Gates*, 478 F.2d at 1000 ("Appellant . . . argued that Rule 42(a) of the Federal Rules of Criminal Procedure permits summary punishment only for a direct contempt committed in the actual presence of the court, and that the failure to appear as scheduled was not an act in the presence of the court. . . . [W]e are constrained to reject this contention . . . .").

Rule for Military Commission 809(c) outlines a procedure for conducting more elaborate contempt proceedings. These procedures are compatible with Appendix E of the Military Judges' Benchbook, which provides a script for summary contempt hearings that can be tailored for this occasion. Unlike other substantive offenses, the essential elements of contempt are not found within Part IV of the Manual for Military Commissions. These should be tailored from 10 U.S.C. § 950t(31). *See also In re Holloway*, 995 F.2d 1080, 1082 (1993) (discussing elements of contempt). Any findings of fact under R.M.C. 803(c) should address the contemnors' *mens rea* to better enable the convening authority to review the action on appeal under R.M.C. 803(d).

## III. THE AL DARBI DEPOSITION AND ALL OTHER DOCKETED WITNESS TESTIMONY SHOULD PROCEED WHERE LEARNED COUNSEL IS ABSENT ONLY AS A RESULT OF THE DEFENSE'S DELIBERATE CHOICE TO OBSTRUCT THESE PROCEEDINGS AND UNDERMINE A FUTURE ATTEMPT TO ADMIT THE DEPOSITION AT TRIAL.

### A. Because the defense deliberately chose to ignore the Commission's orders, the Commission should give effect to its choice to make detailed military counsel the only counsel available to complete the Al Darbi deposition and all other docketed witness testimony.

No court should second-guess a defense team's deliberate choices on trial tactics and strategy, even if they should appear to be unwise, including the decision to forego cross-examination of a witness. The holding in *Strickland v. Washington*, 466 U.S. 668 (1984), a death-penalty case, affords the defense "wide latitude . . . in making tactical decisions" such as

15

that made by the defense here; creating an appellate issue around the right to counsel and impeding a future offer of admission of the deposition testimony. *Strickland*, 466 U.S. at 689. *Strickland* commands the judiciary not to second-guess defense counsel's decisions. *United States v. Abney*, 812 F.3d 1079, 1096-97 (D.C. Cir. 2016) (citing *Strickland*, 466 U.S. at 689).

The failure of the three civilian defense counsel to appear pursuant to the Commission's orders evinces deliberate trial strategy—the strategy of derailing, obstructing, and delaying these proceedings by refusing to participate further in what the CDC considers a "failed experiment" and legal "farce." Indeed, the defense continues to assert unilateral power over whether the Commission can proceed, despite two orders of this Commission to the contrary. This scorched-earth strategy, while rare, is not novel and the Commission should not yield to it. In *United States v. Sanchez*, the defense counsel refused to make an opening statement, make a closing argument, cross-examine witnesses, and make objections to the admission of evidence. *United States v. Sanchez*, 790 F.2d 245, 247 (2d Cir. 1986). The court refused to "permit a defendant to forestall adjudication indefinitely by intentionally sabotaging his own defense" and declined to find prejudice under *Strickland. Id.* at 247. Indeed, "[t]o reward such tactics would defy both the purposes of the Sixth Amendment and common sense." *Id. See also Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), (finding no prejudice under *Strickland* where counsel offered no argument or evidence during sentencing and defendant sentenced to life imprisonment); *Moss v. Hofbauer*, 286 F.3d 851 (6th Cir. 2002), (declining to provide relief under *Strickland* despite counsel's failure to cross-examine key witnesses, make an opening statement, make objections, or call defense witnesses); *United States v. Glover*, 153 F.3d 749, 758 (D.C. Cir. 1998) (declining to provide relief under *Strickland* because court would not "second-guess" defense strategy to decline cross-examination of government informant); *Warner v. Ford*, 752 F.2d 622,

623 (11th Cir. 1985) (holding that defense counsel's near total failure to participate in the trial proceedings was a trial strategy, and, therefore, a prejudice presumption did not apply under *Strickland*).

### B. The defense is not entitled to an idealized cross-examination, and the right to question the witness is not impaired if cross-examination is conducted by detailed counsel.

