# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ELLEN YAROSHEFSKY,** )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>**GEN. JAMES N. MATTIS** in his )<br>official capacity as SECRETARY OF )<br>DEFENSE, and )<br>)<br>**COL. VANCE H. SPATH** (AIR )<br>FORCE) in his official capacity as )<br>MILITARY JUDGE, MILITARY )<br>COMMISSIONS TRIAL )<br>JUDICIARY, DEPARTMENT OF )<br>DEFENSE, )<br>)<br>Respondents. ) | Case No.1:17-cv-08718-GHW<br><br>The Hon. Gregory H. Woods<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN FURTHER SUPPORT OF PETITION FOR HABEAS CORPUS
AND MOTION FOR DECLARATORY JUDGMENT, TO QUASH SUBPOENA OR
OTHER PROCESS AND FOR AN INTERIM TEMPORARY RESTRAINING ORDER**


JONES DAY

Harold K. Gordon
250 Vesey Street
New York, New York 10281
(212) 326-3939

**TABLE OF CONTENTS**

I. THE SUBPOENA IS *ULTRA VIRES*, AND SO VOID. ........................................................... 1

    A. The Government's Cited Provisions Do Not Authorize The Subpoena ................ 2

    B. Due Process Would Preclude Self-Enforcing Process From Article I Courts ........................................................................................................................ 3

II. THE SUBPOENA IS UNREASONABLE AND OPPRESSIVE ........................................... 4

III. THIS COURT HAS JURIDICTION AND SHOULD NOT ABSTAIN ............................. 8

CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Dynes v. Hoover*,
  61 U.S. (20 How.) 65 (1857) ...................................................................................................3

*Garcia v. Akwesasne Hous. Auth.*,
  268 F.3d 76 (2d Cir. 2001) ......................................................................................................9

*Hamdan v. Rumsfeld*,
  548 U.S. 557 (2006) ...........................................................................................................9, 10

*Hamdi v. Rumsfeld*,
  542 U.S. 507 (2004) ................................................................................................................8

*Hammond v. Lenfest*,
  398 F.2d 705 (2d Cir. 1968) ....................................................................................................9

*ICC v. Brimson*,
  154 U.S. 447 (1894), *overruled on other grounds by Bloom v. Illinois*, 391
  U.S. 194 (1968) ....................................................................................................................3, 4

*In re Al-Nashiri*,
  835 F.3d 110 .........................................................................................................................10

*In re McVane*,
  44 F.3d 1127 (2d Cir. 1995) ........................................................................................4, 5, 6, 9

*In re Nat'l Sec. Letter*,
  863 F.3d 1110 (9th Cir. 2017) .................................................................................................4

*In re Wills*,
  No. 79-85 (S.D. Ohio July 16, 1979) .......................................................................................9

*Kaufman v. Edelstein*,
  539 F.2d 811 (2d Cir. 1976) ..................................................................................................10

*Larson v. Domestic & For. Comm. Corp.*,
  337 U.S. 682 (1949) ................................................................................................................8

*Lerman v. SEC*,
  928 F. Supp. 2d 798 (S.D.N.Y. 2013) ..................................................................................5, 6

*McDonough v. Widnall*,
  891 F. Supp. 1439 (D. Colo. 1995) ................................................................................... 4

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996) ........................................................................................................... 9

*Schlesinger v. Councilman*,
  420 U.S. 738 (1975) ........................................................................................................... 9

*See v. City of Seattle*,
  387 U.S. 541, 545 (1967) ................................................................................................... 4

*Shasta Minerals & Chem. Co. v. SEC*,
  328 F.2d 285 (10th Cir. 1964) ........................................................................................... 4

*United Church of the Med. Ctr. v. Med. Ctr. Comm'n*,
  689 F.2d 693 (7th Cir. 1982) ........................................................................................... 10

*United States v. Bennett*,
  12 M.J. 463 (C.M.A. 1982) ................................................................................................ 3

*United States v. Bergeson*,
  425 F.3d 1221 (9th Cir. 2005) ........................................................................................... 6

*United States v. Dionisio*,
  410 U.S. 1 (1973) ............................................................................................................... 9

*United States v. Fletcher*.
  461 F. Supp. 2d 1101 (D. Ariz. 2006) ........................................................................... 5, 7

*United States v. Flynn*,
  103 F. Supp. 925 (S.D.N.Y. 1951) ................................................................................. 5, 7

