HBFLYARC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ELLEN YAROSHEFSKY,

4                   Petitioner,

5            v.                          17 CV 8718 (GHW)

6   GEN. JAMES N. MATTIS and COL.
    VANCE H. SPATH,
7
                Respondents.
8
    ------------------------------x
9                                        New York, N.Y.
                                         November 15, 2017
10                                       3:09 p.m.

11  Before:

12                      HON. GREGORY H. WOODS,

13                                       District Judge

14                          APPEARANCES

15  JONES DAY
         Attorneys for Petitioner
16  BY:  HAROLD K. GORDON
         SAMIDH GUHA
17       BRITTANY S. ZIMMER

18  UNITED STATES ATTORNEY'S OFFICE
    SOUTHERN DISTRICT OF NEW YORK
19       Attorneys for Respondents
    BY:  DAVID S. JONES
20

21

22

23

24

25

HBFLYARC

1        (Case called)

2        MR. GORDON:  Good afternoon, your Honor.  Harold

3   Gordon from the Jones Day firm for the petitioner, Ellen

4   Yaroshefsky.  And I'm joined again with my partner Samidh Guha

5   and our associate, Brittany Zimmer.

6        THE COURT:  Thank you.  Good afternoon.

7        MR. JONES:  And good afternoon, your Honor.  David

8   Jones from the U.S. Attorney's Office, Southern District of New

9   York, for the respondents, General Mattis and Colonel or Judge

10  Spath in their official capacities.

11       THE COURT:  Thank you very much.  Good afternoon.

12       So we're here to discuss the motion that was brought

13  last week, originally framed as a habeas corpus petition for

14  Professor Yaroshefsky.  I received and reviewed the materials

15  submitted by the parties since our last hearing.  I'd like to

16  open the floor to provide each of the parties with the

17  opportunity to provide any argument on these issues, starting

18  with the petitioner.  And for that purpose, let me turn to you,

19  counsel.

20       First, can you please clarify what the request is that

21  you're bringing to the Court.  When the case was filed, it was

22  a purported to be a habeas petition.  You raised other bases

23  for the Court's jurisdiction here, all of which I've reviewed.

24  In your most recent submission, however, submitted late last

25  night, you suggest in your footnote 3 that the basis for the

HBFLYARC

1    Court's jurisdiction is under *Larson*, the APA, and 28 U.S.C.

2    Section 1361, none of which were identified in your opening

3    brief as a basis for the Court's jurisdiction.  So let me hear

4    from you about these things.  And understanding that these are

5    the bases for the Court's jurisdiction as you assert it, what's

6    the case that you're bringing here?  *Larson* would open the door

7    to a suit for injunctive relief if you're saying that the

8    statute is unconstitutional or the officer is acting outside of

9    the scope of his authority.  It's not clear to me that it

10   provides a basis for me to review whether or not a subpoena

11   properly issued by him is reasonable or unreasonable.

12            So what is it that you're asking for here?

13            MR. GORDON:  Thank you, your Honor.  Harold Gordon,

14   again, for the petitioner.  And certainly a fair question and

15   let me answer it this way.

16            At the time we initiated the proceedings through our

17   petition, Ms. Yaroshefsky had yet to be served with process,

18   with a subpoena.  At that time, as the Court may recall, what

19   we were contending with was an order issued by Colonel Spath

20   last Monday, November 6, that directed the government to pursue

21   process over her and take all necessary steps to bring her

22   before him for questioning.  Since our initial papers,

23   Ms. Yaroshefsky has now been personally served with a subpoena

24   pursuant to that order.  And so the basis at the current time

25   would be both a motion to quash given the continuing due

HBFLYARC

process and other constitutional violations that we believe

still plainly exist given the lack of a sufficient forum for

review for Ms. Yaroshefsky.  And I should also add that we're

seeking a declaratory judgment as part of that to declare that

this subpoena that was issued by Colonel Spath was issued

without statutory or other authority.

I should add that there is still arguably a basis for

a habeas petition, even though, as we suggest in our latest

submission in our reply papers that the Court need not get

there, and that is because in our view there is still a

fundamental distinction -- to pick up on one of the Court's

concerns last week -- between a run-of-the-mill deposition or

trial subpoena, if you will, where under virtually no

circumstances would the party be arguing that that subpoena has

been issued essentially ultra vires, without any statutory

authority, and under the supervision for enforcement purposes

of an Article III court.

And I should say here not only do we have a subpoena

that was issued without statutory authority, but on the face of

the subpoena itself, disobedience allows the military

commission here to forthwith issue a writ of attachment taking

Ms. Yaroshefsky into custody; whereas, as your Honor is

certainly aware, normally when there is a refusal to obey a

deposition or other subpoena, the process is first that a

motion to compel would be filed, followed by an order

HBFLYARC

1    compelling compliance, then a separate process to determine

2    appropriate contempt sanctions and how to purge the contempt.

3    This is a uniquely different animal.

4         But I would say given that since we were last before

5    you, Ms. Yaroshefsky has been served with a subpoena that under

6    the *McVain* case and other authority we cite in our papers,

7    there is jurisdiction and authority for your Honor to quash

8    this subpoena and equally to declare that it was issued without

9    authority.

10        THE COURT:  Thank you.  Let me take up pieces of that

11   in turn.

12        First, as I understand it, the contention of Professor

13   Yaroshefsky at this point is that Judge Spath was operating

14   ultra vires when he issued the subpoena; is that right?  I'm

15   trying to understand this so I can understand whether or not

16   you have a likelihood of success on the merits.  Are you

17   challenging his authority to issue the subpoena as opposed to

18   the reasonableness, or in addition to the reasonableness of the

19   subpoena?

20        MR. GORDON:  Thank you, your Honor.

21        To be clear, we are as a threshold matter clearly

22   challenging his authority to issue the subpoena under the

23   statutory authority and the rules of the military commission

24   that are discussed at length in both our papers and the

25   government papers.  And I'm referring, of course, to, among

HBFLYARC

1    other provisions, 10 U.S.C. 948c, 10 U.S.C. 949j, which refers

2    to only the ability of defense counsel to issue a subpoena.

3         10 U.S.C. 948c, which I just referenced, refers to the

4    jurisdiction of a military commission first and foremost only

5    being that over "alien unprivileged enemy belligerents."  And

6    then, of course, there are certain select rules of the military

7    commission.  We're referring to Rule 703(b) through (c), which

8    state on their face that only parties in military commission

9    proceedings can issue such subpoenas.

10        THE COURT:  Thank you.  The government's affidavit

11   says that's not the case.  They say that there is a

12   discretionary right of a military judge to call for additional

13   evidence and they cite Rule 703(e)(2)(C) as support for the

14   proposition that the military commission may act to obtain

15   evidence in addition to that presented by the parties.

16        MR. GORDON:  So if that is a reference to the

17   authority of the military commission to, in effect, enlist the

18   help of experts or others in its proceedings, we would say that

19   under the authority that interprets those rules that that

20   expert can only appear on consent.  And, in fact, in the

21   commentary to those rules, there's an analogy drawn to Federal

22   Rule of Evidence 706 where a court may call or appoint an

23   expert that the parties agree upon and of the court's own

24   choosing, but someone who consents to act.

25        If your Honor's question relates to the argument I

1    seem to recall the government was making where they made an

2    analogy to Federal Rule of Criminal Procedure 17, as we note in

3    our reply papers under *U.S. v. Weinstein*, a Second Circuit

4    case, and other authority, it's clear enough that that

5    authority cannot be exercised sua sponte, on the court's own

6    volition.

7              THE COURT:  Thank you.  Under M.C.R.A. 614(a), also

8    cited by the government, they state that it makes clear that,

9    in their words, "the military judge may sua sponte or at the

10   request of the members or the suggestion of a party call

11   witnesses."

12             What's your view regarding that provision of the

13   M.C.R.A.?

14             MR. GORDON:  We would say that there, too, as we read

15   the provision, it may authorize a party to call a witness, and

16   then only a witness that is relevant to the proceedings, which

17   gets to your Honor's second question and a basic question that

18   the Court had last week which is what is the purpose in seeking

19   Ms. Yaroshefsky's testimony.  But to answer your threshold

20   question, as we read that provision, it's not clear to us that

21   that too can be exercised sua sponte by Colonel Spath.

22             THE COURT:  Thank you.  The words of the quote

23   provided by the government include the words "sua sponte."

24             With respect to the parallel under the federal rules,

25   I draw your attention to Rule 614 which permits the court to

HBFLYARC

1    call a witness on its own or at a party's request.  It permits

2    parties to object, but it clearly authorizes the court to call

3    or examine a witness on its own initiative.

4              MR. GORDON:  So I can't speak to 614.  I do recall the

5    government also citing by analogy Federal Rule of Criminal

6    Procedure 17, to which I've already responded that there's

7    authority that can't be exercised sua sponte.  But I question

8    whether even if there is a provision that may allow a party be

9    called sue sponte that that should be applicable here where the

10   witness otherwise hasn't been called by a party and it's not at

11   all clear that her testimony would at all be germane or

12   relevant to the proceedings.

13             THE COURT:  Thank you.  Let's stay with the threshold

14   issue.  Your position is that Judge Spath does not have the

15   statutory authority to subpoena any witness to appear before

16   the commission.  Is that the basis for the relief that you're

17   seeking here?

18             MR. GORDON:  In part, that is clearly the basis for

19   the relief we're seeking.

20             THE COURT:  Thank you.  And the basis for that is the

21   text of the statute and the fact that it refers specifically to

22   defense counsel and not to the commission or the tribunal; is

23   that correct?

24             MR. GORDON:  Correct, defense counsel or a party.  In

25   conjunction, of course, with the additional fundamental due

HBFLYARC

process arguments we make about the inability of Professor

Yaroshefsky to seek relief from the subpoena other than in an

Article III court.

　　　　　THE COURT:  Thank you.  Can I hear from you whether

there's any other basis -- and, again, I'm looking to your

invocation of *Larson* in your most recent brief, contention that

*Larson* and its progeny provide a basis for the Court's

jurisdiction here -- in other words, you claiming that the

statute itself under which Colonel Spath is operating is itself

unconstitutional, or is there some other basis under *Larson* on

which you can build an argument referring to *Larson* that would

provide the Court with jurisdiction here.