No readily apparent principle of law stands for the proposition that only learned counsel may conduct a cross-examination of a fact witness. To the extent that detailed military counsel represent that learned counsel might cross-examine the witness in a different manner than they would may well be true,[2] but it is of no legal consequence whatsoever—not even in an Article III proceeding does this asserted right exist. *Delaware v. Fensterer*, 474 U.S. 15 (1985) (per curiam) makes clear that the right to cross-examine government witnesses "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 20. In *Fensterer*, the Court further stated that confrontation rights are implicated only in two situations: admission of hearsay statements "and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Id.* at 18. Neither of these concerns are implicated by the defense's decision to make only detailed military counsel available, in as much as counsel's deliberate refusal to abide by the Commission's orders is neither a hearsay problem nor a "restriction imposed by law or the trial court." *Id.* While *Fensterer* is not itself a capital case, it has been

---

[2] Anticipating that military counsel will declare themselves "ineffective" in learned counsel's absence, *Strickland* is not a standard to be applied to isolated events at trial. To the contrary, the Commission "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Nor does *Strickland* apply to every isolated instance of error—as the Court observed, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." 466 U.S. at 693 (citation omitted). *See also United States v. Cronic*, 466 U.S. 648 (1984) (upholding conviction where a young real estate lawyer with no jury trial experience whatsoever was appointed to conduct felony defense less than a month before trial). *Id.* at 649, 665-67.

applied in numerous cases where death sentences were imposed. *See, e.g.*, *Brown v. Dretke*, 419

F.3d 365, 375-76 (5th Cir. 2005) (applying *Fensterer* in denial of death-sentence habeas appeal);

*Hopper v. Dretke*, 106 F. App'x 221, 233 (5th Cir. 2004) (same).

  **C. Because the right to question witnesses is not qualitatively different in a capital case, and because the right to learned counsel is only "to the greatest extent practicable," military defense counsel are capable of completing the deposition.**

  First, no precedent known to the Government attempts to obligate specific tasks to

specific members of a capital defense team, much less explicitly specifying that a fact witness

must be cross-examined by learned counsel.  However, *United States v. Taveras* is instructive on

a closely analogous point, permitting introduction of prior testimony that was not subject to

cross-examination by capitally qualified counsel.  In that case, Taveras was charged in federal

court with capital murder related to drug trafficking.  436 F. Supp. 2d 493, 495 (E.D.N.Y. 2006),

*aff'd*, 367 F. App'x 262 (2d Cir. 2010).  The prosecution se sought to introduce prior testimony

under Fed. R. Evid. 804 (permitting introduction of past trial and deposition testimony) from a

1999 non-capital state prosecution against Taveras.  *Id.* at 510.  In addition to discussing the

technical rule, the district court addressed the application of the rule in the death penalty context,

overruling defense objection to the effect that a capital trial is inherently different from a normal

felony trial and thus provides a different "motive" for cross-examination.  *Id.* at 510–11.  The

district court observed that:

> Defendant does not point to, and the court could not find, any reported case
> basing a decision to exclude prior testimony on the grounds that the penalty faced
> by the defendant was greater in the second proceeding than in the first.  Where, as
> here, both cases involved serious felonies with substantial potential punishments,
> and the conduct to be proven by the prior testimony in the first trial is identical to
> that to be proven by the testimony in the second trial, a defendant's motive will
> have been sufficiently similar to justify admission.

*Id.* On appeal, the Second Circuit summarily affirmed the district court's handling of the issue in a single short paragraph, reviewing for abuse of discretion and finding that any error was harmless. 367 F. App'x at 263–64.[3]

Second, under the M.C.A., the Accused is entitled to learned counsel "to the greatest extent practicable." 10 U.S.C. § 949a(b)(2)(C)(ii). "Practicable" means "reasonably capable of being accomplished; feasible." *Black's Law Dictionary* (8th ed. 2004). By comparison, a defendant in Article III court capital proceedings is entitled to appointment of learned counsel without any such qualifying language. 18 U.S.C. § 3005. This evinces a lesser right to learned counsel in military commissions than in district court proceedings. Particularly where learned counsel's absence is of the defense's deliberate making—over government objection and in defiance of the Commission's orders—there is no reason not to give effect to that "practicable" qualification on the right to learned counsel. Thus, where learned counsel has gone out of his way to absent himself from the deposition, having him conduct the cross-examination is not "reasonably capable of being done."[4] Indeed, the only thing that is "practicable," i.e., "feasible," is proceeding with detailed military defense counsel.

### D. Qualified defense counsel are available to represent the Accused in all docketed matters.

Per R.M.C. 805(c), the military judge may proceed with a military commission session if "at least one qualified counsel for each party is present." Even if an accused objects to proceeding without a specific defense counsel, the military judge may find that "under the

---

[3] Notably, the purpose of learned counsel in a capital case is to provide expertise in the procedural nuances of capital litigation and the mitigation phase of the case. *See generally United States v. Cordova*, 806 F.3d 1085, 1100-01 (D.C. 2015). While learned counsel must be a competent litigator, he or she is not appointed for those skills. In this case, the cross examination of Mr. Al Darbi is related to the guilt phase of the trial and does not implicate specialized capital issues.