*United States v. Gotti*,
  784 F. Supp. 1011 (E.D.N.Y. 1992) ................................................................................. 6

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950) ........................................................................................................... 5

*United States v. Nixon*,
  418 U.S. 683 (1974) ........................................................................................................ 6, 7

*United States v. Powell*,
  379 U.S. 48 (1964) .......................................................................................................... 6, 7

*United States v. Weinstein*,
  511 F.2d 622 (2d Cir. 1975) ........................................................................................... 2, 3

**STATUTES**

10 U.S.C. § 846 .................................................................................................................................. 2

10 U.S.C. § 847 .................................................................................................................................. 4

10 U.S.C. § 948c ................................................................................................................................ 2

10 U.S.C. § 949j ..................................................................................................................... 2, 5, 8, 9

10 U.S.C. § 1493 (1926) ................................................................................................................... 4

28 U.S.C. § 1331 ............................................................................................................................... 8

28 U.S.C. § 1361 ............................................................................................................................... 8

28 U.S.C. § 2241 ............................................................................................................................... 8

Fed. R. Civ. P. 706 ............................................................................................................................ 7

Fed. R. Crim. P. 17 ....................................................................................................................... 2, 6

Fed. R. Crim. P. 28 ........................................................................................................................... 7

Fed. R. Evid. 706 .............................................................................................................................. 3

**OTHER AUTHORITIES**

XV Journals Cont'l Cong. (1779) .................................................................................................... 4

Col. William Winthrop, *Military Law and Precedents* (2d ed. 1920) ........................................... 4

14 Charles Alan Wright *et al*, Federal Practice & Procedure § 3655 ............................................ 8

R.C.M. 703 ............................................................................................................................. *passim*

A formal subpoena has now, finally, been served on Professor Yaroshefsky. (Ex. R.) That subpoena, on its face, confirms the need for this Court's intervention. It purports to compel Professor Yaroshefsky's appearance before "a Military Commission appointed by Convening Order 11-02" – an entity that has no authority to obtain witnesses via subpoena *sua sponte*, much less order self-enforcing subpoenas in derogation of due process. *See infra*, § I.

More fundamentally, the subpoena is unreasonable and oppressive. Professor Yaroshefsky has never appeared, and the parties did not seek to have her testify, before the military commission because she is not relevant to its proceedings. Determining the propriety of Richard Kammen's withdrawal is the exclusive province of Brigadier General Baker, and even if it were not, Colonel Spath himself has already decided that issue several times over. At best, then, the subpoena seeks improper after-the-fact discovery to buttress the record for Colonel Spath's ruling and respond to Kammen's habeas petition. At worst, given on-the-record comments by the prosecutor *and Colonel Spath* about purported strategies, conspiracies, and obstruction, the subpoena was obtained for the improper purpose of pressuring Professor Yaroshefsky to change her opinion when deprived of her right to a neutral arbiter. *See* § II.

Unable to defend the merits of the subpoena, the government raises a host of procedural distractions. Regarding jurisdiction, the entire judicial-review canon – from *Marbury* through *Youngstown* to *Zivotofsky* – manifests that the government's assertion of sovereign immunity is specious. Abstention, moreover, is improper because Professor Yaroshefsky is (1) a civilian, (2) non-servicemember, (3) with no other avenue to obtain neutral, independent review. This Court should, indeed must, exercise its lawful jurisdiction to prevent irreparable injury. *See* § III.

For these reasons, as well as those addressed in her opening brief and before the Court, Professor Yaroshefsky respectfully requests the Court quash the subpoena and declare her rights.

**I.  THE SUBPOENA IS *ULTRA VIRES*, AND SO VOID.**

Professor Yaroshefsky's brief established that Colonel Spath's order, and now the served subpoena, are *ultra vires*. (ECF 9 at 12-15.) The government cites two sources of purported authority. Both not only fail on their own terms, but also suffer a more basic defect. Article I

- 1 -

tribunals, including military commissions, can *never* order a self-enforceable subpoena.