　　　　　MR. GORDON:  I believe the context in which we raised

*Larson* in our brief was in connection with the habeas petition.

And we would say apart from that basis for jurisdiction,

there's the fundamental jurisdiction of this Court to entertain

the additional relief now that Ms. Yaroshefsky has been served

with a subpoena, namely, the motion to quash and the motion for

declaratory relief.

　　　　　THE COURT:  Thank you.  Is the basis for that,

however, the Judge Spath's asserted ultra vires act?

　　　　　MR. GORDON:  Yes.

　　　　　THE COURT:  Thank you.  In other words, for you to

sustain your burden of showing a likelihood of success on the

merits with respect to this issue, you're showing me that his

HBFLYARC

1   action is ultra vires under the statute and the military rules;

2   is that right?

3        MR. GORDON:  That is correct, in conjunction with the

4   related due process arguments that we've raised.

5        THE COURT:  Thank you.  In other words, that his

6   actions violate due process and that that is itself a basis for

7   the Court to grant the relief?

8        MR. GORDON:  Correct.

9        THE COURT:  Thank you.  So let's talk about your

10  arguments regarding due process.  In the government's

11  affidavit, they describe the process available under the

12  commission rules for review of the subpoena.  In paragraphs 25

13  through 28 of the government's affidavit, they provide a

14  detailed description of the recourse available to a person who

15  receives a subpoena.  Why is that inadequate?  Why come to

16  federal court in a separate action rather than pursuing the

17  alternatives that are set forth by the government?  Can you

18  comment on that, please.

19       MR. GORDON:  Yes.  The response is at least two-fold,

20  your Honor, and that is, first, under some of the very

21  authority that the government cites, and I'm thinking of the

22  *Councilman* decision which comes up, of course, in the context

23  of the abstention or sovereign immunity argument, and the

24  *Hamdan* decision that we cite, Ms. Yaroshefsky has every right

25  to invoke the jurisdiction of this Court, an Article III court,

HBFLYARC

1    for that relief and not subject herself improperly to the

2    jurisdiction of the military commission, especially against the

3    backdrop of what has transpired here where you have a military

4    judge, who, as we chronicle in our papers, has already

5    determined that there was an improper use of Ms. Yaroshefsky's

6    ethics opinion leading to an improper withdrawal of counsel

7    based on that and now for reasons that still mystify us,

8    respectfully, wants to put questions to Ms. Yaroshefsky,

9    notwithstanding that in every proceeding -- and the transcripts

10   of the proceedings are available -- and in every relevant order

11   he's already determined that there were no proper grounds for

12   the withdrawal or excusal of defense counsel who solicited

13   Ms. Yaroshefsky's opinion.

14          So the answer, to be succinct, would be under

15   *Councilman* and related abstention jurisprudence,

16   Ms. Yaroshefsky has every right to seek redress in this Article

17   III court and not subject herself to the jurisdiction of a

18   military tribunal when it's not at all clear, A, that there's

19   authority for the judge to have done what he did here; B, it's

20   not at all clear what the purpose is.  And there have been

21   comments on the record suggesting that both the military

22   jurist, Colonel Spath, and the military prosecutors believe

23   that Ms. Yaroshefsky has been part of an alleged conspiracy to

24   obstruct the proceedings in Guantanamo Bay.  And so under those

25   circumstances, to seek redress before the very military jurist

HBFLYARC

1   who is seeking to question her seems untenable, especially when

2   the case law that we cite gives her every right to seek redress

3   before your Honor.

4           THE COURT:  Thank you.  What's the due process issue

5   though?  The process that is described in the government's

6   affidavit is not a one stop with Colonel Spath.  It describes a

7   series of steps that Professor Yaroshefsky could take within

8   the construct described here to petition review of Judge

9   Spath's decision.  So why is there a due process issue given

10  the framework that's been described in the government's

11  affidavit?

12          MR. GORDON:  The answer is, as we noted in our reply

13  papers, I believe, and I think we cited at least the *McDonough*

14  decision for this proposition that when you're talking about an

15  Article I court or an agency subpoena, that the inability to

16  seek redress before this court and relegating Ms. Yaroshefsky

17  to the military tribunal, which is an administrative, not a

18  judicial process, that any enforcement of that subpoena or any

19  determination regarding that subpoena that is not made in an

20  Article III court, it amounts to a due process violation.

21          THE COURT:  Thank you.  At the end of the process

22  described by the government, there would be the opportunity for

23  judicial review after she had exhausted the procedures

24  described by the government.  So what's the concern with going

25  through the hoops, I'll call it, described by the government

HBFLYARC

1    before coming to the Article III court for independent judicial

2    review?

3              MR. GORDON:  Firstly, it's not at all clear that that

4    process, including any appellate review, would be, A, a forum

5    in which relief could be sought timely, or, B, more

6    importantly, one that could be fulfilled without the due

7    process and other violations that we've discussed in our

8    papers.  And I should say that and I believe this was the D.C.

9    circuit opinion in the *In re Al-Nashiri* case that the court in

10   that decision found abstention to be appropriate, that is, that

11   relief should have first been sought before the military

12   tribunal only because there was the ability for direct

13   Article III review.  According to the government here, it's not

14   at all clear that that would be the case.

15             And so in our view, the fact that there might be a

16   process before Colonel Spath and then an appellate recourse

17   before the military commission would not remedy the due process

18   and other violations that we discuss in our papers, nor does it

19   provide a basis for this Court, which in our view is otherwise

20   duty bound --

21             THE COURT:  What are the other due process violations

22   that you're referring to?

23             MR. GORDON:  Well, among other things, as we discuss

24   in our papers, apart from the fundamental problem of the

25   inability to seek relief before your Honor in an Article III

HBFLYARC

1   court, there were significant concerns about the procedural

2   rights or lack thereof that Ms. Yaroshefsky will have in any

3   proceeding that occurs under the process that's been issued

4   over her.

5          THE COURT:  Thank you.  The government's affidavit

6   takes issue with the contentions that you describe in your

7   initial papers.  No facts have been presented to me that

8   contest the government's assertions.  In your initial papers,

9   you asserted that she did not have the right to counsel and

10  could not assert privilege.  If those are the issues you're

11  referring to, I point you to the government's affidavit at 27

12  which describes the fact that in their view, those privileges

13  are available to a witness and, as I understand it also from

14  their submissions, counsel is available.

15         Do you contest those factual representations, and if

16  not, what are the other due process arguments that you're

17  raising?

18         MR. GORDON:  Thank you, your Honor.  We do because we

19  simply don't have visibility into the right to counsel because,

20  as I recall, the government's affidavit or declaration, what

21  they seem to be saying is that the witness can be "advised by

22  counsel."

23         THE COURT:  It actually says "and witnesses testifying

24  remotely from the military commission Virginia facility can do

25  so with their counsel present."

HBFLYARC

1          MR. GORDON:  I see that language and what's not clear

2     to us, in fact, what continues to raise concern about that in

3     talking to other military defense counsel who have been

4     involved in these proceedings is the right of counsel to be

5     sitting right next to Ms. Yaroshefsky in the examination room,

6     as opposed to something akin to a grand jury process where

7     counsel is not there but can be consulted to the extent that

8     she's allowed to consult counsel.

9          And I should say in light of the statements that the

10     military prosecutor has made on the record, which we would

11     submit, if nothing else, give rise to a reasonable concern or

12     fear of potential prosecution here that not having counsel at

13     her side and the ability to raise all appropriate

14     constitutional or other objections is still in our view a

15     fundamental due process concern.

16          THE COURT:  Thank you.  Mr. Jones, can I turn to you.

17     Counsel is referring to the reference to the word available in

18     footnote 7.  Does available mean present or does it mean that

19     she can pass notes to him in the hall?

20          MR. JONES:  Your Honor, I have Defense Department

21     counsel present who handle proceedings in the military

22     commissions and they informed me counsel is entitled to be in

23     the room in Virginia in which the witness is testifying.  The

24     attorney is not visible on camera and I don't know about

25     physical proximity, but the witness is available for

HBFLYARC

1    consultation.

2               I apologize I can't put my finger on it, but I believe

3    in our papers we include a record excerpt demonstrating a

4    typical practice by which a judge said if a witness wanted to

5    consult with counsel, the very immediate and obvious solution

6    would be easy, which is that the person would be afforded an

7    opportunity to consult with counsel.

8               THE COURT:  Thank you.  So I understand the proffer by

9    the United States.  What are the other due process issues that

10   you refer to on behalf of Ms. Yaroshefsky?  As I understand it,

11   the privilege issue is asserted by the government not to be an

12   issue.  Counsel as I understand it is physically present with

13   the witness while testifying.  What are the other bases to

14   contest this process on a Fifth Amendment ground?

15              MR. GORDON:  Other than the substantive and procedural

16   grounds that I've summarized, and I may be omitting another

17   ground from our papers, but those are the grounds that come to

18   mind.

19              THE COURT:  Thank you.  The other grounds you raise

20   are lack of notice or an opportunity for a hearing.  As I

21   understand it, the subpoena has been provided.  You also say no

22   notice or procedure for presenting objections or notice of

23   rules governing the examination or notice of the examination's

24   purpose.  It's not clear to me what the factual basis is for

25   those arguments with the benefit of the information that we

HBFLYARC

1     have from the government's response.

2               MR. GORDON:  Thank you, your Honor, and I am reminded

3     of the notice and opportunity to be heard argument.  And I

4     would say on that, the fundamental basis is that we have an

5     order issued sua sponte by a military judge pursuant to a

6     process in which Ms. Yaroshefsky had no voice.  And so the

7     order pursuant to which the subpoena was issued was one

8     essentially that was issued as part of an ex parte process or

9     sua sponte by Colonel Spath, and Ms. Yaroshefsky was not able

10    to object or voice her concerns about that order and the

11    ensuing subpoena.

12               THE COURT:  Understood.  But why isn't the subsequent

13    process available to her to contest the subpoena as outlined in

14    the government's affidavit an adequate opportunity to be heard?

15               MR. GORDON:  Again, your Honor, we would say that that

16    process is inadequate for the reasons that I've summarized,

17    namely, that the inability for this court to police that

18    subpoena or for Ms. Yaroshefsky to seek redress in this court

19    amounts to a due process violation under the authority that

20    we've cited in our reply papers.  And we also still harbor

21    significant concern about the independence of that forum given

22    the statements on the record that Colonel Spath has made in

23    conjunction with the military prosecutors about what he

24    believes is certain inappropriate conduct that has occurred.