[4] Earlier this year, a military commission permitted a deposition of a trial and sentencing witness to proceed in the unexpected and unplanned absence of learned counsel. *United States v. Mohammad, et al.*, Appellate Exhibit 479L, Ruling, Defense Emergency Motion To Cancel 25 January – 3 February 2017 Commission Hearings (27 Jan. 2017).

circumstances, a continuance is not warranted and that the accused's right to be adequately represented would not be impaired." *Id.* at Discussion. Several courts have had the opportunity to determine whether an Accused's efforts to relieve or acquire new counsel at the last moment before trial were efforts "to vex the Government with needless delay in order to avoid or put off the consequences of his misconduct." *United States v. Kinard*, 21 C.M.A. 300 (1972); *see also United States v. Marsh*, 35 M.J. 505, 509 (U.S.A.F.C.M.R. 1992) and *United States v. Gipson*, 25 M.J. 781, 783 (U.S.C.M.R. 1988) ("The right to counsel of choice is not absolute and must be balanced against society's interest in the efficient and expeditious administration of justice."); *United States v. Alicea-Baez*, 7 M.J. 989, 991 (U.S.C.M.R. 1979) ("To postpone the trial to some undetermined date in the future would have posed a considerable hardship on both the Government and those witnesses requested to make the long journey from the United States to [the place of trial] a second time."); *United States v. Mitchell*, 777 F.2d 248, 256 (5th Cir. 1985) ("The right to counsel of one's choice is not absolute as is the right to the assistance of counsel. The right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. It is a right and proper tool of the defendant; it cannot be used merely as a manipulative monkey wrench. A defendant cannot assume that the right to choose counsel affords the right to obtain a delay at his whim and caprice, or to obtain a reversal because he was unable to frustrate justice. Rather, the proper exercise of the trial court's discretion requires a delicate balance between the defendant's due process right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice."(internal quotations and citations omitted)).

Here, the Accused is represented by two detailed, fully cleared military defense counsel, one of whom has actively taken part in the direct examination portion of the Al Darbi deposition. Both counsel meet the requirements of R.M.C. 502(d) and thus should be considered qualified to represent the Accused in all docketed matters before this Commission. The Commission should find that, even if the Accused objects, that his right to be adequately represented would not be

impaired if the Commission considers the matters as docketed during the 30 October – 17 November 2017 sessions.

**6.   Conclusion.**

The Military Judge should exercise his responsibility and authority as the sole presiding officer of the Commission, *see* R.M.C. 801 and 10 U.S.C. § 948j(a), to methodically record the presence or absence of counsel under R.M.C. 805, focusing his fact-finding powers initially upon efforts taken to comply or not comply with AE 389F of 27 October 2017 and associated orders. Upon fully accounting for any absences of defense counsel on the record, the Commission should consider whether any punishment under its contempt authority in 10 U.S.C. § 950t(31) is warranted.  Specifically, and using either the summarized process of R.M.C. 809(b)(1) or the more extensive process of R.M.C. 809(b)(2), the Commission may determine whether any person, including but not limited to detailed counsel, has disturbed and caused a qualifying disorder of these proceedings by failing to comply with the Commission's Orders and interrupting long-scheduled matters, without legal justification or excuse.  Concurrently, the Military Commission should make a determination whether the absence of civilian defense counsel constitutes a chosen strategy, which determination should be duly entered into the record to rebut future claims of ineffective assistance.  The Military Commission should further determine whether, under the circumstances, a continuance is warranted as to R.M.C. 803 sessions of the Commission to ensure adequate representation of the Accused.  Finally, the Commission in almost any event should provide defense counsel an opportunity to cross-examine the witness whose deposition the Commission ordered in AE 369M, with perhaps a follow-up opportunity given during proceedings scheduled for 22 to 26 January 2018.

**7.   Witnesses and Evidence**

The Government respectfully submits that the Commission may inquire as to what direction the CDC provided his subordinate counsel in response to the Commission's Orders AE 389A and AE 389F.  The CDC may also provide information about how and when he was

notified that the Accused's civilian counsel would not be complying with the Commission's

Orders and attending the hearings scheduled 30 October – 17 November 2017.  The civilian

counsel, including Learned Counsel, Mr. Richard Kammen, Ms. Rosa Eliades, and Ms. Mary

Spears, may be called to testify to the guidance they received from their supervising attorney, the

CDC, with regard to the Commission's Orders in AE 389A and AE 389F.  Calling Mr. Kammen

as a witness as part of the limited fact-finding regarding his absence during the R.M.C. 805

inquiry would give the Commission the opportunity to determine the nature of his absence in

light of statements he appears to have publicly made, which statements are attached herein to

indicate his coordination with the CDC and his intent to disobey the Commission's Orders.