   A.   The Government's Cited Provisions Do Not Authorize The Subpoena

  Professor Yaroshefsky first challenged the statutory basis for Colonel Spath's order, noting that the jurisdiction of military commissions is restricted to "alien unprivileged enemy belligerent[s]." 10 U.S.C. § 948c. In response, the government posits that 10 U.S.C. § 949j authorizes military commissions to subpoena a United States citizen. (ECF 18 at 4.) But the government pointedly skips over the very first subsection of that provision – concerning *who* has the right to process – in favor of the second, concerning the nature of that process. The plain text of § 949j(a)(1) secures the right to subpoenas only to "*[d]efense counsel* in a military commission," not to the commission itself. *Id.* (emphasis added). This limitation on commission authority is all the more jarring when compared to the analogous provision governing courts-martial, 10 U.S.C. § 846. Both sections are captioned "opportunity to obtain witnesses and other evidence," and they largely mirror each other with respect to the nature of the subpoenas authorized. With respect to *who* is entitled to those subpoenas, however, they differ markedly. Courts-martial, but not commissions, are explicitly authorized to "have equal opportunity to obtain witnesses" as parties. 10 U.S.C. § 846(a)(1). As a result, § 949j provides no authority for a subpoena ordered by a military commission *sua sponte*, much less Colonel Spath acting alone.

  Professor Yaroshefsky's next argument, that the Military Commission's own rules do not authorize the commission – as opposed to *the parties* – to compel the attendance of witnesses, confirms the statutory omission. *See* R.M.C. 703(b)-(c). The government entirely ignores this argument. Indeed, the government's express analogy to Fed. R. Crim. P. 17, (ECF 18 at 9, 19, 25), dooms its case. In *United States v. Weinstein*, 511 F.2d 622 (2d Cir. 1975), the government obtained mandamus against a district judge for issuing a subpoena in a criminal matter, in part because "Rule 17 permits the issuance of a subpoena only upon the request of *a 'party.'*" *Id.* at 627 (emphasis added). The Second Circuit cautioned strongly against any other interpretation as "violat[ing] a fundamental premise" of our "adversarial, not [] inquisitorial," justice system: "Whatever may be the judge's role in countries governed by a system of Civil Law, where the

judge may by custom engage in investigative or prosecutorial activities, we have chosen to administer justice through courts which are limited to . . . an adversarial setting." *Id.* at 628.

The government also neglects Rule 703(d), which precludes a commission from employing experts absent convening authority authorization. *Cf.* Fed. R. Evid. 706(a). Further, the government's own expert declaration acknowledges that Rule 703(e) does not permit Professor Yaroshefsky to be compelled to appear before a tribunal outside of the United States. (ECF 17, ¶ 25); *see United States v. Bennett*, 12 M.J. 463, 471 (C.M.A. 1982) (holding that a witness "was not subject to subpoena to testify before the court-martial in the Philippines.").

**B.     Due Process Would Preclude Self-Enforcing Process From Article I Courts**

The subpoena to Professor Yaroshefsky would still be void even if Congress (by statute) and the Secretary of Defense (by rule) had in fact authorized military commissions to obtain subpoenas *sua sponte*. The defect lies in the subpoena's purported self-executing effect.

Long ago, the Supreme Court upheld the ability of Congress to authorize Article I tribunals to subpoena witnesses. *ICC v. Brimson*, 154 U.S. 447, 473 (1894) ("It was clearly competent for congress . . . to invest the commission with authority to require the attendance and testimony of witnesses …."), *overruled on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968) (right to jury extends to contempt). But the Court forbade Congress, as a matter of due process, from authorizing Article I tribunals *to enforce* their subpoenas. "Such a body could not, under our system of government, and consistently with due process of law, be invested with authority to compel obedience to its orders by a judgment of fine or imprisonment." *Id.* at 485; *see id.* ("[T]he power to impose fine or imprisonment . . . can only be exerted, under the law of the land, by a competent judicial tribunal having jurisdiction in the premises.").

This historic understanding applied to military tribunals, which the Supreme Court long ago held to be "entirely independent" of the "judicial power." *Dynes v. Hoover*, 61 U.S. (20 How.) 65, 79 (1857). Thus, since even before the adoption of the Constitution, Congress "recommended" that State authorities, upon the application of a judge advocate, "grant proper writs requiring and compelling" the attendance of witnesses before courts-martial. XV Journals

Cont'l Cong. 1277 (1779).  Though judge advocates were later granted subpoena power, 10 U.S.C. § 1493 (1926), no such power was conferred on the court itself.  Further, as the leading commentator on military law noted, neither the judge advocate nor the court had any "power to compel" a civilian witness, "or attempt to compel him," in the case of a refusal to testify.  Col. William Winthrop, *Military Law and Precedents* 202 (2d ed. 1920).