25    And so for those reasons, we don't believe that the military

HBFLYARC

1    forum the government has suggested would be one that would

2    comport with constitutional protections or that would

3    reasonably provide her a timely and adequate forum.

4              THE COURT:  Thank you.  In the footnote that I

5    referred to earlier in your most recent submission, you also

6    refer to the APA as a basis for waiver of immunity.  Doesn't

7    the APA carve out military commissions from the definition of

8    agency?

9              MR. GORDON:  Let me consult the footnote again for a

10   second, your Honor.

11             (Pause)

12             MR. GORDON:  I cannot speak to the APA carve out that

13   the Court is referencing.  I will note that we have seen

14   nothing suggesting that this process, both the order and the

15   resulting subpoena, cannot be deemed or should not be deemed

16   that of the acts of an agency.

17             And I should also note, and this is not before the

18   Court, your Honor, although I'm happy to hand it up and we've

19   given a copy to counsel for the government, that we just

20   learned in the past couple hours that the military prosecutors

21   in this proceeding have recommended that the military

22   commission initiate ethics investigation and proceeding

23   concerning defense counsel.  And I raise that because in a

24   footnote in that submission, they refer to their acts being

25   that as part of an agency, quote/unquote.

HBFLYARC

1              And if it would assist the Court, I can hand that up,

2    knowing that that is not part of the record at the moment.

3              THE COURT:  Thank you.  I wouldn't mind if you hand it

4    up.  I think the issue is the statutory exemption from the

5    definition of agency under the APA.  But please feel free to

6    hand that up to me.

7              MR. GORDON:  Thank you so much.  I'm referencing, I

8    believe, footnote 6 in that submission.

9              THE COURT:  I have been handed a government brief

10   dated 15 November 2017 in the matter of *U.S.A v. Al-Nashiri*.

11             The provision of the statute that I point you to,

12   counsel, is at 5 U.S.C.A. Section 701(b)(1)(F), which includes

13   reference to courts martial and military commissions among the

14   things that are not agencies.  I'll hear from the government

15   with respect to that.

16             Now, for the other reference in that footnote which is

17   to 1361, is that applicable?  It's the provision that would

18   allow me to order government officer to undertake an act that

19   they have as a matter of duty to the person that's bringing the

20   action.  Is that what the petitioner is doing here?

21             MR. GORDON:  And to make sure I understand the

22   question.

23             THE COURT:  1361 reads, The district court shall have

24   original jurisdiction of any action in the nature of mandamus

25   to compel an officer or employee of the United States or any

HBFLYARC

1    agency thereof to perform a duty owed to the plaintiff.

2              What is the duty owed to the plaintiff that you are

3    requesting that the Court mandate someone to undertake?

4              MR. GORDON:  The duty under 1361 is to effectuate,

5    Colonel Spath, that is, to effectuate his authority in

6    accordance with the statutes and not in a forum that violates

7    petitioner Yaroshefsky's due process rights, among others.

8              THE COURT:  Thank you.  So you understand Section 1361

9    to be a broad grant of authority to the Court to not only force

10   the government to take an action, but to force the government

11   to act in a particular way within the scope of the officer's

12   I'll call it discretion.  So it's not a mandate to act, but

13   it's a mandate to act in a particular way desired by the

14   petitioner.

15             MR. GORDON:  Correct.

16             THE COURT:  Thank you.  Do you have case law to

17   support that view of the statute?

18             MR. GORDON:  I do not at hand.

19             THE COURT:  Thank you.  So what's the harm here?

20   Professor Yaroshefsky takes a train to Arlington.  She

21   testifies before the judge with her counsel present with all

22   privileges available to her.  Why is there irreparable harm?

23             MR. GORDON:  Well, in short, your Honor, there's

24   irreparable harm, as we discuss in our papers, for a number of

25   reasons.  One is there's irreparable harm in summoning her to

HBFLYARC

1    such a proceeding when in our view there isn't jurisdiction to

2    do so.  There's irreparable harm when it is still the case in

3    our view that the government hasn't articulated a sufficient

4    reason as to why they need Professor Yaroshefsky's appearance

5    and a need to put questions to her when she otherwise has not

6    been a witness or involved in the proceeding, and they have not

7    articulated how her appearance would be at all relevant to

8    those ongoing proceedings.

9         There's irreparable harm when she's asked to appear

10   before a proceeding where the military prosecutor has made

11   accusations that she's part of some alleged conspiracy or

12   effort to obstruct the proceedings regarding Mr. Al-Nashiri.

13   And there's irreparable harm when in our view, as we've already

14   discussed at length, there isn't a sufficient recourse for her

15   to challenge the subpoena and the order on which it is based.

16        And one of the cases that we cite in our papers makes

17   the basic point that when there is a requirement to submit

18   one's self to what in our view for the reasons I've articulated

19   is a fundamentally biased proceeding and tribunal, where it's

20   not clear what purpose there is to putting questions to

21   Ms. Yaroshefsky and against the backdrop of the comments that

22   the prosecutor has made about her involvement, that that

23   amounts to more than adequate irreparable harm.

24        THE COURT:  Thank you.  Is there an argument regarding

25   irreparable harm that can be severed from what I'll call the

HBFLYARC

1    speculation regarding what will happen at the hearing?  We

2    don't know whether this is I'll call it a fundamentally biased

3    tribunal, as you suggest, or that she will be asked to do

4    anything other than answer questions.  Is there anything about

5    the nature of the act that she's being asked to undertake

6    separate and apart from your characterization of the

7    circumstances that give rise to it that constitute irreparable

8    harm?

9            MR. GORDON:  Other than what I've chronicled and,

10   again, still the fundamental question as to the purpose for her

11   questioning, not other than I've summarized.

12           THE COURT:  Thank you.  The harm is a concern that the

13   underlying authority of the judge that's issued the order is

14   not established and a concern that the questions put to her

15   will be fundamentally biased.  Is there any argument that the

16   request for her to travel to Virginia and to answer questions,

17   assuming for this purpose that they are neutral, reasonable

18   questions, is itself irreparable harm?

19           MR. GORDON:  No, your Honor, the travel in and of

20   itself is not irreparable harm.  But I would like to -- so the

21   answer is no.  But I would like to underscore one of the

22   responses and grounds for irreparable harm that I've already

23   articulated and that is we've got a law professor who's a

24   nationally known ethics expert, whose sole participation in

25   this proceeding was to provide at the time a confidential

HBFLYARC

ethics opinion to defense counsel, who's now going to be questioned.

And I should say we've learned this is not a closed confidential proceeding.  In fact, there's a reporter who's been closely following the proceedings in Guantanamo Bay who we're informed has access to and listens in on these proceedings.  And based on the comments that have been made by Colonel Spath, we can't come to any conclusion other than he will seek through his questions to undermine the efficacy or basis for her opinion in a public proceeding and without jurisdiction.  So that is a key component and part and parcel of my response to the Court on irreparable harm.

THE COURT:  Thank you.  Good.  Is there any other argument that you'd like to present to the Court, counsel for petitioner?

MR. GORDON:  I don't think so other than what I've summarized and, again, the headlines are no jurisdiction, no adequate redress in the tribunal that's been suggested by the government, no articulation in response to the Court's questions last week as to the purpose for the questioning, and it's not clear enough that the ground rules or procedures for the questioning will comport with due process.  But thank you.

THE COURT:  Thank you.  Good.

Can I hear from the United States, please.  Counsel, first I'll open the floor to allow you to make any particular

HBFLYARC

1    points that you'd like to raise.  Then I'd like to ask you

2    about the footnote 3 in the petitioner's reply and the bases

3    for the Court's jurisdiction.

4              MR. JONES:  Yes.  Thank you, your Honor.  Let me say

5    at the outset, again, David Jones, and may it please the Court,

6    I'm from the U.S. Attorney's Office, as the Court knows.  And I

7    want to introduce two Defense Department attorneys who are

8    attending this matter because of its importance to the agency

9    and they are Captain Tavo Hall and Captain Dan Griffin.

10             Your Honor, let me just say as a general matter that

11   the relief sought here is absolutely extraordinary and it would

12   cause serious harm to important public interests.  Petitioner

13   is merely the recipient of a subpoena directing her to appear

14   in suburban Washington to testify on matters that are of great

15   importance in an ongoing commission proceeding that in and of

16   itself is a highly publicly important matter.  The imposition

17   on her is minimal.  Counsel has just acknowledged that there's

18   nothing extraordinarily harmful about needing to report to

19   suburban Washington to testify, and the potential consequences

20   to that proceeding of this proceeding and the relief sought

21   here are enormous.

22             The presiding judge there, Judge Spath, is clearly

23   wrestling with how to proceed in light of the decision by

24   counsel for the defendant in the proceedings before him not to

25   appear at all for long scheduled matters, including as to one

HBFLYARC

1    witness who will be repatriated to Saudi Arabia in February

2    with very few intervening trial days available.

3        THE COURT:  Thank you.  Let me just ask about that.  I

4    asked at our prior conference.

5        First, I understand from the submissions that the

6    learned counsel, Mr. Kammen, is not going to be appearing

7    before Judge Spath until sometime in December.  What's the

8    purpose of querying Professor Yaroshefsky?  You've heard the

9    concerns articulated by counsel for petitioner.  And, in sum,

10   they're saying that her views are clearly articulated in the

11   opinion.  She said what she said, and they're expressing a

12   concern that there's no point to calling her other than to

13   bully her into changing her mind.

14       Can you provide any reassurances that that is not what

15   it is that Judge Spath is doing through this request?

16       MR. JONES:  Yes, your Honor.  And on information and

17   belief based on conversations with prosecutors in that matter,

18   let me be very specific about an issue that the prosecutors

19   have identified that the judge needs to consider quickly and

20   that is that the accused or the defendant in the proceeding

21   before him has a statutory right, as you've heard, to be

22   afforded what are called learned counsel, meaning essentially

23   capital defense specialists and qualified attorneys to the

24   greatest extent practicable throughout the matter.

25       And I have a long cite, but I'm going to include it

HBFLYARC

1    for the record.  It's 10 U.S.C. Section 949a(b)(2)(C)(ii).