**8.   Additional Information**

The Government offers no additional information.

**9.  Attachments**

    A.  Certificate of Service, dated 30 October 2017
    B.  Memorandum, CDC, 14 June 2017
    C.  Email 1, Chief Prosecutor to CDC, 28 October 2017
    D.  Email 2, Chief Prosecutor to CDC, 28 October 2017
    E.  Email 3, CDC to Chief Prosecutor, 28 October 2017
    F.  Email 4, CDC to Chief Prosecutor, 29 October 2017
    G.  *Miami Herald*, 29 October 2017
    H.  *Indiana Lawyer*, 25 October 2017
    I.  Email 5, Detailed Military Counsel, 29 October 2017

                             Respectfully submitted,
                                   //s//
                             Mark A. Miller
                             Trial Counsel
                             COL John B. Wells, JA, USA
                             Managing Assistant Trial Counsel
                             Maj Michael A. Pierson, USAF
                             Assistant Trial Counsel
                             Mark Martins
                             Chief Prosecutor
                             Military Commissions

# ATTACHMENT A

## CERTIFICATE OF SERVICE

I certify that on the 30th day of October 2017, I filed **AE 389G** - Government Brief Regarding the Commission's Authority to Enforce Its Orders and to Proceed in the Absence of Learned Counsel, with the Office of Military Commissions Trial Judiciary and served a copy on counsel of record.

<u>_____//s//_____</u>
Mark A. Miller
Trial Counsel
Office of the Chief Prosecutor
Office of Military Commissions

# ATTACHMENT B

UNCLASSIFIED



DEPARTMENT OF DEFENSE
CHIEF DEFENSE COUNSEL FOR MILITARY COMMISSIONS
1620 DEFENSE PENTAGON
WASHINGTON, DC 20301-1620

14 June 2017

MEMORANDUM FOR CHIEF PROSECUTOR FOR MILITARY COMMISSIONS
COMMANDER, JOINT TASK FORCE GUANTANAMO

SUBJECT: Improper Monitoring of Attorney-Client Meetings

This memorandum is to advise you that due to recently received information I have recommended to Military Commissions Defense Organization (MCDO) defense counsel, to include Learned Counsel, that they not conduct any attorney-client meetings at Guantanamo Bay, Cuba (GTMO) until they know with certainty that improper monitoring of such meetings is not occurring. On 30 November 2016, the Military Judge in *United States v. Khalid Shaikh Mohammed et al.* ordered that intrusive monitoring (i.e., listening and audio and video recording) of attorney-client meetings be formally prohibited in the standard operating procedures for Joint Task Force Guantanamo (JTF-GTMO) and the Joint Detention Group (JDG). The Military Judge further ordered that defense counsel must be advised in advance if a meeting with an accused is to be monitored. The Military Judge issued these orders because he recognized the legitimate concerns of defense attorneys that attorney-client meetings at GTMO were being improperly monitored by government personnel.

At present, I am not confident that the prohibition on improper monitoring of attorney-client meetings at GTMO as ordered by the commission is being followed. My loss of confidence extends to all potential attorney-client meeting locations at GTMO. Consequently, I have found it necessary as part of my supervisory responsibilities under 9-1a.2 and 9-1a.9 of the Regulation for Trial by Military Commission to make the above-described recommendation to all MCDO defense counsel. Whether, and to what extent, defense teams follow this advice is up to the individual defense team.

If you wish to discuss this matter I can be reached at 571-256-9780 or john.baker@osd.mil.

J. G. BAKER
Brigadier General, U.S. Marine Corps
Chief Defense Counsel for
Military Commissions

cc:
DGC (P&HP)
CA
All Defense Counsel

UNCLASSIFIED

# ATTACHMENT C

| From: | Martins, Mark S BG USARMY OSD OMC OCP (US) |
|---|---|
| To: | Baker, John G BGen USMC (US) |
| Cc: | MARKAM9; richard@kammenlaw.com; Eliades, Rosa A CIV (US); Spears, Mary E CIV OSD OMC (US); Piette, Alaric A LT USN (US); Brown, Gary D (HQE) CIV OSD OMC CA (US); McCloud, Anthony Wade CIV OSD OMC CA (US) |
| Subject: | R.T.M.C. 9-1.a.3 & 9-1.a.6.K |
| Date: | Saturday, October 28, 2017 9:22:44 AM |
| Attachments: | AE 389F - RULING.pdf |
| | AE 388 - DOCKETING ORDER.pdf |
| | AE 389A - BRIEFING ORDER.pdf |

Dear BGen Baker,

In light of the Commission's ruling in AE 389F, attached, respectfully request that you inform the Office of Military Commissions and the parties to this now-decided matter what steps you are taking to ensure civilian attorney compliance with applicable law and regulations by participating in the R.M.C. 802 conference tomorrow at 1700 and then being present for the next session on the record Monday morning.  See AEs 388 & 389A (also attached).  As you know, transportation arrangements require advance coordination.  Accordingly, prompt reply this morning by email would be best.