More recently, all circuits recognize that the "power to punish is not generally available to federal administrative agencies, and so enforcement must be sought by way of separate judicial proceeding."  *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1115 (9th Cir. 2017) (quoting *Shasta Minerals & Chem. Co. v. SEC*, 328 F.2d 285, 286 (10th Cir. 1964) (collecting cases)).  "[T]he subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply."  *See v. City of Seattle*, 387 U.S. 541, 545 (1967).

Here, the subpoena purports to deprive Professor Yaroshefsky of her due process right to independent, Article III review.  A military commission subpoena constitutes administrative, not judicial, process.  *McDonough v. Widnall*, 891 F. Supp. 1439, 1448 (D. Colo. 1995).  But, by statute, non-compliance with a commission's subpoena constitutes an "offense against the United States," even absent judicial enforcement.  10 U.S.C. § 847(a).  At least the prosecution for that offense would take place in an Article III court, *see* 10 U.S.C. § 847(b)-(c); more troubling is the commission's power, without any court intervention whatsoever, to order Professor Yaroshefsky into custody to secure her compliance.  *See* R.M.C. 703(e)(2)(G).  Even if Congress had authorized such a subpoena, it would be repugnant to the Constitution under *Brimson*.

## II.     THE SUBPOENA IS UNREASONABLE AND OPPRESSIVE

As part of the judicial enforcement that Due Process mandates, courts in this Circuit (as elsewhere) evaluate whether both "the inquiry is within the authority of the agency," and "the information sought is reasonably relevant" to that inquiry.  *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995).  Above, Professor Yaroshefsky demonstrated that the subpoena is not "within the authority of the" military commission.  Her opening brief likewise showed that her testimony is

not "reasonably relevant" to any question before the commission.  (ECF 9 at 14-18.)[1]

The Court addressed this point at the initial hearing.  It pressed the government to identify "the purpose of calling Professor Yaroshefsky."  (Ex. S at 11; *see also id.* at 12 ("[D]oes Professor Yaroshefsky have the ability to move to a quash a subpoena on the basis that it's brought to harass or for other improper purpose?"); *id.* at 13-14 ("I will be interested in seeing why it is that the tribunal is requesting this testimony and how it is related to the substance of the underlying case . . . ."); *Id.* at 14 ("[I]t's not apparent to me for what purpose she has been called to testify, given that fact" that her opinion had already been submitted to the commission).)

The government initially declined to defend the relevance of Professor Yaroshefsky's testimony, stating that it did "not have any representational role as to the issuing judge," and so "will not be in a good position to articulate . . . what the judge's thinking was."  (*Id.* at 14-15.)  This Court rejected such shell games:  "Presumably . . . there is a reason why the government seeks to enforce" the subpoena.  (*Id.* at 15.)

Nonetheless, the government's Opposition continues to obfuscate, offering only speculation as to why Colonel Spath views Professor Yaroshefsky's evidence as relevant.  (ECF 18 at 5.)  That omission is fatal under *McVane* and like cases, which have adopted three interrelated inquiries to test the ultimate reasonableness of subpoenas:

- ***Relevance.***  First, *McVane* itself quashed an administrative subpoena in part because "the FDIC has not . . . substantiated its need" for records from "family members of the targets of an FDIC investigation."  44 F.3d at 1137-38.  In the process, the Second Circuit expressed special solicitude for the privacy rights of individuals "who were not targets of the agency's investigation."  *Id.* at 1136-37; *see Lerman v. SEC*, 928 F. Supp. 2d 798, 804-05 (S.D.N.Y. 2013).  In the criminal context (relevant here given § 949j's analogy to criminal process), this court has similarly not hesitated to quash subpoenas where there was no pending proceeding to which the subpoenaed material could relate.  *United States v. Flynn*, 103 F. Supp. 925, 931 (S.D.N.Y. 1951); *see United States v. Fletcher*. 461 F. Supp. 2d 1101, 1103 (D. Ariz. 2006).

---

[1] Professor Yaroshefsky's opening brief framed this argument under the Fifth Amendment, the Fourth Amendment, and the common law of subpoenas, respectively.  (*Id.*)  Under all sources, however, the issue remains the same: the reasonable relevance of the request.  *See United States v. Morton Salt Co*., 338 U.S. 632, 652-53 (1950) (collapsing Fourth and Fifth Amendment inquiries into test of whether "the disclosure sought" is "unreasonable").  That Professor Yaroshefsky made an independent Due Process objection to enforcement before a hearing on her objections does, however, belie any contention that § I.B of this Reply constitutes new matter.