2    That is an ongoing right of the criminal accused to have

3    competent representation throughout the matter.  And the judge

4    is faced with very difficult decisions to make as the case

5    progresses against a limited clock about how to handle the

6    absence of these attorneys.

7            So he did receive testimony submitted from an ABA

8    expert who also provided ethics guidance.  I think that's at

9    the declaration Exhibit T submitted with the reply papers, and

10   that will give you an example of the kind of issues the judge

11   is considering.  That transcript also rebuts the contention

12   that he's unreasonable or unfair or prejudiced.  He's gathering

13   information and assessing a difficult procedural and legal

14   issue that he's now considering.

15           As I said previously, it is the case that the judge

16   has an entitlement to question witnesses, and we can't limit

17   him or speak with certainty to the full set of topics he wants

18   to explore.  But that is a very real and very significant and

19   pressing legal issue that makes Ms. Yaroshefsky's appearance in

20   a prompt manner very important.  He needs to understand what

21   the basis is for the nonappearance, should he excuse these

22   counsel, should he somehow attempt to compel their attendance,

23   can he allow the matter to proceed without any learned counsel

24   temporarily pending appointment of new.  If he appoints new

25   learned counsel, does he need to give them time to get up to

HBFLYARC

1   speed.  There's a whole host of legal issues he'll be thinking

2   about.  And I think the backdrop of Professor Yaroshefsky's

3   opinion I can only imagine will be of assistance to him in

4   thinking those issues through.

5         I should also add that on the record Mr. Al-Nashiri's

6   counsel -- this is on information and belief -- stated that he

7   had no objection to the proposed testimony.  And the

8   prosecution also tells me that it believes the proposed

9   testimony is appropriate.

10        THE COURT:  Can I ask on that point, just going to

11  the -- I do want to let you continue your thought.  But you say

12  that the parties to the proceedings believe that this testimony

13  is appropriate.  The basis for the petitioner's argument here

14  is that the tribunal lacks the authority to issue a subpoena.

15  As I understand it, both parties have said that this testimony

16  is appropriate.  Who has issued the subpoena here in the first

17  instance and then tell me what your view is regarding the

18  argument that the judge is acting ultra vires.

19        MR. JONES:  Sure.  At a headline level, the judge

20  isn't acting ultra vires.  I can explain the statutory basis.

21  As to the factual question, as the Court knows from the initial

22  application, the court first entered an order directing the

23  government or the prosecution to secure the attendance of these

24  two witnesses, including Professor Yaroshefsky.  And to

25  effectuate that order, the prosecution issued a subpoena, which

HBFLYARC

1    was served yesterday and which petitioner has now put in the

2    record.

3              THE COURT:  So your position is that a party issued

4    this subpoena.

5              MR. JONES:  Yes, a party did issue the subpoena.

6    Although my prevailing today does not require that fact,

7    however, because the judge is fully entitled under the

8    applicable laws, as are the parties, to secure testimony as

9    needed.

10             THE COURT:  Why is that?

11             MR. JONES:  It is statutorily permitted, your Honor,

12   under the section that we cited in our brief, which I think was

13   10 U.S.C. Section 949j(A)(2), which authorizes subpoenas by the

14   court or prosecutors.  And petitioner's argument for why that's

15   not proper is that Section 949j(A)(1) somehow subordinates and

16   limits the effect of 949j(A)(2) because 949j(A)(1) talks about

17   the defendant's ability to call witnesses and present evidence.

18   But that section -- I'll just shorten it to j(1) -- does not

19   limit the effect or scope of j(A)(2).  The j(A)(2) uses the

20   term process under this chapter, not merely under Section 949,

21   which confirms that.  And there are other provisions and rules

22   making clear that all parties have an adequate opportunity to

23   present their case and secure and call available witnesses.

24   That's Rule 703(b)(1).

25             THE COURT:  Give me one moment, counsel.  Proceed.

1      MR. JONES:  Thank you, your Honor.  I think those are

2 my main points.  Essentially they are, I'm sorry, they are

3 misreading the governing statute, as I just described.  And

4 other provisions of the rules make clear that all parties are

5 entitled to present and secure testimony.  So the only reading

6 of the process provision is that the court and prosecutors, as

7 well as defense, are entitled to call witnesses.

8      I'll also add that there's a more general rule that

9 the procedures before the military commissions are intended to

10 follow the practices of courts martial under the UCMJ.  And,

11 again, that very well established body of law makes clear that

12 the prosecutor, the court, or defendants can call witnesses and

13 have subpoena power.  It just operates in parallel.

14      I would also add, your Honor, just as a -- one isn't

15 supposed to construe rules and statutes in ways that are

16 frankly absurd, and it would be absurd to create a system by

17 which only defendants are entitled to subpoena witnesses.

18      MR. GORDON:  Can I just address the statutory point,

19 your Honor?

20      THE COURT:  Feel free.

21      MR. GORDON:  I may be misconstruing the 10 U.S.C. 949j

22 provision that counsel for the government just cited, but the

23 way that we read that provision and I believe we discussed this

24 in the paper suggests, respectfully, that counsel for the

25 government may be conflating two very different concepts and

HBFLYARC

1    that is (A)(1) under 949j, as we read it, is the provision that

2    gives the substantive jurisdiction and authority and direction

3    as to who can call witnesses.  (A)(2), as we at least read it,

4    talks about nationwide service of process akin to federal court

5    subpoenas, and so a procedural scope, if you will, which to us

6    are two very different concepts.

7         THE COURT:  Thank you.  Let me, if I understand your

8    construction of the statute, is it your view then that in

9    military tribunals, the prosecution has no authority to

10   subpoena witnesses?

11        MR. GORDON:  Not at all, your Honor.  But we would

12   take issue with whether that's in fact what has happened here

13   for reasons that I've explained, namely, all indications in the

14   record are that this subpoena was issued pursuant to an order

15   issued sua sponte by Colonel Spath.

16        THE COURT:  Thank you.  What's the statutory provision

17   that provides the prosecution with the authority to subpoena

18   witnesses?

19        MR. GORDON:  That I would have to leave to the

20   government.  But I'm not going to dispute that there is a

21   provision within Title 10 or under the military rules that

22   would authorize the prosecution if they deem a witness relevant

23   to the proceedings to call that witness.  What I was pointing

24   out for the Court was, A, that's not what occurred here; and,

25   B, we have a disagreement as to the reading of the 949j

HBFLYARC

1      provision that Mr. Jones has brought to the Court's attention.

2                    THE COURT:  Thank you.

3             Mr. Jones, proceed.  Is there a separate provision

4      that specifically authorizes counsel other than defense counsel

5      to obtain witnesses?

6                    MR. JONES:  Your Honor, if I can take a moment to

7      consult with my client.  But my immediate answer is there is a

8      specific provision that is the provision I just relied on,

9      949j(A)(2) of 10 U.S.C.  Counsel confirms that's the provision

10     they rely on.

11                   THE COURT:  Thank you.

12                   MR. JONES:  Your Honor, I'm not sure what would be

13     most helpful for the Court now.  I can turn to the

14     jurisdictional issues.

15                   THE COURT:  Would you please.  Let me first say I

16     don't think I need additional argument on the 2241 issue, nor

17     do I believe that I need additional argument on the

18     jurisdictional arguments raised by petitioner in the original

19     briefing of this application.  I just want focus on their most

20     recent footnote.

21                   MR. JONES:  Okay.  Thanks, your Honor.  I'll do my

22     best with that.  And if there's any concern, of course, I'm

23     sure your Honor will alert me to it and I'll do my best with

24     that.

25                   Petitioner nowhere contests that what is sought is an

HBFLYARC

1    injunction against the government that requires an applicable

2    waiver of sovereign immunity, and petitioner simply has failed

3    to identify one.  I tried to follow the discussion and it seems

4    to me that petitioner is primarily relying on the *Larson* case

5    and also the *McVain* case.  And neither of those -- and I

6    apologize for shuffling paper -- is applicable or effectuates

7    the necessary waiver of sovereign immunity or even a

8    jurisdictional grant.  Sorry, if I may, your Honor, I've got to

9    turn to this.

10          So *Larson* in particular is miscited by the plaintiffs.

11   *Larson* teaches that an injunction against an officer performing

12   his or her duties is an injunction against the sovereign.

13   Petitioner here has sued Colonel Spath and General Mattis

14   specifically in their official capacities, which is

15   inconsistent with an ultra vires theory that they're now

16   espousing.

17          THE COURT:  Thank you.  So *Larson* does not apply

18   because the action here is against each of these people in

19   their official capacities; is that correct?

20          MR. JONES:  Correct.  And it explicitly at 337 U.S.

21   688 in fact says that if an officer is the subject of an

22   application for an injunction, even if nominally directed

23   against the individual officer, then the suit is barred because

24   it is in substance a suit against the government over which the

25   court in the absence of consent has no jurisdiction.  So, and

HBFLYARC

1    further *Larson* agreed with the lower court holding that the

2    relief sought there was against the sovereign and, therefore,

3    affirmed the dismissal of the suit.  That's at 689.

4         *Larson* does discuss the concept of an ultra vires act

5    by an officer, but there again that is necessarily limited to

6    seeking redress against unlawful ultra vires conduct.  And the

7    passage I just referred to explains that where the conduct is

8    within the scope of duties or official capacity acts, that that

9    ultra vires doctrine simply is unavailable.

10        THE COURT:  Thank you.  Let me just inquire further on

11   this because I have been somewhat concerned since seeing this

12   footnote, as you can appreciate, with the fact the government

13   hasn't had the opportunity to brief the *Larson* issue and I've

14   only been focusing on it since I've had a chance to read the

15   petitioner's reply.  But, nonetheless, let me push on those

16   comments.

17        The petitioners cite *Larson* for the proposition that a

18   petitioner, such as they, can bring an action to enjoin an

19   ultra vires action by an individual.  The theory is that if the

20   individual is acting outside of the scope of their authority,

21   they're not acting as the sovereign and, therefore, sovereign

22   immunity does not apply.  Is it your view that *Larson* does not

23   permit such actions and that it is not a basis for I'll call it

24   an exception from the general requirement for an express waiver

25   of sovereign immunity?

HBFLYARC

1          MR. JONES:  And your Honor, I've had the same time

2    constraints as your Honor, so my understanding is a little bit

3    limited.  But I can say that I believe *Larson* affords no basis

4    for jurisdiction here and no waiver of sovereign immunity

5    because to the extent it permits anything, it's only a remedy

6    in an individual capacity against a government officer acting

7    in an ultra vires manner.