Thank you.

Mark Martins
Brigadier General, U.S. Army
Chief Prosecutor

# ATTACHMENT D

| From: | Martins, Mark S BG USARMY OSD OMC OCP (US) |
|---|---|
| To: | Baker, John G BGen USMC (US) |
| Cc: | MARKAM9; richard@kammenlaw.com; Eliades, Rosa A CIV (US); Spears, Mary E CIV OSD OMC (US); Piette, Alaric A LT USN (US); Brown, Gary D (HQE) CIV OSD OMC CA (US); McCloud, Anthony Wade CIV OSD OMC CA (US) |
| Subject: | Re: R.T.M.C. 9-1.a.3 & 9-1.a.6.K |
| Date: | Saturday, October 28, 2017 2:05:23 PM |

Dear BGen Baker,

As there has been no reply to my request, I merely notify you at this point that it is continuing in nature, and that OMC will be staffed early tomorrow and ready to manifest Mr. Kammen, Ms. Eliades, and Ms. Spears at the Joint Base Andrews terminal. Neither you nor they should assume that actions and inactions to date, or a lack of paperwork or documentation, will prevent travel.

I trust that you are considering the very real disturbance and disorder to the military commission's proceedings that will be caused—if they do not appear—by the continuing impact of your purported excusal of them.

Mark Martins
Brigadier General , U.S. Army
Chief Prosecutor

On Oct 28, 2017, at 9:22 AM, Martins, Mark S BG USARMY OSD OMC OCP (US) <mark.s.martins.mil@mail.mil> wrote:

    Dear BGen Baker,

    In light of the Commission's ruling in AE 389F, attached, respectfully request that you inform the Office of Military Commissions and the parties to this now-decided matter what steps you are taking to ensure civilian attorney compliance with applicable law and regulations by participating in the R.M.C. 802 conference tomorrow at 1700 and then being present for the next session on the record Monday morning. See AEs 388 & 389A (also attached). As you know, transportation arrangements require advance coordination. Accordingly, prompt reply this morning by email would be best.

    Thank you.

    Mark Martins
    Brigadier General, U.S. Army
    Chief Prosecutor


    <AE 389F - RULING.pdf>

    <AE 388 - DOCKETING ORDER.pdf>

    <AE 389A - BRIEFING ORDER.pdf>

# ATTACHMENT E

| | |
|---|---|
| **From:** | Baker, John G BGen OSD OMC Defense |
| **To:** | Martins, Mark S BG USARMY OSD OMC OCP (US) |
| **Cc:** | MARKM9; richard@kammenlaw.com; Eliades, Rosa A CIV (US); Spears, Mary E CIV OSD OMC (US); Piette, Alaric A LT USN (US); Brown, Gary D (HQF) CIV OSD OMC CA (US); McCloud, Anthony Wade CIV OSD OMC CA (US) |
| **Subject:** | Re: R.T.M.C. 9-1.a.3 & 9-1.a.6.K |
| **Date:** | Saturday, October 28, 2017 5:19:43 PM |

BG Martins,

I recently returned from a volunteer event down in Richmond with my son.

I acknowledge receipt.

S/F,

BGen Baker

Sent from my iPhone

On Oct 28, 2017, at 2:05 PM, Martins, Mark S BG USARMY OSD OMC OCP (US) <mark.s martins.mil@mail.mil> wrote:

> Dear BGen Baker,
>
> As there has been no reply to my request, I merely notify you at this point that it is continuing in nature, and that OMC will be staffed early tomorrow and ready to manifest Mr. Kammen, Ms. Eliades, and Ms. Spears at the Joint Base Andrews terminal. Neither you nor they should assume that actions and inactions to date, or a lack of paperwork or documentation, will prevent travel.
>
> I trust that you are considering the very real disturbance and disorder to the military commission's proceedings that will be caused—if they do not appear— by the continuing impact of your purported excusal of them.
>
> Mark Martins
> Brigadier General , U.S. Army
> Chief Prosecutor
>
> On Oct 28, 2017, at 9:22 AM, Martins, Mark S BG USARMY OSD OMC OCP (US) <mark.s.martins.mil@mail.mil> wrote:
>
>> Dear BGen Baker,
>>
>> In light of the Commission's ruling in AE 389F, attached, respectfully request that you inform the Office of Military Commissions and the parties to this now-decided matter what steps you are taking to ensure civilian attorney compliance with applicable law and regulations by participating in the R.M.C. 802 conference tomorrow at 1700 and then being present for the next session on the record Monday morning. See AEs 388 & 389A (also attached). As you know, transportation arrangements require advance

coordination.  Accordingly, prompt reply this morning by email would be best.