- ***Cumulativeness.***  *McVane* noted, but did not have occasion to apply, the requirement that administrative subpoenas not seek information "already within the [agency's] possession."  44 F.3d at 1135.  Such concerns are less pertinent to investigatory subpoenas.  In the adjudicatory context, however, courts routinely quash criminal subpoenas because "the evidence to be offered, although relevant, was cumulative." *United States v. Gotti*, 784 F. Supp. 1011, 1013 (E.D.N.Y. 1992); *see United States v. Bergeson*, 425 F.3d 1221, 1225 (9th Cir. 2005) (noting that "information sought from the attorney is already available from other sources" and "compliance would likely destroy the attorney-client relationship").

- ***Purpose.***  Finally, *McVane* required the administrative subpoena to have issued for a "proper purpose."  44 F.3d at 1139-40.  The Supreme Court likewise instructs that administrative subpoenas should be quashed where they "harass the [recipient] or put pressure on him to settle a collateral dispute."  *United States v. Powell*, 379 U.S. 48, 58-59 (1964).  In the criminal context, moreover, the Court has held that Rule 17 subpoenas must *not* be used as "a means of discovery," but instead seek only material that is "evidentiary and relevant."  *United States v. Nixon*, 418 U.S. 683, 699 (1974).

Here, each inquiry manifests the unreasonableness of the subpoena to Professor Yaroshefsky.

As in *McVane* and *Lerman*, Professor Yaroshefsky has the privacy rights of a natural person who is not a target of the military commission.  Indeed, she never appeared before the commission, and did not intend to do so.  (Even her ethics opinion was instead intended for Kammen's guidance and, if Kammen decided to waive privilege, potentially Brigadier General Baker – the sole authority empowered to decide withdrawal issues.  *See* ECF 10-13, ¶¶ 2-3.)  Now that her report has been placed in the record, however, Professor Yaroshefsky's testimony would be cumulative.  As in *Bergeson*, compelling her appearance would plainly chill ethicists' willingness to consult with counsel, to the derogation of justice and professional responsibility.

To salvage the subpoena, the government misstates the current posture of the military commission's proceedings.  It asserts, without citation, that Colonel Spath is presently "consider[ing] issues related to the permissibility of counsel's withdrawal." (ECF 18 at 1.)  But Colonel Spath has already held – in every germane order and every single daily transcript – that Kammen's withdrawal was not permissible and is void.  To take just one example:

> The body of rules … applying to the three civilians at issue, plus the chief defense counsel, all require representation continue in any case when a tribunal shown on the record. ….  They all say if a tribunal says you have to keep going, you have to keep going, again, until and unless a superior court intervenes.
> The same bar rules also provide each of them protections when acting consistent

> with a court order, i.e., it isn't misconduct for the attorneys to follow the order of a court or a tribunal. …..
>
> Next, the manner of the defense community here has shown flagrant disobedience in the face of, frankly, centuries of precedent to the contrary, and that is a trial court issues orders and you either appeal, you get a stay, or you get assistance from a superior court.

(ECF 10-17 at 10,059-60.) No doubt Colonel Spath has already decided the ethical issues for himself. He has even made an express "finding[] of fact," "proven to at least a preponderance of the evidence," that "no good cause exists to warrant the excusal" of Kammen. (ECF 10-16 at 10,020-25.) Thus, as in *Flynn* and *Fletcher*, there are no proceedings currently pending before the military commission to which Professor Yaroshefsky's testimony could possibly relate.

Since the propriety of Kammen's withdrawal has been resolved (whether by Brigadier General Baker or Colonel Spath), the subpoena to Professor Yaroshefsky *at best* seeks after-the-fact discovery, improper under *Nixon*, in order to buttress the record underlying Colonel Spath's ruling or respond to Kammen's habeas petition.[2] Colonel Spath himself has expressed this purpose, noting that he was calling Professor Yaroshefsky as an *expert* witness "to continue to build the record that I'm clearly building for where we are at." (Ex. U at 10,262-63.) *But cf.* R.M.C. 703(d) (providing that *parties* must request that the *convening authority* authorize the employment of an expert); *cf.* Fed. R. Civ. P. 706 ("But court may only appoint someone who consents to act") (formerly Fed. R. Crim. P. 28); U.S. Const., amend. XIII.