8          THE COURT:  Thank you.  Their argument here, as I

9    understand their *Larson* argument, is that the individual is

10   Colonel Spath who issued a subpoena that he was not authorized

11   to issue, take apart the fact that the subpoena was formally

12   issued by the prosecution, but that's their argument which puts

13   it within arguably the scope of *Larson*.  I appreciate that you

14   haven't had much time with the issue.  That's the reason why I

15   was asking the petitioner about that argument in particular to

16   understand what issue is the issue that gives me jurisdiction

17   over this matter.

18         MR. JONES:  I understand, your Honor.  I will say it's

19   not clear to me that *Larson* even recognizes a jurisdiction over

20   this ultra vires theory.  I'm not sure, but my recollection is

21   that it's an introductory passage leading to the discussion I

22   just referenced and cited that when relief is sought from an

23   officer carrying out governmental authority, essentially, that

24   is a demand for relief against the sovereign and requires an

25   applicable statutory waiver.

HBFLYARC

1          So I'm just not seeing an open avenue.  I'm certainly

2     not able to concede that there exists an open avenue for ultra

3     vires.  But, in addition, the theory they're espousing, which

4     seems to distill down to only that, doesn't apply here because

5     Colonel Spath unquestionably was acting in his official

6     capacity.  Just like a judge who rules erroneously or who may

7     exceed his authority in an Article III court nevertheless is

8     entitled to judicial immunity and is thought to be acting as a

9     judge, so too with Colonel Spath.  Moreover, they've made no

10    showing that the government's statutory construction and

11    explanation of why he is in fact acting within his statutory

12    authority -- I've created a tangled sentence.  He was acting

13    appropriately and lawfully.

14         THE COURT:  Thank you.  Understood.  And I understand

15    the time constraints here.  The arguments that you've just made

16    regarding *Larson* are based on the case itself.  It is an almost

17    70-year-old plurality opinion and has spawned other decisions

18    since then.  I have some concern about basing my construction

19    of *Larson* and the government's arguments based on the case

20    itself.  Is this something that the government would like to

21    present supplemental briefing on?

22         MR. JONES:  Your Honor, I hope this isn't impertinent,

23    but what I would like to have happen is for the application to

24    be denied today because petitioner has not met her burden of

25    establishing entitlement, the existence of jurisdiction, the

1    existence of an applicable waiver of sovereign immunity, or any

2    other entitlement to relief.  But if helpful to the Court, I

3    would be happy to provide additional briefing.

4           Let me also add with respect to *Larson*, it's

5    commonplace, and our office briefs all the time sovereign

6    immunity doctrine and it's bedrock law that we cite that to be

7    enforceable, a waiver of sovereign immunity must be adopted by

8    Congress.  It must be statutory.  It's not to be inferred.  The

9    statute is to be construed strictly in favor of the sovereign.

10   So I think to be groping around in 70-year-old case law that

11   isn't tied to any statutory basis is inconsistent with that

12   body of law and can't be sufficient to give rise to a

13   jurisdictional basis to act here.

14          THE COURT:  Thank you.

15          MR. GORDON:  Your Honor, may I comment just for a

16   second?

17          THE COURT:  Yes, you may.

18          MR. GORDON:  I appreciate the Court's patience here --

19          THE COURT:  It's not a problem.

20          MR. GORDON:  -- as we contend with some military

21   provisions and related doctrines.

22          First, under *Larson*, and putting aside the age of the

23   case, we also note, as we discussed, the *Councilman* Supreme

24   Court case and the *Hamdan* Supreme Court case, as well, that we

25   believe gives the Court jurisdiction.  But for the benefit of

1    both the Court and the government, the particular passages in

2    *Larson* that we found particularly pertinent and applicable here

3    were the ones that we quote on page 8 of our brief that state

4    from that opinion, "Officer's actions beyond statutory

5    limitations are considered individual and not sovereign

6    actions.  The officer is not doing the business which the

7    sovereign has empowered him to do, or he is doing it in a way

8    that the sovereign has forbidden."  And the case goes on to

9    state, "The statute or order conferring power upon the officer

10   to take action in the sovereign's name is claimed to be

11   unconstitutional."  And so that is the reason that we cited

12   *Larson*.

13          On timing, and if your Honor wants to take this up at

14   the end of the discussion today, there is in our view no

15   urgency or magic to Friday here.  And we would submit that even

16   if the government is pressing for a decision forthwith that I

17   would say a couple things about that.  One, Colonel Spath

18   himself in a proceeding with the ABA witness that counsel for

19   the government referenced earlier noted that there are hearing

20   dates in December, December 11, that for which he could take up

21   Ms. Yaroshefsky's testimony.

22          And I would also state that we do want counsel to be

23   present and would want at least some time to work out the

24   logistics of her appearance.  And I should say it would not be

25   me appearing with her.  It would be a partner of mine who is on

HBFLYARC

1    the west coast through Thursday night.  And so to avoid

2    prejudice along those lines and in light of Colonel Spath's own

3    comments that suggest there is hearing time in December for

4    which he envisioned possibly needing for Professor Yaroshefsky,

5    depending on what your Honor does, we would like some time to

6    make sure that she is prepared for the testimony, that she has

7    counsel, and, to be honest, to consider whether we have any

8    additional recourse depending on the Court's ruling.

9              THE COURT:  Thank you.

10             Let me ask Mr. Jones about that.  I know that for

11   myself I would benefit from more exploration of *Larson* by the

12   government and grounds for the Court's jurisdiction.  I say

13   that because in large part I agreed with the government's

14   analysis of the other assorted bases for jurisdiction that were

15   asserted in the petitioner's first brief.  I have a decision

16   that I could read to you now with respect to all of those

17   issues that were on table before today.  But the *Larson* issue

18   is one that I would certainly benefit from hearing more from

19   the government about.  If there was leeway for me to take

20   another response from the government before ruling on this

21   issue, I would appreciate it.  But it really turns on whether

22   or not this Friday is an important or I should say magic date

23   and whether or not the government could accommodate a later

24   date that would allow me to solicit additional briefing before

25   ruling.

HBFLYARC

1          Mr. Jones, what's your view?

2          MR. JONES:  Your Honor, I'm always eager to be of help

3     to the Court.  I don't control the court's calendar.  I think

4     what I'd like to do, if I may, is just consult with the

5     prosecutorial team who's here and see if there's anything we

6     can do.  I'm worried that we would need to make that request to

7     the other court and we may not have authority to modify it as

8     it now stands.

9          THE COURT:  That's fine.  Please take your time and

10    confer.

11          (Pause)

12          MR. JONES:  Thank you, your Honor.  May I proceed?

13          THE COURT:  Please do.

14          MR. JONES:  I'm advised that we can offer a little

15    help as follows.  First off, I don't have authority to move the

16    court's current schedule at all, but the scheduled testimony

17    date is Friday morning, so day after tomorrow.  And, of course,

18    Ms. Yaroshefsky is welcome to request a scheduling

19    accommodation of her own.  That's the process we think she

20    should have been following all along.

21          In addition, the prosecution team will make the same

22    request and see if the court is willing to move it to permit

23    this Court to have further time to, excuse me, to permit slower

24    proceedings here.

25          I will note that we do not at all endorse petitioner's

HBFLYARC

1    characterization of Judge Spath's views about December 11 being

2    a fine alternative.  We do understand that he is in a hurry to

3    hear from Ms. Yaroshefsky and obtain information from her so

4    that he can figure out how he's going to conduct these time

5    sensitive and very important proceedings.

6               THE COURT:  Thank you.

7               MR. GORDON:  Your Honor, if I may?

8               THE COURT:  Please.

9               MR. GORDON:  And I'm sorry and I appreciate the

10   Court's patience.

11              THE COURT:  Not a problem.

12              MR. GORDON:  Thank you.  As we understand it, and we

13   have the transcript from the proceedings that counsel for the

14   government and I are alluding to that were just before Colonel

15   Spath, I'm not suggesting that he thinks December 11 is ideal.

16   But he did expressly note that December 11 is an available date

17   and expressly suggested that depending on what happens in this

18   court, he may have to take up the questioning of Professor

19   Yaroshefsky on December 11.

20              THE COURT:  Thank you.  Understood.

21              Counsel for the United States, is there any additional

22   argument you would like to present to the Court?

23              MR. JONES:  To be asked that question almost makes the

24   answer need to be no, your Honor.

25              I do want to just reiterate that petitioner has made

1    absolutely no showing of, as is her burden, of an entitlement

2    to a TRO or preliminary injunctive relief of any kind.  This is

3    a matter that causes severe hardships and significant

4    difficulty in a different court's proceedings that we're trying

5    to protect here and there really is no basis to disturb it.

6    Nor does she meet any of the other showings required for

7    preliminary relief, such as irreparable harm, which hasn't been

8    shown here.  Her characterizations of an unfair tribunal

9    notwithstanding, even if that were true, it's not sufficient

10   given the available review.  And on top of that, we say it's

11   not true.  And the balance of hardships in the public interest

12   tips decidedly in the government's favor.

13          I'll leave it at that.  Thank you, your Honor.

14          THE COURT:  Let me ask one question.  Counsel for

15   petitioner points me to *McVain* as a decision in which the court

16   reviewed an administrative subpoena issued by I believe the

17   FDIC.  What's your view regarding the applicability of that

18   case and whether it provides me with a basis to review this

19   subpoena for reasonableness?

20          MR. JONES:  My view is that it does not, your Honor,

21   for a couple of reasons.  First, actually, let me, if I may,

22   call the Court's attention to a couple of authorities for the

23   proposition that military court subpoenas are judicial and not

24   administrative subpoenas and that makes this distinct from

25   *McVain*.  The first is *U.S. v. Curtin*, 44 MJ 439 (C.A.A.F.

HBFLYARC

1   1996), that's the Court of Appeals for the Armed Forces.  And

2   also *Alli v. U.S*, 2016 U.S. District Court Lexis 44975.  That's

3   out of the District of Maryland, April 1, 2016.