Thank you.

Mark Martins
Brigadier General, U.S. Army
Chief Prosecutor


<AE 389F - RULING.pdf>

<AE 388 - DOCKETING ORDER.pdf>

<AE 389A - BRIEFING ORDER.pdf>

# ATTACHMENT F

| | |
|---|---|
| **From:** | Baker, John G BGen OSD OMC Defense |
| **To:** | Martins, Mark S BG USARMY OSD OMC OCP (US); Brown, Gary D (HQE) CIV OSD OMC CA (US) |
| **Cc:** | Piette, Alaric A LT USN (US); Aaron, Wayne J COL USARMY OSD OMC (US); Sullivan, Dwight H SES OSD OGC (US); Puza, Laura M SMSgt OSD MCDO |
| **Subject:** | Travel Status |
| **Date:** | Sunday, October 29, 2017 6:10:14 AM |

BG Martins/Mr. Brown,

 I have been informed that Mr. Kammen, Ms. Spears, and Ms. Eliades do not intend to travel to Guantanamo. See Model Rule of Professional Responsibility Rule 3.4c.

S/F,

BGen Baker

Sent from my iPhone

# ATTACHMENT G



Defense Attorney Rick Kammen at a 2016 post-hearing news conference at Guantanamo - DVIDS

GUANTÁNAMO

# Civilian lawyers defy judge's order to travel to Guantánamo for war court showdown

BY CAROL ROSENBERG
crosenberg@miamiherald.com

OCTOBER 29, 2017 10:31 AM

ANDREWS AIR FORCE BASE, MARYLAND — A Pentagon shuttle departed for Guantánamo Sunday morning without three civilian lawyers who quit the USS Cole case, setting the stage for a showdown Monday with the military judge who ordered them to the remote U.S. Navy base in Cuba.

Veteran death-penalty defense attorney Rick Kammen and colleagues Rosa Eliades and Mary Spears resigned from the team Oct. 11 over a classified ethical conflict. The judge said, under his reading of the rulebook, they cannot leave the case without his permission.

"The military judge has ordered U.S. citizens to go to what the government claims is a foreign country to provide unethical legal services to keep the façade of justice that is the military commissions running. This order is illegal and neither I nor the other civilians are going to Guantánamo," Kammen told the Miami Herald Sunday morning. "The fundamental problem, of course, is government misconduct and the judge's willingness to tolerate this misconduct, which gives rise to the requirement that we withdraw as Mr. al-Nashiri's lawyers."

**RELATED: USS Cole death-penalty case in limbo after key defense lawyer quits**

**Breaking News**

Be the first to know when big news breaks

Enter Email Address

The special Pentagon charter specifically shuttled attorneys and other war court staff for a scheduled three-week pretrial hearing in the capital case against Abd al Rahim al Nashiri, 52. The Saudi is accused of orchestrating al-Qaida's Oct. 12, 2000 suicide bombing of the warship off Yemen that killed 17 U.S. sailors, and wounded dozens of others.

Kammen has represented him as his death-penalty defender for a decade; the other two women came to the case later. Only a Navy lieutenant with a 2012 Georgetown Law degree but no capital experience remains on the case.



Those on board Sunday's flight included the judge, Air Force Col. Vance Spath, and Marine Brig. Gen. John Baker, the chief defense counsel for military commissions, and his counterpart, Army Brig. Gen. Mark Martins. Baker authorized the resignations of Kammen, Eliades and Spears after they briefed him on a covert breach of attorney-client privilege involving something so secretive at the prison neither Nashiri nor the public can know the details.

Rick Kammen, defense attorney
CAROL ROSENBERG -
crosenberg@miamiherald.com

In an Oct. 24 filing, Baker advised Spath that he released the trio after "a thorough review of the relevant facts, both classified and unclassified, and the legal parameters of my supervisory authority," that considered advice from "a prominent legal ethicist, Professor Ellen Yaroshefsky."

Baker wrote that, as chief defense counsel, he has "unilateral, unreviewable authority to excuse counsel for good cause." Now that he's done that, he wrote, "Nowhere do the Rules make provision for the review or reversal of that determination."

**Miami Herald USS Cole case hearing trial guide**

On Oct. 16, Spath ordered them to appear in court, saying that while the general "purported to find good cause" to approve their leaving the case, Spath, as judge, has not. "Accordingly, Mr. Kammen, Ms. Eliades, and Ms. Spears remain counsel of record in this case, and are ordered to appear at the next scheduled hearing."