At worst, given the comments by the prosecutor about alleged collusion, conspiracies, and obstruction (not to mention the prosecutor's recent accusation that undersigned is "rogue counsel," Ex. V at 10,573), the subpoena constitutes harassment designed to pressure Professor Yaroshefsky to alter her opinion on the collateral Kammen matter, contrary to *Powell*. Again, Colonel Spath himself has given credence to this view as well in more-recent transcripts, repeatedly criticizing what he views as a "strategy chosen by the defense community." (Ex. U at 10,257; *see, e.g.*, Ex. Q at 10,067; Ex. W at 10,187; Ex. T at 10,670.) Further, when an ABA

---

[2] The Court should consider whether to hold all process in abeyance pending Kammen's habeas petition in Indiana, where the Court expressly contemplates an evidentiary hearing (ECF 10-3, ¶ 4), since only that proceeding could render Professor Yaroshefsky's testimony potentially relevant (in assessing the decision on the permissibility of withdrawal). Colonel Spath stated he could take Professor Yaroshefsky's evidence in December. (Ex. T at 10,587.)

expert whose opinion was – unlike Professor Yaroshefsky's – intended to be submitted to the commission appeared voluntarily, an FBI agent was inexplicably present. (Ex. T at 10,580-81.)

Regardless whether Colonel Spath's improper purpose is benign or malicious, he has abandoned his role as a neutral arbiter. He is intent on "building a record," salvaging public perception of the military commission, and refuting Professor Yaroshefsky's opinion. (*E.g.*, Ex. W at 10,193; Ex. V at 10,577; Ex. T at 10,586.) Such partisanship – including leading the examination of the ABA expert who appeared voluntarily – violates due process, because it inclines Colonel Spath to overrule privilege or other objections to his authority or questions (as his treatment of Brigadier General Baker demonstrates). *See Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (plur. op.) ("due process requires a neutral and detached judge in the first instance.").

## III. THIS COURT HAS JURISDICTION AND SHOULD NOT ABSTAIN

Unable or unwilling to defend the reasonableness of the subpoena on its merits, the Government instead raises a host of procedural distractions. **First**, it invokes sovereign immunity. (ECF 18 at 12-14.) But the government ignores the settled, non-statutory practice permitting equitable review of agency action akin to that available under the Administrative Procedure Act. *Cf.* 5 U.S.C. § 702; *see generally* 14 Charles Alan Wright *et al*, *Federal Practice & Procedure* § 3655 at nn.35-63. It was long ago decided that an "officer's actions beyond [statutory] limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way that the sovereign has forbidden." *Larson v. Domestic & For. Comm. Corp.*, 337 U.S. 682, 689 (1949) (plur. op.). Immunity likewise does not apply where "the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional." *Id.* at 690.[3] Professor Yaroshefsky's motion rests on Colonel Spath's *ultra vires* actions that

---

[3] Notably, *Larson* catalogued habeas corpus actions as falling within this second category. Given that Professor Yaroshefsky has finally been served, she no longer needs to rely on § 2241 to invoke this Court's jurisdiction. Professor Yaroshefsky's Motion to Quash the now-served subpoena poses the necessary federal question concerning Colonel Spath's authority under the Fifth Amendment, 10 U.S.C. § 949j, and R.M.C. 703; while *Larson*, the APA, and 28 U.S.C. § 1361 provide the necessary waivers of immunity. The pleadings here all invoke § 1331 and averred facts putting the government on notice of Professor Yaroshefsky's *ultra vires* claim.

That said, the better view is that a subpoena constitutes "a seizure of the person," and hence custody for habeas purposes, but other § 2241 elements (namely, a "violation of the Constitution or laws" of the United States)

resulted in an unreasonable subpoena in violation of her Fourth and Fifth Amendment rights. *McVane* was similarly initiated by FDIC-subpoena recipients filing a motion to quash. 44 F.3d at 1133; *In re Wills,* No. 79-85 (S.D. Ohio July 16,1979) (protective order against court-martial subpoena). This suit thus operates against Colonel Spath as an individual, and not the sovereign.