4          So those two cases make *McVain* clearly inapposite.

5   But in addition, I read *McVain* with interest and care.  It does

6   not explain the statutory basis for the proceeding.  *McVain*

7   does involve judicial review of administrative subpoenas, and

8   it doesn't discuss what the statutory basis is for that

9   proceeding, if any.  I have to stay I assume there is one.  The

10  court's jurisdiction did not appear to be contested.  It was

11  just proceeding as an ordinary motion to quash, cross motions

12  to quash and to enforce subpoena compliance.

13         And I will note that I'm very familiar with the IRS

14  summons process by which there's a statutory right.  The

15  government is obliged to go to district courts to enforce

16  administrative subpoenas in the IRS summons world, and

17  recipients of IRS summonses are required to get or entitled to

18  get relief from district courts as well.  So there's an express

19  statutory system setting that up.  There is no comparable

20  system applicable to subpoenas for military commissions.  And,

21  in fact, our papers lay out that there is ample review for

22  military commission subpoenas provided for in the framework

23  that we describe in our papers, none of which involves

24  proceeding through a collateral attack in this court or any

25  other court.

HBFLYARC

1          THE COURT:  Thank you.  Good.  Any rebuttal from

2     counsel for petitioner?

3          MR. GORDON:  Thank you, your Honor.  I hesitate at

4     this point as you might be engaged in sort of information

5     overload, but I would say that the basis for the jurisdiction

6     to quash the subpoena -- and I should emphasize it's not just

7     the temporary TRO that we had sought last week.  It's the

8     relief to quash a subpoena predicated on jurisdictional

9     constitutional violations which should provide an Article III

10     court with ample jurisdiction under *McVain* to quash the

11     subpoena and to declare that it was issued without authority.

12          And as to irreparable harm, and I won't belabor the

13     point, we've got a military judge, Colonel Spath, who in

14     matters directly related to Professor Yaroshefsky's proposed

15     questioning summarily committed another official to

16     confinement.  I'm speaking of Brigadier General Baker, who, of

17     course, was the official who made the final decision to excuse

18     defense counsel here.  And when his questions were not

19     sufficient or to Colonel Spath's liking, he was summarily held

20     in contempt and confined.

21          And so for those reasons, we believe there is

22     sufficient irreparable harm and I won't belabor the Court with

23     the jurisdictional and other arguments that provide a

24     reasonable likelihood of success.

25          THE COURT:  Thank you.  Good thank you very much,

HBFLYARC

1    counsel, for your arguments.  I'm going to take a few moments

2    to consider them and I'll come back out and hopefully render a

3    decision.

4            Counsel for petitioner, I understand you had to get a

5    flight.  I don't want to hold you back, and your colleagues

6    will also be here.

7            MR. GORDON:  I very much appreciate the Court's

8    courtesy and I should say the Court's flexibility starting last

9    week with its schedule.  It's very much appreciated.  I will be

10   okay at least for another half-hour to 45 minutes, but thank

11   you for inquiring.

12           THE COURT:  Thank you.  Please feel free to leave

13   whenever you need.

14           MR. GORDON:  Thanks so much.

15           (Recess)

16           THE COURT:  So, counsel, thank you very much for your

17   arguments and for the presentations to the Court over the

18   course of the last week.  I know that you have all been working

19   very, very hard on this on a short time frame, and I appreciate

20   all of the hard work that you've all put in this.

21           This raises a difficult and close question, one which

22   I'm going to resolve in favor of the United States for a number

23   of reasons that I'm about to articulate.  Ultimately, as you

24   will hear, my decision comes down to the ultimate standard and

25   the burden that rests upon a party that is seeking preliminary

HBFLYARC

injunction, one that is as described in the case law an

extraordinary and drastic remedy that should not be granted

unless the movant makes a clear showing that carries the burden

of persuasion.

I'd like to provide an analysis of certain of the

issues here before I turn to the ultimate issue regarding the

likelihood of success on the merits, which ultimately drives my

decision.  But I've given some thought to some of the

jurisdictional issues so I'd like to address those and raise

other issues to the extent they're going to come up if the case

proceeds.

First, some background.  The petitioner, Professor

Yaroshefsky, is a Manhattan resident and a Professor of legal

ethics.  On or about October 5, 2017, Professor Yaroshefsky

rendered an ethics opinion to an attorney in a case pending

before one of the respondents, Colonel Vance H. Spath, a

military judge at Guantanamo Bay.  *See* the Declaration of

Harold K. Gordon (ECF No. 10), Exhibit F.  The attorney,

Richard Kammen, had requested Professor Yaroshefsky's expert

opinion and subsequently relied on it to seek permission to

withdraw as counsel.  On or about November 6, 2017, Colonel

Spath ordered the government to produce Professor Yaroshefsky

to testify at a proceeding about the ethics opinion in

connection with his efforts to "build the record."  *See* the

Affidavit of Harold K. Gordon (ECF No. 20), Exhibit U.

HBFLYARC

1           Shortly thereafter, on November 9, 2017 -- before any

2     subpoena was issued -- Professor Yaroshefsky filed a petition

3     in this court for a writ of habeas corpus, together with a

4     motion for declaratory judgment, to quash a subpoena or other

5     process, and for an interim temporary restraining order -- this

6     despite the existence of a review process that existed within

7     the military system for review of any subpoena that was later

8     issued.  *See* the Declaration of John B. Wells (ECF No. 17) at

9     paragraphs 25-26.

10          A subpoena compelling Professor Yaroshefsky to appear

11    as a witness at a government facility in Virginia to testify

12    about her ethics opinion was served on November 13, 2017, and

13    Professor Yaroshefsky has accepted it.  *See* reply Gordon

14    Declaration (ECF No. 20), Exhibit R.  Based on the proffers by

15    counsel, which are uncontested, as a formal matter the subpoena

16    itself was issued by a party, the prosecution in the case,

17    albeit at the request of Colonel Spath, the presiding judge

18    over the case.  Because ultimately I can't conclude that she

19    has met the standard for preliminary injunction or restraining

20    order, I'm going to deny the requested relief.

21          The legal standards governing preliminary injunctions

22    and temporary restraining orders in the Second Circuit are the

23    same.  *Local 1814, International Longshoremen's Association v.*

24    *New York Shipping Association, Inc.*, 965 F.2d 1224, 1228-29 (2d

25    Cir. 1992).  Preliminary injunction "is an extraordinary and

HBFLYARC

drastic remedy, one that should not be granted unless the

movant, by a clear showing, carries the burden of persuasion."

*Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60,

66 (2d Cir. 2007)(per curiam)(internal quotation marks

omitted).

Generally, a party seeking a preliminary injunction

must demonstrate "(1) either (a) a likelihood of success on the

merits, or (b) sufficiently serious questions going to the

merits to make them a fair ground for litigation and a balance

of hardships tipping decidedly in the movant's favor, and (2)

irreparable harm in the absence of the injunction." *Faiveley*

*Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir.

2009)(citation and internal quotation marks omitted).

Respondents assert that a more rigorous standard

applies where a preliminary injunction "is sought against

enforcement of government rules." *See* Respondents' Memorandum

of Law in Opposition (ECF No. 18), at 8 (quoting *Velazquez v.*

*Legal Services Corp.*, 164 F.3d 757, 763, (2d Cir. 1999),

affirmed 531 U.S. 533 (2001).  In such cases respondents argue

"plaintiffs must establish a clear or substantial likelihood of

success on the merits." *Id.* (quoting *Sussman v. Crawford*, 488

F.3d 136, 140 (2d Cir. 2007)(per curiam) (internal quotation

marks omitted)).  The Court need not reach the question of

whether the more stringent standard applies here because for

the following reasons the Court concludes that the plaintiff

HBFLYARC

1   has failed to satisfy either standard with respect to the

2   likelihood of success on the merits.

3          With respect to irreparable harm, in the words of the

4   Circuit, "The showing of irreparable harm is the single most

5   important prerequisite for the issuance of a preliminary

6   injunction.  Indeed, the Second Circuit has defined

7   "irreparable harm" as one for which a monetary award does not

8   adequately compensate.

9          Now, before proceeding to an analysis of the standard

10  for preliminary injunction, I'd like to discuss the issue of

11  jurisdiction in part because we spent some time discussing it

12  earlier during our colloquy.

13         In her opening papers, Professor Yaroshefsky

14  identified "two bases for federal jurisdiction":  habeas corpus

15  under 28 U.S.C. Section 2241 and federal question

16  jurisdiction -- broadly speaking.  Petitioner's Memorandum of

17  Law (ECF No. 9), at 20.  I want to first address the

18  petitioner's habeas corpus argument.

19         In my view, petitioner, Professor Yaroshefsky, is not

20  "in custody" because she has been subpoenaed to provide

21  testimony.  "A petitioner must be 'in custody' in order to

22  invoke habeas jurisdiction of the federal courts." *Ogunwomoju*

23  *v. United States*, 512 F.3d 69, 73 (2d Cir. 2008).  The

24  requirement that a person be in custody in order to bring a

25  habeas petition is long-standing and fundamental.  "This is

required not only by the repeated references in the statute,
but also by the history of the great writ.  Its province,
shaped to guarantee the most fundamental of all rights, is to
provide an effective and speedy instrument by which judicial
inquiry may be had into the legality of the detention of a
person." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)
(internal citations omitted).  "The custody requirement of the
habeas corpus statute is designed to preserve the writ of
habeas corpus as a remedy for severe restraints on individual
liberty."  *Hensley v. Municipal Court of San Jose Milpitas
Judicial District*, 411 U.S. 345, 351 (1973).

        The "in custody" requirement is not satisfied only
when a petitioner is physically detained by the government.
*See, e.g., Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d
874, 894 (2d Cir. 1996).  Where a petitioner, such as Professor
Yaroshefsky, is not physically detained, "the inquiry into
whether a petitioner has satisfied the jurisdictional
prerequisites for habeas review requires a court to judge the
"severity" of an actual or potential restraint on liberty." *Id*.
"Though the language of habeas cases often refers to 'severe
restraints on individual liberty' or 'cases of special
urgency,' these terms describe the nature, rather than the
duration, of the restraint." *Nowakowski v. New York*, 835 F.3d
210, 216 (2d Cir. 2016)(quoting *Hensley*, 411 U.S. 351)(internal
citations omitted.)  "Courts have considered even restraints on

liberty that might appear short in duration or less burdensome

than probation or supervised release severe enough because they

required petitioners to appear in certain places at certain

times, thus preventing them from exercising the free movement

and autonomy available to the unrestricted public, or exposed

them to future adverse consequences on discretion of the

supervising court." *Id.*

          Professor Yaroshefsky initially argued that the

custodial requirement for a habeas petition is met or was met

because she was threatened with the prospect of a subpoena.