**Defense lawyers quit. Not so fast, says war court judge, who orders them to Guantánamo**

Their absence is likely the first order of business Monday because, under the rules of court, a hearing requires a lawyer specializing in the death-penalty to proceed. It was yet to be seen if anybody has the authority to order them put on a plane and sent to Guantánamo.

When a subpoenaed witness failed to show up to testify by video-feed to the base last year, the judge dispatched U.S. marshals to the man's Massachusetts home, had him held in a Virginia jail overnight and taken to a Pentagon-run video-conference room.

Case 1:17-cv-08718-GHW   Document 10-16   Filed 11/09/17   Page 40 of 48

Before that happened, the lead USS Cole case prosecutor, Mark Miller, said, "I think we all agree that we cannot force somebody to come to the island."

**MORE DETAILS: In war court first, stubborn witness testifies at Guantánamo by video after night in Virginia jail**



From left, civilian Pentagon employed lawyers Rosa Eliades and Mary Spears. Courtesy the attorneys

The tug-of-war over authority to excuse the attorneys is based upon different rule books governing the war court created by President George W. Bush after the Sept. 11, 2001 attacks and reformed by President Barack Obama to expand the rights of the accused. The war court judge's bench book, called the Trial Judiciary Rules of Court, says once a civilian lawyer has appeared in court, "excusal must be approved by the military judge." But the Manual for Military Commissions, from which the rules are drawn, says the authority who appointed the lawyer gets to excuse the lawyer for good cause.

In response to a question about Spath's authority to enforce his appearance order, a Pentagon spokesman noted that the judge has forced a witness to testify and can find someone in contempt of court. The contempt option involves a multistep process, including an opportunity to appeal and have a Pentagon official review the finding, and may be punishable by 30 days in a brig or jail and a $1,000 fine.



Sunday's shuttle carried everyone else involved in the case, including the civilian prosecutors as well as Navy Lt. Alaric Piette, a former Navy SEAL and the lone member of Nashiri's defense team who the Saudi has met and accepted. Baker has assigned three other military lawyers to the case but none have sufficient experience to function as a death-penalty defender, called learned counsel, and two await security clearances to come to court.

Case 1:17-cv-08718-GHW   Document 10-16   Filed 11/09/17   Page 41 of 48

Unusually, no survivors of the al-Qaida attack or family members of the sailors killed that day were attending the first week of the hearings. Some were expected in the second and third weeks.

One week of the hearings was being devoted to the closed-door cross-examination of a Guantánamo prisoner, Ahmed al Darbi. He testified against Nashiri in August, and expects to go home to Saudi Arabia early next year to serve out a 13-year sentence. Kammen was to handle the closed deposition. Yet to be seen, however, is if Spath will insist that Piette do it.

*Carol Rosenberg: 305-376-3179, @carolrosenberg*

---

**PENTAGON STATEMENT**

Under the "Manual for Military Commissions," the military judge is vested with various means to enforce orders. The military judge has in the past exercised authority over witnesses and production of evidence under Rule for Military Commission (RMC) 703. Additionally, RMC 809 provides the military judge with additional authority to exercise contempt power pursuant to 10 U.S. Code § 950t. *Air Force Maj. Ben Sakrisson, spokesman for Guantánamo policy and military commissions*



Three empty seats on Sunday's Military Commissions flight to the U.S. Navy Base at Guantanamo Bay, Cuba. Carol Rosenberg - crosenberg@miamiherald.com

1 of 3

---

**Never miss a local story.**

Sign up today for a free 30 day free trial of unlimited digital access.

SUBSCRIBE NOW

---

**SUGGESTED FOR YOU**


Celebrities Who Suprisingly Decided To Bare It All


Athletes You Forgot Spent a Lot of Jail Time


Times the Pawn Stars Have Seriously Cheated Customers


Why You Don't See Edward Norton In Movies Anymore


Jackie O's Granddaughter Is Basically Her Twin


Megyn Kelly Is Destroying NBC's Morning Ratings


The Real Reason You Don't Hear From Elisabeth Hasselbeck Anymore


Malia and Sasha's Stunning Fashion Since Leaving the White House

**COMMENTS**

SPONSORED CONTENT

**6 Exercises to Slow the Effects of Aging**

**By Kindred Healthcare** — Adding these exercises to your routine can delay the effects of aging on both your mind and body.