**Second,** ignoring Colonel Spath's express desire for "a federal district judge to let me know what my authority is or isn't," (Ex. T at 10,587; *see, e.g.*, Ex. V at 10,493), the government urges this Court to abstain. (ECF 18 at 14.) But this case presents none of the "exceptional circumstances" that would excuse this Court's "strict duty to exercise the jurisdiction conferred upon [it] by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), provides the correct rule of decision. In that military commission case, the Court listed three considerations governing the abstention inquiry. The first, and dispositive, factor turns on the status of the plaintiff. The "challenges" of civilians "to ongoing military proceedings are cognizable in federal court" per se. *Id.* at 585 n.16; *see also Schlesinger v. Councilman*, 420 U.S. 738, 759 (1975) (abstention inappropriate where court presented with question of "whether under Art. I Congress could allow the military to interfere with the liberty of civilians even for the limited purpose of forcing them to answer the military justice system."). Indeed, the government relies heavily on *Councilman*'s purported exhaustion requirement, but fails to note that the Court *explicitly rejected* such a requirement for civilians. 420 U.S. at 759 ("[T]he disruption caused to petitioners' civilian lives, and the accompanying deprivation of liberty, made it especially unfair to require exhaustion."); *cf. Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 83 (2d Cir. 2001) (tribal abstention and exhaustion inapplicable to claim by non-member). Notably, Kammen – another civilian – sought relief in district court despite having appeared before the commission. In short, though the government posits that

---

will be satisfied only in exceedingly rare cases because subpoenas generally "remain[] at all times under the control and supervision of the a court." *United States v. Dionisio*, 410 U.S. 1, 9 (1973); *see Hammond v. Lenfest*, 398 F.2d 705, 712 (2d Cir. 1968) (granting habeas in non-criminal context of reservists ordered to report to duty because they are in "a custody loose at the moment but a custody which may at any time be made as close as the military establishment by further order … shall direct," *cf.* Colonel Spath's authority to order attachment under R.C.M. 703(e)(2)(G)). Of course, court "control and supervision" is precisely the remedy Professor Yaroshefsky seeks here.

Professor Yaroshefsky's "civilian status does not diminish the requirement to defer," (ECF 18 at 18), it cites no cases so holding – because there are none.

*Hamdan* next considered "military discipline." 548 U.S. at 587. But that concern does not apply because Professor Yaroshefsky "is not a member of our Nation's Armed Forces." *Id.*

*Hamdan* also criticized the lack of "structurally insulat[ed]" appellate review under the then-current commission scheme, which provided for three officers designated by the Secretary of Defense. *Id.* at 587-88. To be sure, Congress subsequently enacted the Military Commissions Act providing for improved appellate review. (ECF 18 at 17.) The problem here, however, is that Professor Yaroshefsky has no right to obtain the "direct Article III review" under the MCA that the D.C. Circuit found compelling in deciding to abstain in *In re Al-Nashiri*, 835 F.3d 110, 124-25. Instead, any request for relief under R.C.M. 703(e)(2)(F) would be adjudicated by either the convening authority – a designee of the Secretary of Defense, just as in *Hamdan* – or Colonel Spath, who without authority and for his own purposes called Professor Yaroshefsky as a witness in the first place. Moreover, if those positionally biased individuals denied her motion to quash – a discretionary decision, as this Court well knows – Professor Yaroshefsky would be hard pressed to obtain mandamus. *Kaufman v. Edelstein*, 539 F.2d 811 (2d Cir. 1976) (Friendly, J.).

**Finally**, the government half-heartedly contests Professor Yaroshefsky's showing of irreparable injury. But "[s]ubmission to a fatally biased decisionmaking process is in itself a constitutional injury sufficient to warrant injunctive relief." *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982). Professor Yaroshefsky should not be forced to petition Colonel Spath – the same individual who created the infringement on her rights in the first place – for relief from that infringement.

## CONCLUSION

This Court should declare Professor Yaroshefsky's right to be free from Colonel Spath's unreasonable, yet purportedly self-executing, subpoena; quash all process, including the subpoena, served on Petitioner resulting from Colonel Spath's order; or grant her a protective order preventing enforcement of that order and the subpoena with which she has been served.

Dated:  November 14, 2017                              Respectfully submitted,


                                                       By:/s/ *Harold G. Gordon*
                                                           Harold K. Gordon (HG-1007)
                                                           Jones Day
                                                           250 Vesey Street
                                                           New York, New York 10281
                                                           (212) 326-3939