Now, to the extent that she relies on the habeas statute for

purposes of establishing the Court's jurisdiction in this case

or for relief here, she argues that the subpoena alone places

her in custody.  She presents no prior reasoned opinion by any

court in the American history of the great writ, however, to

support her position that a subpoena for testimony before a

federal governmental authority places its recipient "in

custody."  This Court will not be the first.  Professor

Yaroshefsky has been subpoenaed to provide testimony on a

single day in Arlington, Virginia.  But, as the government

argues in its brief, "the duty to testify has long been

recognized as a basic obligation every citizen owes his

government." *United States v. Calandra*, 414 U.S. 338, 345

(1974).  With this in mind, the Court cannot conclude that a

requirement that a citizen provide testimony in response to a

HBFLYARC

subpoena is so severe a constraint on Professor Yaroshefsky's

liberty that she is in custody as a result of it.  And nor is

there any evidence before me that is exposed to "adverse

consequences on discretion of the supervising court." As noted

in the statute, any prosecution must be brought before an

Article III court.

If the Court were to ratify Professor Yaroshefsky's

proposed construction of the "in custody" requirement, it would

open the door to a flood of habeas litigation.  Every criminal

or civil subpoena for testimony issued (or in Professor

Yaroshefsky's view, threatened to be issued) by a governmental

authority or court could be challenged in an independent habeas

petition -- sidestepping any recourse that the recipient might

have before the issuing court, or the court in whose

jurisdiction the witness is located.  Accepting her approach

would permit any witness in a criminal trial subpoenaed by the

United States to file a habeas corpus petition to challenge the

subpoena.  Alleviating Professor Yaroshefsky's bespoke concerns

regarding her appearance before the military commission does

not warrant opening that door.  I appreciate that the court

reviewing the request by Mr. Kammen has apparently concluded

that the issuance of a subpoena is sufficient to satisfy the

"in custody" requirement for a habeas petition -- presumably

mindful of the consequence of such an expansion of the writ --

but, if so, I respectfully disagree with the court's

HBFLYARC

1   conclusion.

2          I end this portion of my analysis with a short

3   quotation from the Supreme Court's decision in *Hensley*:

4   "Finally, we emphasize that our decision does not open the

5   doors of the district courts to the habeas corpus petitions of

6   all persons released on bail or on their own recognizance.  We

7   are concerned here with a petitioner who has been convicted in

8   state court and who has apparently exhausted all available

9   state court opportunities to have that conviction set aside.

10  Where a state defendant is released on bail or on his own

11  recognizance pending trial or pending appeal, he must still

12  contend with the requirements of the exhaustion doctrine if he

13  seeks habeas corpus relief in the federal courts.  Nothing in

14  today's opinion alters the application of that doctrine to such

15  a defendant." *Hensley*, 411 U.S. 345, 353 (1973).

16         Professor Yaroshefsky's construction of the "in

17  custody" requirement would open the doors of the district

18  courts to the habeas corpus petitions not only of all persons

19  released on bail, but for all persons who have received, or

20  have been threatened with, the issuance of a subpoena by a

21  governmental authority -- whether a military tribunal, the

22  Department of Justice, or any other agency, or the Congress.

23  Moreover, Professor Yaroshefsky's construction of habeas relief

24  here would permit exactly what Justice Brennan warned against

25  in *Hensley*.  She argued that a precipitated motion for habeas

HBFLYARC

corpus should substitute for exhaustion of her opportunities to

challenge the subpoena before the issuing authority.

Petitioner in her original brief also raised

jurisdiction on the basis of either 28 U.S.C. Section 1331,

which I'll refer to as Section 1331, or 28 U.S.C. Section 2201,

which I'll refer to as Section 2201.  Professor Yaroshefsky

suggests that the Court has federal question jurisdiction under

Section 1331 simply because an act taken by the government is

at issue.  *See* Petitioner's Memorandum of Law at 20 ("But the

Court may also consider the federal question underlying Colonel

Spath's order, i.e., the power of military commissions to

compel United States citizens to appear against their will to

testify about entirely ancillary matters when not requested by

either party.").  Such a broad reading of federal question

jurisdiction generally, with the caveat that we'll discuss the

cases raised in the petitioner's most recent brief, is not

generally supported by the law, which, as I will explain in a

moment, requires an express waiver of the government's

sovereign immunity.  Furthermore, Section 2201, the other basis

pointed to by petitioner in her opening brief as the basis for

the Court's jurisdiction, "under which suits for declaratory

judgments in the federal courts must be brought, is essentially

a procedural statute."  *United States v. Ein Chemical Corp.*,

161 F.Supp. 238, 243 (S.D.N.Y. 1958).  It is "not an

independent source of federal jurisdiction."  *Schilling v.*

HBFLYARC

*Rogers*, 363 U.S. 666, 677 (1960); *see also Ein*, 161 F.Supp. at 243 (holding that, among other things, Section 2201 "does not create new substantive rights but merely grants an additional remedy where jurisdiction already exists.").

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Neither of the two bases originally described, on their own, can confer jurisdiction here because neither provision constitutes a waiver or contains an express waiver of sovereign immunity. "The... general federal question jurisdictional statute, 28 U.S.C. 1331, does not constitute a waiver of sovereign immunity by the United States." *Mack v. United States*, 814 F.2d 120, 122 (2d Cir. 1987)(collecting cases). Similarly, Section 2201 does not constitute a waiver. *Stout v. United States*, 229 F.2d 918, 919 (2d Cir. 1956) ("Neither by the Declaratory Judgments Act nor otherwise has the United States consented to be sued in this type of action.") (internal citation omitted); *see also Burns Ranches, Inc. v. Department of the Interior*, 851 F.Supp.2d 1267, 1271 (D. Oregon 2011)("The fact that a court may grant declaratory relief against any type of defendant in a case otherwise within the court's jurisdiction does not imply, let alone expressly state, that the United States has waived its immunity for all declaratory relief claims.")(collecting cases); *Ein*, 161 F.Supp. at 243("neither by the Declaratory Judgment Act nor

HBFLYARC

1   otherwise has the United States given its consent to be

2   sued.").

3           So, none of the bases expressly raised in the

4   petitioner's original petition here clearly in my view provided

5   the Court with jurisdiction to hear this case.  In her reply,

6   Professor Yaroshefsky raises different arguments regarding why

7   it is that sovereign immunity is not at issue here.  She

8   maintains that there is "settled, nonstatutory practice

9   permitting equitable review of agency action akin to that

10  available under the Administrative Procedure Act." Petitioner's

11  reply (ECF No. 19) at 8.  As we've discussed, there are a

12  number of bases described in the footnote in the petitioner's

13  brief.  The principal one of those that I want to discuss

14  briefly here is *Larson*.  As I pointed out during our colloquy

15  earlier, because the APA, the Administrative Procedure Act,

16  contains an express carve-out from the definition of agency of

17  military commissions, it's not clear to me that the APA

18  applies.  Nor is it clear to me that petitioner's construction

19  of 1361 is as accurate.  However, in the absence of further

20  briefing from the United States on the *Larson* issue, I'm going

21  to proceed with the understanding that *Larson* does provide a

22  jurisdictional basis for the petitioner to challenge an alleged

23  ultra vires act by the judge.  Their argument is that the

24  statute does not permit Judge Spath to issue a subpoena and

25  that that is an ultra vires act that can be challenged under

HBFLYARC

1    *Larson* and the chain of cases that followed it.  I'm not

2    concluding now as a definitive matter that the Court does have

3    jurisdiction under *Larson*.  First, I'm going to invite further

4    briefing from the United States on this issue.  But, moreover,

5    the question of whether or not the Court has jurisdiction may

6    ultimately depend on the resolution of the merits issue here,

7    namely, whether or not the judge's acts are in fact ultra

8    vires.  And so with that, I'm going to proceed with the

9    understanding that I do have the jurisdictional basis to

10   proceed at this time based on the recitation of *Larson*, but I

11   do that on the basis of the record before me now.  I am not

12   concluding that definitively and will invite further briefing

13   with respect to the issue.

14           So having concluded that I appear to have at this time

15   a sufficient basis to evaluate the request for preliminary

16   injunctive relief, I'd like to do so.

17           First, as the parties are aware, as I said earlier,

18   the standard is one that places the burden of persuasion on the

19   petitioner, and, moreover, one that requires that the movant

20   make a clear showing in support of that burden of persuasion.

21   And the questions for me, therefore, become whether or not the

22   movant has clearly shown, first, a likelihood of success on the

23   merits, or, in my review, a sufficiently serious question going

24   to the merits to make it a fair grounds for litigation and a

25   balance of hardships tipping decidedly in the movant's favor.

HBFLYARC

1   And I'd like to take those up in turn.

2           The first substantive issue raised with respect to

3   which I evaluate the likelihood of movant's action on the

4   success on the merits is the ultra vires action by Judge Spath.

5   I don't believe that the movant has made a clear showing of

6   likelihood of success on the merits with respect to that issue

7   such that movant would be entitled to the extraordinary remedy

8   of injunctive relief.  First I recognize the dueling

9   constructions of 10 U.S.C. Section 949j.  That is the basis for

10  petitioner's claim that Judge Spath acted outside of the scope

11  of his authority in issuing these subpoenas and that would be

12  the basis, as I understand it, for raising a claim here under

13  *Larson* and its progeny.