**SUBSCRIPTIONS**

Start a Subscription

Customer Service

eEdition

Vacation Hold

Pay Your Bill

Rewards

**SITE INFORMATION**

About Us

Contact Us

Newsletters

News in Education

Public Insight Network

Reader Panel

**SOCIAL, MOBILE & MORE**

Text News Alerts

Mobile & Apps

Facebook

Twitter

Google+

Newsletters

**ADVERTISING**

Place a Classified

Media Kit

Commercial Printing

Public Notices

Shopping

**MORE**

Copyright     Commenting Policy     Privacy Policy     Terms of Service

# ATTACHMENT H



Home

# Indianapolis attorney ordered back to Guantanamo Bay

Marilyn Odendahl
October 25, 2017

Indianapolis attorney Richard Kammen, the lead defense attorney who represented the accused mastermind behind the bombing of the USS Cole, is being ordered to return to Guantanamo Bay after he and his co-counsel withdrew from the case over ethical concerns.

Since 2008, Kammen, of Kammen and Moudy, has been representing Abd al-Rahim al-Nashiri, who has been held as a prisoner of the United States since 2002. The attorney has shuttled back and forth to Guantanamo Bay for hearings and made trips to Washington, D.C., to review the classified documents related to the case.

However in mid-October, Kammen and his team quit after determining it was not ethical for them to continue representing al-Nashiri. The exact reason for the withdrawal is murky because much of the information has been deemed classified, but it appears to be related to the government listening to private conversations between the defendants and their attorneys.

Previously, microphones had been hidden in smoke detectors placed in the rooms where the lawyers and their clients met. Although the government had since offered assurances it was no longer eavesdropping, the defense discovered information that contradicted those promises.

An outside ethics expert consulted by Kammen and his team concurred they could not continue representing al-Nashiri. Also, in a separate review, Marine Brig. Gen. John Baker, chief defense counsel for the military commission defense organization, agreed the ethical situation required the civilian defense team be disbanded.

"I'm neither confirming nor denying anything about the al-Nashiri case other than what the chief defense counsel told us, that the government's assurance was contradicted," Kammen said.

Last week, the judge in the al-Nashiri case, Air Force Col. Vance Spath, stepped in. According to the Miami Herald, Spath did not find cause for the defense attorneys to quit and has ordered them to appear for a hearing at Guantanamo Bay next week.

Kammen had anticipated the military judge might order the defense team back to Guantanamo Bay. Currently, he is conferring with his co-counsel and the chief defense counsel to determine their next step.

After defending al-Nashiri for so long, Kammen struggled to describe his feelings at having to step down. Because much of the information surrounding the circumstances are classified, none of the defense attorneys could meet with al-Nashiri or tell him why they could no longer represent him.

Kammen said he came to like al-Nashiri and he did want to see the case through to the end. But, he noted the situation came to a point where he felt he was enabling a system that is unethical, so he quit.

# ATTACHMENT I

**From:** Piette, Alaric A LT OSD OMC MCDO
**Sent:** Sunday, October 29, 2017 8:25 PM
**To:** Sims, Martin L CIV OSD OMC TJ (US)
**Cc:** Miller, Mark A CIV (US); Martins, Mark S BG USARMY OSD OMC OCP (US); Wells, John B COL
USARMY OSD OMC OCP (US); Pierson, Michael A Maj USAF (US); Gale, Travis D TSgt USAF OSD OMC
(US); Janes, Brandi L CIV OSD OMC (US)
**Subject:** Re: Defense Statement on Way Forward for 30 OCT 17 Hearings

Good evening,

Please advise the Military Judge that because learned counsel is not present, the defense will not be
making any new pleadings.  Our position remains what it was in the motion to abate.

Very Respectfully,

LT Alaric Piette

Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G LTE network.

**From:** Sims, Martin L CIV OSD OMC TJ (US)
**Sent:** Sunday, October 29, 2017 6:15 PM
**To:** Piette, Alaric A LT OSD OMC MCDO
**Cc:** Miller, Mark A CIV (US); Martins, Mark S BG USARMY OSD OMC OCP (US); Wells, John B COL
USARMY OSD OMC OCP (US); Pierson, Michael A Maj USAF (US); Gale, Travis D TSgt OSD OMC Defense;
Janes, Brandi L CIV OSD OMC - DEFENSE
**Subject:** Re: Defense Statement on Way Forward for 30 OCT 17 Hearings

Thank you for the email.  However, the Military Judge asked the parties to file actual pleadings on this
issue.  Please do so.

Sent from my iPhone

On Oct 29, 2017, at 5:41 PM, Piette, Alaric A LT OSD OMC MCDO wrote:

Good evening,

The Defense position is that substantive proceedings cannot occur without the presence of learned
counsel.

Very Respectfully,

Alaric A. Piette
LT, JAGC, USN
Defense Counsel
Military Commissions Defense Organization