14          First I'll note as a technical matter that the

15  subpoena was not issued by Judge Spath.  It was issued at his

16  request by a party.  No one challenges the capacity of the

17  prosecution to issue a subpoena, as was the case here.  Nor has

18  anyone challenged the authority of Judge Spath to direct

19  lawyers under his charge to issue a subpoena.  Instead, there's

20  a conflation of the two.  Judge Spath did not directly issue a

21  subpoena, although I recognize that the subpoena was issued by

22  a party at his request.  But more importantly, the argument

23  regarding the ultra vires nature of his act rests on a

24  construction of Section 949j without regard to the provisions

25  of the military rules that I alluded to during our colloquy

HBFLYARC

```
 1   earlier, which were cited by the government in its affidavit.
 2   The government's affidavit describes the rules that provide not
 3   only the defense, but also the court, the prosecution the
 4   authority to issue subpoenas, and also they cite to a military
 5   regulation that provides the presiding judge in a military
 6   tribunal to issue subpoenas or to call witnesses sua sponte.
 7   So in order for me to find that the petitioner has clearly
 8   shown a likelihood of success on the merits with respect to the
 9   ultra vires action, I would need to conclude that the statute
10   949j and no portion of the statute provides either the
11   commission or the prosecution with the right to issue a
12   subpoena.
13           The petitioner's construction of 949j(A) is that 949j
14   permits only subpoenas to be issued by counsel for the
15   defendant.  However, petitioner conceded that they expect that
16   there is some provision of the statute that would provide the
17   prosecution with such authority.  There's no reference to the
18   prosecution in 949j(A).  I understand from the proffer by the
19   United States that the government understands that the
20   authority for the prosecution to issue subpoenas rests in
21   949j(A)(2).  And so while I appreciate that there's an issue of
22   statutory construction there, it is not one that I believe
23   movant has clearly shown is one on which they will have a
24   likelihood of success on merits, again emphasizing the burden
25   at this stage in the proceedings.
```

HBFLYARC

1        With respect to the other bases described by counsel

2   for petitioner for relief, they are several.  First is the

3   argument that the subpoena violates the petitioner's due

4   process rights.  That argument, as we discussed, was based,

5   among other things, on the argument that the petitioner had no

6   notice or right to be heard with respect to the subpoena and

7   its issuance and also that she was not entitled to counsel

8   during the proceeding and that she did not have the ability to

9   raise typical privileges in the context of any request.

10        First, as articulated in the affidavit submitted in

11   support of the government's opposition, as I understand it,

12   there is a process established by the commission to permit the

13   recipient of a subpoena to contest it and its scope.  There is,

14   in other words, it appears, a notice and right to be heard with

15   respect to a subpoena.  It's not clear to me that the movant

16   has shown, made a clear showing of likelihood of success on the

17   merits with respect to that element of the due process

18   argument.

19        Similarly, with respect to the petitioner's arguments

20   regarding lack of due process rights given an asserted lack of

21   access to counsel, inability to assert privilege, according to

22   the affidavit submitted by the government and the proffer by

23   counsel, the facts underlying that argument appear not to be

24   supported on the record before me.  Instead, in paragraph 27 of

25   the government's affidavit at ECF No. 17, they establish that

HBFLYARC

1   typical privileges are available and also that counsel is

2   permitted to be present during any questioning.  So, as a

3   result, I can't conclude that movant has shown clearly a

4   likelihood of success on the merits with respect to those

5   claims.

6          Similarly, with respect to the Fourth Amendment

7   claims, I've discussed my view regarding whether or not a

8   subpoena to testify constitutes detention.  I do not believe

9   petitioner has raised sufficiently the argument or position

10  that they're likely to succeed on the merits with respect to

11  that claim such as to justify the imposition of injunctive

12  relief.  Also I note that the petitioner does have the

13  opportunity to seek relief through the process that is

14  described.

15         Now, with respect to all of these issues, I also look

16  to see whether or not the movant has, in addition to showing a

17  likelihood of success on the merits, whether or not the

18  petitioner has shown a sufficiently serious question going to

19  the merits to make them a fair ground for litigation and a

20  balance of hardships tipping decidedly in the movant's favor.

21  I analyze that because I'm not accepting for purposes of this

22  argument only the respondent's proposition that the second

23  prong is not applicable in these circumstances, although I'm

24  not holding that.  I'm simply analyzing this prong in the

25  alternative.  If petitioner is right regarding the proper

HBFLYARC

1   standard, I need not reach this second issue.  I will

2   nonetheless.

3          With respect to my analysis of this issue, as I say,

4   this is in some ways a difficult question of statutory

5   construction with respect to the authority of the issuing judge

6   that requested the issuance of this subpoena.  However, I don't

7   believe this satisfies the second prong.  And I'll begin with

8   simply the balance of hardships analysis rather than reviewing

9   in full my views with respect to the underlying claims.

10          The case law requires that the balance of hardships

11   tip decidedly in the movant's favor.  And here, there are

12   hardships on both sides of the coin.  I appreciate fully

13   Professor Yaroshefsky's concerns regarding the possibility that

14   this inquiry may proceed in a way that she expects will be

15   unreasonable.  However, I don't have a basis to conclude that

16   any examination of her will be unreasonable, unfair, bullying

17   or harassing.  I appreciate that she's expressed those

18   concerns, but that to some degree is speculation.  The trip

19   itself is not an undue hardship.  And the provision of

20   testimony generally as a citizen of this country is not a

21   burden that is so great, although I recognize it is a burden on

22   Professor Yaroshefsky and I recognize fully her concerns and

23   the impact of this on her schedule and her time and her

24   concerns about being drawn into the public eye as a result of

25   this.  However, you cannot unring a bell.

HBFLYARC

1    On the other side of the coin, I have to consider the

2    issues asserted by the government because there are hardships

3    on that side of the coin as well.  As I understand it, there

4    are limited hearing opportunities for the tribunal to hear

5    testimony.  I understand in particular that there's a need for

6    the court to resolve the issue regarding Mr. Al-Nashiri's

7    offense.  I understand in particular that a witness may be

8    transported to Saudi Arabia in the near term and, as a result,

9    that places particular constraints on the tribunal and is

10   placing pressure on it to attempt to resolve these issues

11   timely.

12   I don't have before me more than what I will again

13   describe as speculation that the questioning by the court will

14   be anything but respectful and proper.  I fully expect that a

15   duly appointed officer would treat Professor Yaroshefsky as a

16   witness in a respectful and honorable way.  And I expect that

17   the judge has requested her testimony for a valid reason.

18   And so in the balance of hardships, I cannot find that

19   the balance of hardships tip decidedly in the movant's favor.

20   If anything, that is perhaps an even weight between the balance

21   of hardships for the two sets of parties and an even seesaw is

22   not sufficient to justify the imposition of the relief sought.

23   Instead, the hardships must decide decidedly in the movant's

24   favor in evaluating those hardships.  I do not conclude that

25   the petitioner's hardships are so great that they decidedly

HBFLYARC

1   outweigh those of the government and the prosecution and the

2   tribunal which has called for her testimony.

3           So for all of those reasons, I'm denying the request

4   for injunctive relief.  I don't believe that the petitioner has

5   met the high bar for the Court to grant that extraordinary

6   relief and, as a result, I'm denying the request for entry of

7   such an order.

8           So thank you very much for your patience through all

9   of that, counsel.  I wanted to make a record of my view on the

10  jurisdictional issues, but ultimately came to a balancing of

11  the merits.

12          MR. GORDON:  Thank you, your Honor.  The Court's

13  attention as just exhibited is greatly appreciated.

14          Two things, briefly, and I'm cognizant of not taking

15  up too much of the Court's time.

16          THE COURT:  Don't worry it about it.  I'm worried

17  about your flight.

18          MR. GORDON:  Thank you so much.  One is, and I realize

19  this may be a rhetorical question, but given that your Honor

20  started his analysis by noting that there were difficult and

21  close questions here and that if nothing else, the balance of

22  hardships were sort of evenly balanced, if you will, I would be

23  remiss if I did not ask for a stay so that we can at least

24  consider what appellate avenues we may or may not have.

25          THE COURT:  Thank you.

HBFLYARC

1          Counsel for the United States?

2          MR. JONES:  We would object, your Honor.  And a stay

3    of non-grant of a TRO is issuance of a TRO, which is

4    effectively granting the exact relief sought and is

5    inappropriate for the reasons your Honor just held.

6          THE COURT:  Thank you.

7          MR. JONES:  Your Honor, I'm sorry.  Unrelatedly, I'm

8    going to make a very minor factual correction that won't matter

9    at all.  The center is in Alexandria, Virginia, not Arlington.

10          THE COURT:  Thank you very much.  My apologies.

11          Let me ask you, counsel for the United States, the

12    following question.  I'm going to deny the request by

13    petitioner.  I would like to just make a request, not an order,

14    just a request that the government talk with counsel for

15    petitioner about the timing for this proceeding.  I am denying

16    the petitioner's request, but I appreciate that they may seek

17    further review.  But more importantly, counsel referred to a

18    number of issues that might make it difficult for

19    Ms. Yaroshefsky to have counsel present at the date that has

20    been set in the subpoena, and I think I would request that the

21    government give real consideration to any request that she

22    makes to extend the date for her testimony so that she can have

23    counsel of her choice available at that date.  Otherwise, I

24    think it would give rise to some concerns.  So I just want to

25    ask that you consider that request carefully.

65

HBFLYARC

1          MR. JONES:  Thank you, your Honor.  Of course I'll

2     consider it.  Counsel for from the prosecution team is here and

3     I'll relay the Court's request and suggestion and I know

4     they'll consider it carefully.  They are eager to be solicitous

5     where possible, but also constrained by the circumstances of

6     their own case.  So the answer may not be yes, but, you know,

7     I'll raise it both as to whether a later date is possible and

8     to whether a more convenient time on Friday is possible.  And,

9     you know, I'm just a middleman in those conversations, but I

10    will make sure that those conversations occur.

11         THE COURT:  Thank you.

12         Counsel.

13         MR. GORDON:  I'm sorry, your Honor.  Counsel for the

14    government actually addressed what was going to be my next

15    suggestion which is at a minimum, if the December 11 time slot

16    that we understand from Colonel Spath may be available, if not

17    ideal in his eyes, that we at least consider a later start

18    midday or early afternoon on Friday to allow my partner to get

19    to northern Virginia in time.

20         THE COURT:  Good.  Thank you.

21         United States, please, please consider that.  And

22    given I'll call it the nature of Professor Yaroshefsky's

23    involvement in this case, I ask that you give due consideration

24    to reasonable requests made by her in connection with

25    scheduling any testimony.

HBFLYARC

1          MR. JONES:  Understood, your Honor.  And I'll

2     absolutely convey all of those thoughts and encourage the

3     responsible folks to talk.

4          THE COURT:  Thank you very much for all of your

5     briefing.  It was very well done in a short amount of time for

6     tough issues, and I appreciate the good advocacy that I've seen

7     here today.

8          MR. GORDON:  Thanks so much.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25